# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

## Consolidated Case Nos. 22-3026 and 22-3039

---

KEYSTONE-CONEMAUGH PROJECTS, LLC, PETITIONER, AND HOMER CITY GENERATION, L.P., PETITIONER,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al. RESPONDENTS.

---

On Petition for Review of Final Agency Action of the
United States Environmental Protection Agency

---

## PROOF BRIEF FOR PETITIONER-INTERVENOR COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION

---

DIANA STARES
Chief Counsel

ROBERT A. REILEY
Director
Bureau of Regulatory Counsel
PA Bar No. 61319
rreiley@pa.gov

JESSE C. WALKER
Assistant Counsel
Bureau of Regulatory Counsel
PA Bar No. 317750
jeswalker@pa.gov

Commonwealth of Pennsylvania,
Department of Environmental
Protection
P.O. Box 8464
Harrisburg, PA 17105-8464
717-787-7060

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ...............................................................iii-vi

GLOSSARY ........................................................................... vii

INTRODUCTION ....................................................................1

STATEMENT OF ISSUES .........................................................3

STATEMENT OF CASE ...........................................................4

I.      OVERVIEW ....................................................................4

II.     CLEAN AIR ACT REGULATORY BACKGROUND ................................7

        A.     The Ozone Air Quality Standard...........................................7

        B.     Cooperative Federalism Under the CAA ............................................8

               1.     The States Are Primary Regulators of Sources Within Their Boundaries .................................................................8

               2.     EPA's CAA Role Is Ministerial and Deferential to the States ...9

        C.     The RACT Selection Process ............................................11

STANDARD OF REVIEW .......................................................13

SUMMARY OF ARGUMENT ...................................................15

ARGUMENT .......................................................................17

I.      EPA Exceeded Its Authority Under the CAA By Making Choices Reserved for Pennsylvania .................................................17

        A.     Pennsylvania's RACT II SIP Submittals Addressed *Sierra Club* .............................................................17

i

**Page No.**

B.    EPA's CAA FIP Authority Is Not Unfettered .....................................19

1.    EPA's Reliance on *EME Homer City* and *Oklahoma* is Misplaced .................................................................................19

2.    EPA Abused Its Authority by Usurping State Policy Choices ...................................................................................22

II.    EPA'S FAILURE TO FOLLOW ITS OWN RACT SELECTION PROCESS UNDER THE FIP WAS ARBITRARY AND UNLAWFUL ......................25

A.    The FIP Is Void of Source-Specific Technological Feasibility Analyses ...........................................................................25

B.    A Statistical Analysis Is Not A Technological Feasibility Analysis ..26

C.    The FIP Failed to Include the Required RACT Economic Feasibility Analysis ............................................................................30

CONCLUSION ....................................................................................33

CERTIFICATE OF COMPLIANCE ......................................................34

CERTIFICATE OF SERVICE ..............................................................35

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Bell v. Cheswick Generating Station*, 734 F.3d 188 (3d Cir. 2013) ........................8

*BCCA Appeal Group v. EPA*, 355 F.3d 817 (5th Cir. 2003) ....................................8

*CBS Corp v. FCC*, 663 F.3d 122 (3d Cir. 2011) ....................................................13

*Fed. Power Comm'n v. Transcon. Gas Pipeline Corp.*,
    423 U.S. 326 (1976)......................................................................................14

*EPA v. EME Homer City Generation, L.P.*,
    572 U.S. 489 (2014) ................................................................ 15, 19, 20, 22

*Michigan v. EPA*, 268 F.3d 1075 (D.C. Cir. 2001) ..................................................8

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto.*,
    463 U.S. 29 (1983)..................................................................................13, 28

*Nat'l Steel Corp., Great Lakes Steel Division v. Gorsuch*,
    700 F.2d 314 (6th Cir. 1983)........................................................... 24, 25, 26

*National Parks Conservation Assn v. EPA*,
    803 F.3d 151, 167 (3d Cir. 2015)................................................................31

*Navistar Intern. Corp. v. EPA*, 941 F.2d 1339 (6th Cir. 1991) ....................8, 10, 23

*Oklahoma v. EPA*, 723 F.3d 1201 (10th Cir. 2013)............................. 15, 19, 20, 22

*Prometheus Radio Project v. FCC*, 373 F.3d 372 (3d Cir. 2004) ...........................14

*Sierra Club v. EPA,* 972 F.3d 290 (3d Cir. 2020) ...........................................*passim*

*Texas v. EPA*, 690 F.3d 670 (5th Cir. 2012) ("*Texas I*") ................. 8, 15, 17, 23, 24

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ("*Texas II*")....................10, 11, 16, 26

*Train v. Nat'l Res. Def. Council*, 421 U.S. 60 (1975) ............................................10

**Page No.**

*United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963)....................................14

*Virginia v. EPA*, 108 F.3d 1397 (D.C. Cir. 1997) .....................................................24

## FEDERAL STATUTES

5 U.S.C. § 706(2)(A)..........................................................................................13
5 U.S.C. § 706(2)(C)..........................................................................................13
5 U.S.C. § 706(2)(D)..........................................................................................13
42 U.S.C. § 7409..................................................................................................7
42 U.S.C. § 7410..................................................................................................9
42 U.S.C. § 7410(a)(1) and (2) ........................................1, 9, 15, 22, 24, 33
42 U.S.C. § 7410(c)(1)......................................10, 15, 19, 22, 26
42 U.S.C. § 7410(k)(1)(B) ..............................................................................10
42 U.S.C. § 7410(k)(2)......................................................................................10
42 U.S.C. § 7511a..................................................................................................9
42 U.S.C. § 7511a(b)(2)..................................1, 9, 15, 17, 24, 33
42 U.S.C. § 7511a(f)..............................................................................................1
42 U.S.C. § 7511a(f)(1)........................................................................................9
42 U.S.C. § 7511c..................................................................................................9
42 U.S.C. § 7511c(a)............................................................................................9
42 U.S.C. § 7511c(b) ........................................................1, 15, 24, 33
42 U.S.C. § 7511c(b)(2)........................................................................................9
42 U.S.C. §§ 7401-7671q ....................................................................................4

## PENNSYLVANIA STATUTES

Air Pollution Control Act, Act of January 8, 1960, P.L. 2119,
    *as amended,* 35 P.S. §§ 4001 – 4015..............................................................1
    35 P.S. § 4004.1 ............................................................................................1

## FEDERAL REGULATIONS

40 CFR Part 50....................................................................................................7
40 CFR 51.1112 ..................................................................................................9
40 CFR 51.1116 ..................................................................................................9

## PENNSYLVANIA REGULATIONS

Page No.

25 Pa. Code §§ 129.96—129.100 ................................................................4
25 Pa. Code § 129.97(g)(1)(viii) ..............................................4, 5, 6, 22, 23
25 Pa. Code § 129.99 ......................................................................5, 17

# FEDERAL REGISTER

44 Fed. Reg. 53,762/1 (Sept. 17, 1979) ...........................................11, 30
57 Fed. Reg. 18,073/3–18,074/1 ......................................................1, 26
57 Fed. Reg. 18,074/2 ......................................................................31
57 Fed. Reg. 18,074 ........................................................................12
62 Fed. Reg. 38,856 (Jul. 18, 1997).....................................................7
69 Fed. Reg. 23,858, 23,931 (Apr. 30, 2004) ......................................8
73 Fed. Reg. 16,436–16,437 (Mar. 27, 2008) .....................................7
73 Fed. Reg. 16,436 ........................................................................7
77 Fed. Reg. 30,088, 30,143 (May 21, 2012) ......................................8
80 Fed. Reg. 12,264 (Mar. 6, 2015) ...................................................9
84 Fed. Reg. 20,274 (May 9, 2019) ...................................................4
86 Fed. Reg. 51,315 ..................................................................5, 22
86 Fed. Reg. 51,316/3 ......................................................................5
87 Fed. Reg. 31,798 ........................................................................5
87 Fed. Reg. 31,801 ......................................................................18
87 Fed. Reg. 31,802/1 ....................................................................28
87 Fed. Reg. 31,804/1 ....................................................................28
87 Fed. Reg. 31,804/2 ....................................................................27
87 Fed. Reg. 31,805/2 ....................................................................27
87 Fed. Reg. 31,810/1 ....................................................................31
87 Fed. Reg. 50,257 ........................................................................6
87 Fed. Reg. 53,381 ................................................................4, 6, 22
87 Fed. Reg. 53,381–53,382...........................................................18
87 Fed. Reg. 53,382/2 ....................................................................28
87 Fed. Reg. 53,382/3 ..............................................................28, 30
87 Fed. Reg. 53,383/3 ....................................................................27
87 Fed. Reg. 53,386/2 ..............................................................15, 19
87 Fed. Reg. 53,386/3 ..........................................................22, 23, 24
87 Fed. Reg. 53,387/1 ..............................................................26, 30
87 Fed. Reg. 53,387/2 ....................................................................27
87 Fed. Reg. 53,389/1 ..............................................................30, 32
87 Fed. Reg. 53,393/2 ..........................................................22, 23, 24

**Page No.**

**PENNSYLVANIA BULLETIN**

46 Pa. Bull. 2,036—2,064 (Apr. 23, 2016)..................................................................4

# **GLOSSARY**

| | |
|---|---|
| APA | Administrative Procedure Act |
| APCA | Air Pollution Control Act |
| CAA | Clean Air Act |
| CSAPR | 2015 Good Neighbor Plan |
| EPA | United States Environmental Protection Agency |
| FIP | Federal Implementation Plan |
| NAAQS | National Ambient Air Quality Standards |
| NOx | Oxides of Nitrogen |
| OTR | Ozone Transport Region |
| PADEP | Commonwealth of Pennsylvania, Department of Environmental Protection |
| PPM | Parts per million |
| RACT / RACT I / RACT II | Reasonably Available Control Technology |
| SCR | Selective Catalytic Reduction |
| SIP | Pennsylvania State Implementation Plan |
| TPY | Tons per year |
| VOC | Volatile Organic Compounds |

# <u>INTRODUCTION</u>

The Pennsylvania Air Pollution Control Act ("APCA") provides the Pennsylvania Department of Environmental Protection ("PADEP" or "Pennsylvania") with the authority to, among other things, regulate air pollution and implement provisions of the federal Clean Air Act ("CAA") to protect air quality, the public health of its citizenry and the environment in Pennsylvania.[1]  The federal CAA gives the Commonwealth of Pennsylvania – and only the Commonwealth of Pennsylvania – the authority to make choices regarding the selection of air pollution control strategies it will adopt, incorporate into its State Implementation Plan ("SIP") and implement throughout the Commonwealth to meet CAA requirements, including those relating to Reasonably Available Control Technology ("RACT").  *See e.g.* 42 U.S.C. §§ 7410(a)(1) and (2), 7511a(b)(2), 7511a(f), and 7511c(b).

PADEP exercised this authority by submitting to the United States Environmental Protection Agency ("EPA") SIP revisions incorporating case-by-case RACT determinations[2] for coal-fired units at the Keystone Power Plant, Conemaugh Power Plant, Homer City Power Plant, and Montour Power Plant to

---

[1] *See generally* 35 Pa. C.S. §§ 4001—4015.  The General Assembly charged PADEP with, among other things, implementation of the provisions of the federal Clean Air Act in the Commonwealth under section 4004.1 of the APCA.  *Id.* at § 4004(1).

[2] A case-by-case or source-specific RACT determination involves considering the technological and economic feasibility of reducing emissions from that particular source (through process changes or add-on control technology).  *See* 57 Fed. Reg. 18,073/3. (JA___).

address this Court's August 27, 2020 ruling in *Sierra Club v. EPA*, 972 F.3d 290 (3d Cir. 2020) ("*Sierra Club*").  These SIP revisions were developed by PADEP taking into consideration source-specific technological capabilities, effectiveness, and limitations of control technologies at each coal-fired power plant unit, as well as an evaluation of data to determine RACT levels of control.

EPA violated the CAA when it issued a Federal Implementation Plan ("FIP") to establish emission control limits for these coal-fired power plant units.  *First*, EPA circumvented the CAA when it imposed its desired emission control policy choices – choices reserved to Pennsylvania – on Pennsylvania coal-fired power plant units subject to *Sierra Club* disregarding Pennsylvania's SIP submissions.  *Second*, EPA's FIP arbitrarily and unlawfully departed from the agency's own RACT selection process, which this Court required in *Sierra Club* and resulted in arbitrary and unreasonable FIP emission limits for units at the Pennsylvania power plants.  As a result, this Court should vacate EPA's FIP.

## STATEMENT OF ISSUES

1.     Whether EPA's issuance of a FIP in disregard of Pennsylvania's case-by-case RACT II SIP submittals for the Pennsylvania power plants was arbitrary, capricious, and contrary to the law?

*Suggested Answer: **Yes.***

2.     Whether EPA arbitrarily and capriciously departed from the agency's own RACT selection process when it determined the FIP emission limits for the Pennsylvania power plants?

*Suggested Answer: **Yes.***

## STATEMENT OF THE CASE

### I.    OVERVIEW

This case challenges EPA's August 31, 2022 issuance of a final FIP that established RACT pollution control limits for certain major stationary sources required under the federal CAA, 42 U.S.C. §§ 7401–7671q. *See* 87 Fed. Reg. 53,381; EPA-R03-OAR-2022-0347. (JA___).    EPA's FIP established RACT emission limits for units at Pennsylvania's four remaining coal-fired power plants – Conemaugh, Keystone, Homer City,  and Montour – equipped with selective catalytic reduction ("SCR") pollution controls[3] with an effective date of September 22, 2022 and compliance date of March 29, 2023. *See Id*. at 53,402/2.  (JA___).

On May 19, 2019, EPA issued a final rule that partially approved and partially conditionally approved Pennsylvania's RACT II regulations at 25 Pa. Code §§ 129.96—129.100 (46 Pa. Bull. 2036—2064, Apr. 23, 2016) as a revision to the Pennsylvania SIP ("RACT II Final Rule") to address the 1997 and 2008 ozone National Ambient Air Quality Standards ("NAAQS").  84 Fed. Reg. 20,274. (JA___).

On August 27, 2020, in *Sierra Club*, the U.S. Court of Appeals for the Third Circuit vacated and remanded EPA's approval of Pennsylvania's presumptive

---

[3] The Bruce Mansfield Generation Station in Beaver County and Cheswick Generating Station in Allegheny County previously subject to Pennsylvania's presumptive RACT regulation in 25 Pa. Code § 129.97(g)(1)(viii) and this Court's ruling in *Sierra Club* have since been retired.

RACT II emission limit for coal-fired power plants with SCR controls (25 Pa. Code § 129.97(g)(1)(viii)).[4]  The Court found that those RACT emission standards were not adequately supported by the administrative record and required EPA to either approve a PADEP revised, compliant SIP within two years or formulate a FIP.  972 F.3d at 293 and 309.

On September 15, 2021, EPA proposed to disapprove the specific regulatory provision which this Court vacated in *Sierra Club*. 86 Fed. Reg. 51,315, 51,316/3. (JA___).  On remand, PADEP worked with EPA to develop revised compliant case-by-case RACT II SIP revisions, but on May 25, 2022, EPA published a proposed FIP to address this Court's decision in *Sierra Club*.  87 Fed. Reg. 31,798. (JA___). On May 26, 2022, PADEP submitted case-by-case RACT II SIP revisions developed under 25 Pa. Code § 129.99 to EPA for the coal-fired units at the Conemaugh, Homer City, and Keystone power plants to address *Sierra Club*.  87 Fed. Reg. 53,382/1. (JA___).  On June 9, 2022, PADEP submitted a case-by-case RACT SIP revision to EPA for the coal-fired units at the Montour Power Plant to address *Sierra Club*.  *Id.* EPA never acted on any of the PADEP submitted SIP revisions.

On August 16, 2022, EPA issued a final rule, effective September 15, 2022, disapproving Pennsylvania's presumptive RACT II regulation at 25 Pa. Code

---

[4] This regulatory provision pertaining to presumptive RACT for coal-fired power plants with SCR controls is still in effect for state law purposes.

§ 129.97(g)(1)(viii)) which this Court vacated in *Sierra Club*.[5]  87 Fed. Reg. 50,257.

(JA___).  EPA subsequently issued the final FIP on August 31, 2022 to address the

Court's order in *Sierra Club*.  87 Fed. Reg. 53,381.  (JA___).  EPA's RACT II FIP

became effective on September 30, 2022, with a compliance date of March 29, 2023.

*Id*. at 53,381/2, 53,402/2.  (JA___).

On October 27, 2022, Conemaugh-Keystone Projects, LLC ("KEY-CON"),

owner of the Keystone Power Plant and Conemaugh Power Plant, filed a petition for

review with this Court (Case No. 22-3026) challenging EPA's FIP.  On October 28,

2022, Homer City Generation, LP ("Homer City"), owner of the Homer City Power

Plant, also filed a petition (Case No. 22-3039) challenging EPA's FIP.   On

November 1, 2022, this Court issued an order consolidating both cases.

On November 21, 2022, PADEP filed an Uncontested Motion to Intervene in

Support of Petitioners KEY-CON and Homer City. The Court granted PADEP's

motion on December 8, 2022.  Sierra Club and Montour motions to intervene on

behalf of the Respondent EPA were granted by the Court on December 7, 2022.

While PADEP submitted SIP revisions for all four power plants in this matter, its

intervention is limited to the three power plants – Keystone, Conemaugh, and Homer

City – upon which that intervention was granted.

---

[5] This regulatory provision pertaining to presumptive RACT for coal-fired power
plants with SCR controls is still in effect for state law purposes.

## II.    CLEAN AIR ACT REGULATORY BACKGROUND

### A.    <u>The Ozone Air Quality Standard</u>

Ozone is one of six criteria pollutants for which EPA has established and periodically revises the NAAQS pursuant to section 109 of the CAA, 42 U.S.C. § 7409.[6]  The NAAQS are set at levels that EPA determines will provide public health protection with an adequate margin of safety.  *Id.*  Ground-level ozone is a highly reactive gas that is largely formed through photochemical reactions of volatile organic compounds ("VOCs") and oxides of nitrogen ("NOx") in sunlight.  73 Fed. Reg. 16,436–16,437 (March 27, 2008).  Ozone pollution causes a variety of health effects, including asthma, lung damage, and other respiratory ailments.  *Id.*

EPA revised the ozone NAAQS to 0.08 parts per million ("ppm") on July 18, 1997 to provide increased public health protection with an adequate margin of safety.  62 Fed. Reg. 38,856.  EPA further strengthened the ozone NAAQS by reducing the primary and secondary standards to 0.075 ppm on March 27, 2008.  73 Fed. Reg. 16,436.  EPA designated all or portions of 37 counties in Pennsylvania as nonattainment for the 1997 standard and all or portions of 17 counties as nonattainment for the 2008 standard.  69 Fed. Reg. 23,858, 23,931 (Apr. 30, 2004) and 77 Fed. Reg. 30,088, 30,143 (May 21, 2012).

---

[6] The other criteria pollutants for which NAAQS exist are carbon monoxide, lead, nitrogen dioxide, particulate matter, and sulfur dioxide.  *See generally* 40 CFR Part 50 (National Primary and Secondary Ambient Air Quality Standards).

**B.    Cooperative Federalism Under the CAA**

    **1.    The States Are Primary Regulators of Sources Within Their Boundaries**

The CAA is "an experiment in cooperative federalism." *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001). "The [CAA] states that air pollution prevention and control is the primary responsibility of individual States and local governments, but that federal financial assistance and leadership is essential to accomplish these goals." *Bell v. Cheswick Generating Station*, 734 F.3d 188, 190 (3d Cir. 2013). The CAA and the EPA supply "the goals and basic requirements of state implementation plans, but the [S]tates have broad authority to determine the methods and particular control strategies they will use to achieve the statutory requirements." *Texas v. EPA*, 690 F.3d 670, 675 (5th Cir. 2012) ("*Texas I*") (quoting *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003)). "[S]o long as the ultimate effect of a State's choice of emission limitations is in compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." *Navistar Intern. Corp. v. EPA*, 941 F.2d 1339, 1342 (6th Cir. 1991) ("*Navistar*").

There are three separate CAA provisions that give the States, not EPA, the authority to select the types of air quality strategies that are appropriate for them. First, the States have the primary responsibility for achieving and maintaining the NAAQS within their borders under CAA section 110, 42 U.S.C. § 7410. To accomplish this, a State develops and implements a SIP which sets forth emission

limitations and control measures designed to attain or maintain compliance with NAAQS established by EPA.  42 U.S.C. § 7410(a)(1) and (2).  Second, section 182 of the CAA, 42 U.S.C. § 7511a, requires States with ozone nonattainment areas to develop and administer a program requiring major stationary sources of NOx and VOC emissions to implement RACT to control emissions.[7]  Third, Pennsylvania is treated as a "moderate" ozone nonattainment area because of its inclusion in the Ozone Transport Region[8] ("OTR") established by Congress under section 184 of the CAA, 42 U.S.C. § 7511c, which mandates that States in the OTR submit a SIP revision each time the NAAQS is revised that requires the implementation of RACT for all major stationary sources of NOx and VOC emissions in the State.[9]  By unilaterally imposing a FIP on Pennsylvania power plants, EPA has acted arbitrarily, capriciously, and exceeded its authority under the CAA, which is typically reserved for the States.

### 2.    EPA's CAA Role Is Ministerial and Deferential to the States

Upon receipt of a SIP submission, the CAA requires EPA to make a completeness determination within 60 days, but no later than 6 months after the date,

---

[7] Major stationary sources subject to RACT in Pennsylvania are those that emit or have a potential to emit 100 tons per year ("TPY") or more of NOx or 50 TPY or more of VOCs.  *See* 42 U.S.C. §§ 7511a(b)(2), 7511a(f)(1) and 7511c(b)(2).

[8] The OTR is a transport region for ozone… comprised of the 12 Northeast and Mid-Atlantic States and the District of Columbia.  42 U.S.C. § 7511c(a).

[9] *See also* 80 Fed. Reg. 12,264 (Mar. 6, 2015).  EPA's 2008 ozone implementation rule (40 CFR 51.1112 and 51.1116), required States with nonattainment areas, that are in the OTR, or both, to implement RACT.

if any, by which a State is required to submit the SIP.  42 U.S.C. § 7410(k)(1)(B).
Otherwise, the State's SIP submission is deemed to meet completeness criteria by
operation of law.  *Id.*  Upon making a completeness criteria determination, the EPA
Administrator has 12 months to act on the State's SIP revision submittal in
accordance with CAA section 110(k)(1)(3), 42 U.S.C. § 7410(k)(2).  The CAA
confines EPA's role in implementing air quality standards "to the ministerial
function of reviewing SIPs for consistency with the Act's requirements." *Texas v.
EPA*, 829 F.3d 405, 411 (5th Cir. 2016) ("*Texas II*"). When evaluating a SIP revision
submittal, "[t]he logical inquiry for EPA is to assess whether the proposed change
interferes with attainment." *Navistar*, 941 F.2d at 1342.  The CAA authorizes EPA
to issue a FIP only where a State has not met its CAA obligations.  *See* 42 U.S.C.
§ 7410(c)(1).

The U.S. Supreme Court has recognized that EPA "is relegated by the [CAA]
to a secondary role in the process of determining and enforcing the specific, source-
by-source emission limitations…." *Train v. Nat'l Res. Def. Council*, 421 U.S. 60,
79 (1975).  "[T]he [CAA] gives the Agency no authority to question the wisdom of
a State's choices of emission limitations if they are part of a plan which satisfies the
[CAA section 110] standards… and the Agency may devise and promulgate a
specific plan of its own [under CAA section 110(c)] only if a State fails to submit an
implementation plan which satisfies those standards." *Id.*  When promulgating a
FIP, EPA must meet the same requirements as the State. *Texas II*, 829 F.3d at 411.

### C.    The RACT Selection Process

Each State subject to the CAA RACT requirements must establish RACT emission standards for major stationary sources by a taking into consideration both technological and economic feasibility.[10]   The determination of RACT may vary from source to source due to source configuration, retrofit feasibility, operation procedures, raw materials, and other technical or economic characteristics of an individual source or group of sources.[11]   In every case the RACT emission standard should represent the toughest controls considering technological and economic feasibility that can be applied to a specific situation.[12]

EPA previously explained to this Court that "the technological feasibility of applying an emission reduction method to a particular source should consider the source's process and operating procedures, raw materials, physical plant layout, and any other environmental impacts such as water pollution, waste disposal and energy requirements."  *Sierra Club*, 972 F.3d at 295 and 57 Fed. Reg. 18,073–18,074; *see* PADEP Proposed FIP Comment Letter at 3, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1.  (JA___).

---

[10] EPA defines RACT as "the lowest emission limitation that a particular source is capable of meeting by the application of control technology that is reasonably available considering technological and economic feasibility."  44 Fed. Reg. 53,762/1 (Sept. 17, 1979).

[11] Memorandum from Roger Strelow, Asst. Administrator for Air and Waste, USEPA, to Regional Administrators I-X, "Guidance for determining Acceptability of SIP Regulations in Non-Attainment Areas" (December 9, 1976), at 2. (JA___).

[12] *Id*. at 3.

Similarly, EPA guidance pertaining to economic feasibility, in part, provides "[t]he capital costs, annualized costs, and cost effectiveness of an emission reduction technology should be considered in determining its economic feasibility. The OAQPS Control Cost Manual, Fourth Edition, EPA-450/3-90-406, January 1990, describes procedures for determining these costs. The above costs should be determined for all technologically feasible emission reduction options."  57 Fed. Reg. 18,074.  Accordingly, EPA's RACT selection process entails an evaluation of source-specific technological and economic characteristics.  Once a determination has been made that a specific technology is RACT, then a RACT emission limit is established expressing the level of control that can be achieved by that technology.

## **STANDARD OF REVIEW**

The Administrative Procedure Act ("APA") provides that an agency action must be set aside if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C) and (D); *See CBS Corp v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) ("*CBS*").

The standard for review of an administrative agency's action "is narrow and a court is not to substitute its judgment for that of the agency." *Id.* Agency rulemaking must be "based on a consideration of the relevant factors." *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto.*, 463 U.S. 29, 43 (1983) ("*State Farm*"). A regulation is arbitrary and capricious "if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

The standard for review presumes the validity of agency actions so long as the agency considered the relevant factors and articulated a satisfactory explanation for its action including "a rational connection between the facts found and the choices made." *CBS,* 663 F.3d at 137. Courts are not obligated to "rubber-stamp" administrative decisions. *Sierra Club*, 972 F.3d at 298. A Court will reverse an

agency's decision when it "is not supported by substantial evidence, or the agency has made a clear error in judgment." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 390 (3d Cir. 2004). When "[a]n agency has engaged in line-drawing determinations" a Court will review primarily to determine whether the result is "'patently unreasonable' or run[s] counter to the evidence before the agency." *Id*.

"[R]eview of administrative decisions is to be confined to consideration of the decision of the agency… and of the evidence on which it was based." *Fed. Power Comm'n v. Transcon. Gas Pipeline Corp*., 423 U.S. 326, 331 (1976) (quoting *United States v. Carlo Bianchi & Co*., 373 U.S. 709, 714-15 (1963)). "'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Id*.

## SUMMARY OF ARGUMENT

EPA's establishment of a FIP under the guise of complying with *Sierra Club* violates sections 110(a)(1) and (2), 182(b)(2) and (f), and 184(b) of the CAA, 42 U.S.C. §§ 7410(a)(1) and (2), 7511a(b)(2) and (f), and 7511c(b).  While EPA cites *EPA v. EME Homer City Generation Station, LP,* 572 U.S. 489 (2014) ("*EME Homer City*") and *Oklahoma v. EPA,* 723 F.3d 1201 (10th Cir. 2013) ("*Oklahoma*"), in its final FIP approval, *see* 87 Fed. Reg. 53,386/2 (JA___), to support its FIP authority, those cases are inapposite, because EPA's authority is not unfettered. EPA exercised its limited FIP authority as plenary authority, after Pennsylvania submitted RACT II SIP revisions, to unlawfully impose its preferred RACT approach disregarding Pennsylvania's control strategy for determining case-by-case RACT for the Pennsylvania power plant units at issue.  *See Texas I*, 690 F.3d at 675, 679 and 682.  EPA abused its discretion afforded under CAA section 110(c)(1)(B) by exceeding the ministerial role conferred by the CAA to achieve the outcome it desired.

EPA's FIP did not comport with the RACT selection process, which is what this Court required in *Sierra Club,* 972 F.3d at 309.  EPA's unilateral selection of purported case-by-case RACT emission limits in the FIP for the Petitioners' power plants without conducting source-specific technological feasibility analyses for units at each of the three power plants is at odds with the agency's own RACT selection process.  *Texas II*, 829 F.3d at 411.  The administrative record is void of any such

analysis. EPA's use of a weighted rates statistical approach as a substitute for case-by-case technological feasibility analyses along with an inadequate economic feasibility analysis resulted in the establishment of arbitrary and unreasonable FIP limits without proper consideration of source-specific characteristics and operating conditions.

  As a result, this FIP is unlawful and should be vacated by this Court.

## **ARGUMENT**

I. **EPA EXCEEDED ITS AUTHORITY UNDER THE CAA BY MAKING CHOICES RESERVED FOR PENNSYLVANIA**

EPA exceeded its statutory authority by selecting RACT emission standards that Congress reserved for Pennsylvania to make under the CAA. *See* PADEP Proposed FIP Comment Letter at 8, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1; *see also* KEY-CON FIP Comment Letter at 5-7, Docket No. EPA-R03-OAR-2022-0347-0075, Attachment 1 (JAs___). Under the non-attainment provisions in CAA, Title I, Part D, Pennsylvania is responsible for making choices regarding RACT emission determinations for a particular source or group of sources and has broad discretion establishing such emission limitations. *See* 42 U.S.C. § 7511a(b)(2) (the *State* shall submit a revision to the applicable implementation plan to include provisions to require the implementation of reasonably available control technology), *see also Texas I*, 690 F.3d at 675. Yet, in this case, EPA abused its discretion by making these selections for Pennsylvania and usurping the State's CAA authority to do so.

### A. **Pennsylvania's RACT II SIP Submittals Addressed *Sierra Club***

In *Sierra Club*, this Court ordered EPA to either approve a PADEP revised, compliant SIP within two years or formulate a new FIP. 972 F.3d at 309. The administrative record shows that PADEP undertook significant efforts to develop case-by-case RACT II determinations consistent with 25 Pa. Code § 129.99 for the

sources at the Conemaugh, Keystone, Homer City, and Montour power plants to address *Sierra Club*. 87 Fed. Reg. 31,801 and 53,381—53,382. (JA___). PADEP invested over 1,000 employee hours into the preparation of the Keystone and other RACT permit modifications. *See* Letter from PADEP Bureau of Air Quality Director Mark Hammond to EPA Air Director Cristina Fernandez, March 25, 2022 at 1, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 2. (JA___). This year-long cooperative effort involved at least 20 meetings and frequent collaboration between PADEP and EPA Region 3 staff as well as PADEP's incorporation of certain changes into the final-form case-by-case RACT II permit modifications based on input received from EPA. *Id*. at 1 and 2. (JAs___). On February 24, 2022 – the 45th and final day in which EPA was to provide comments on the draft Keystone RACT permit modification based on EPA's commitment to PADEP – EPA ceased further collaboration with Pennsylvania on the development of RACT emission standards for the power plants. *Id.* (JA___). Instead, EPA embarked on a new path that lead to issuance of its own RACT FIP for those same power plants. *Id*. at 1. (JA ___). PADEP expended substantial air quality staffing resources in good-faith to meet its CAA RACT II obligations in response to *Sierra Club* only to have its carefully crafted case-by-case RACT II SIP submittals brushed aside by EPA at the end.

**B.    EPA's CAA FIP Authority Is Not Unfettered**

EPA abused its discretion by circumventing Pennsylvania's case-by-case RACT II emission standard SIP submissions to issue its own RACT II emission standards in the FIP.  In the final FIP, EPA cited *EME Homer City* and *Oklahoma* to support its claimed authority to issue that FIP under CAA section 110(c)(1).  87 Fed. Reg. 53,386/2. (JA___).  However, *EME Homer City* and *Oklahoma* are inapposite, and do not support EPA's position in this case.  EPA could have, but did not, take any action on Pennsylvania's RACT II SIP revision submittals addressing *Sierra Club* before issuing the final FIP.  The FIP in *EME Homer City* was issued after the disapproval of the State SIP submissions.  The FIP in *Oklahoma* was issued in conjunction with the disapproval of the SIP submission.  EPA lacks authority to issue a FIP *before* disapproval of a SIP submission, which is precisely what occurred here.  *See* 42 U.S.C. § 7410(c)(1)(B).

**1.    EPA's Reliance on *EME Homer City* and *Oklahoma* is Misplaced**

First, neither *EME Homer City* nor *Oklahoma* involved "after-the-fact" maneuvers that EPA performed here to issue the FIP in disregard of Pennsylvania's case-by-case RACT II SIP submittals. (JA___).  *EME Homer City* involved EPA's issuance of a FIP after disapproving SIP submittals addressing interstate transport provisions under CAA section 110(a)(2)(D)(i) and whether upwind states should get another opportunity to submit a "Good Neighbor" SIP in lieu of EPA's FIP

issuance once EPA has established an emissions budget. 572 U.S. at 498, 503, 507-508.[13]  *Oklahoma*, also unlike the facts here, upheld EPA's FIP issuance in a challenge to EPA's concurrent processing of a partial SIP disapproval and FIP. 723 F.3d at 1223.

Second, the administrative record shows that EPA's intentional course of conduct in this case was an abuse of discretion.  Thus, this matter is further distinguished from *EME Homer City* and *Oklahoma.*  EPA agreed to collaborate with PADEP, but then reneged on its commitment after PADEP had expended significant staffing resources and delayed its RACT II SIP submittals. *See* Letter from PADEP Bureau of Air Quality Director Mark Hammond to EPA Air Director Cristina Fernandez, March 25, 2022 at 1-2, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 2. (JA ___).

Furthermore, the record shows that EPA (1) improperly excluded PADEP from *ex parte* meetings with Maryland regarding RACT for Pennsylvania's coal-fired EGUs[14], (2) recommended that PADEP not submit the RACT II SIP revisions request prior to [EPA] finalizing the FIP and (3) explicitly requested that PADEP withhold submission of the remaining final-form Title V permit modifications,

---

[13] In upholding EPA's FIP authority, the U.S. Supreme Court in *EME Homer City* acknowledged States ability to correct a SIP deficiency before EPA issues a FIP. 572 U.S. at 508.

[14] The administrative record noticeably does not contain the information EPA received from Maryland received during these meetings and considered in promulgation of the FIP.

which were necessary prerequisites to submission of a SIP by PADEP. *See* PADEP Proposed FIP Comment Letter at 8, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1; Letter from PADEP Air Director Mark Hammond to EPA Air Director Cristina Fernandez, March 25, 2022 at 1, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 2. (JAs___). Throughout the RACT setting process to address *Sierra Club*, PADEP acted in good faith and meaningfully considered and addressed EPA's comments for the case-by-case SIP revisions submitted to EPA. *See* PADEP Proposed FIP Comment Letter, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1 at 17 and Attachment 2 at 2. (JAs___). Given the pattern of behavior that attempted to undermine Pennsylvania's ability to meet its obligations under the CAA to establish and implement RACT controls for these coal-fired power plants in Pennsylvania, EPA's FIP issuance in circumvention of Pennsylvania's RACT II SIP revision submittals amounted to an abuse of discretion.

Third, PADEP submitted case-by-case RACT II revisions for the power plants to address *Sierra Club* well in advance of both EPA's issuance of its disapproval of Pennsylvania's presumptive RACT II regulatory provision in § 129.97(g)(1)(viii) on August 16, 2022, 86 Fed. Reg. 51,315, and EPA's RACT II FIP issuance on August 31, 2022, 87 Fed. Reg. 53,381. This is important because in *EME Homer City* and *Oklahoma*, the state SIP submissions were not submitted to correct deficiencies in advance of either EPA's SIP disapproval or FIP issuance

unlike here. *EME Homer City*, 572 U.S. at 508. This is a fatal flaw in EPA's reliance on both cases. By disregarding Pennsylvania's SIP revisions in this manner under CAA section 110(c)(1)(B) EPA undermined rights reserved to the States under CAA sections 110(a)(1) and (2), 182(b)(2) and (f) and 184(b) to make policy choices pertaining to emission control strategies. As a result, EPA tried to give itself plenary authority to impose its desired policy choices on the power plants and supplant Pennsylvania's emission control choices.

## 2.    EPA Abused Its Authority by Usurping State Policy Choices

PADEP made a deliberative policy choice to use a tiered emission limit approach for its coal-fired power plant units where there would be separate emission limits when SCRs were in operation and when SCRs were not in operation. 87 Fed. Reg. at 53,386/3 and 53,393/2. (JAs___). This tiered emission limit approach in Pennsylvania's case-by-case RACT II submittals to EPA for the power plants differed from Pennsylvania's presumptive RACT II regulatory provision that this Court vacated in *Sierra Club*. *See e.g*. PADEP Proposed FIP Comment Letter at 9; Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1 and Draft Title V Permit Modification Review Memos for Conemaugh at 20-21, Keystone at 17-18 and Homer City at 21-22. (JAs___) (PADEP's case-by-case RACT II tiered emission limit approach did not include a generic temperature threshold for SCR control operation). However, EPA dismissed Pennsylvania's choice out of hand

and usurped policy determinations reserved for Pennsylvania, *see* 87 Fed. Reg. 53,393/2 (JA___), which is prohibited. *Texas I*, 690 F.3d at 675. Further, EPA made no evaluation of Pennsylvania's tiered emission limit approach in terms of attainment as required under *Navistar*, 941 F.2d at 1342.

Despite EPA's suggestion, *see* 87 Fed. Reg. 53,386/3 (JA___), this Court in *Sierra Club* never held that use of a tiered emission limit RACT strategy was prohibited. To the contrary, this Court found that EPA's approval of Pennsylvania's presumptive RACT II emission limit and inlet temperature threshold for the operation of SCR controls in 25 Pa. Code § 129.97(g)(1)(viii) was not adequately supported by the administrative record. *Sierra Club*, 972 F.3d at 293. EPA's statement regarding "whether Pennsylvania's continued use of tiered limits (i.e., separate limits for SCR-on and SCR-off operation) could be squared with the Court's clear objection to our approval of such an approach in the past…", 87 Fed. Reg. 53386/3 (JA__), is inaccurate and, thus, does not support EPA's rationale for the FIP. To the extent EPA purposefully sought to prevent Pennsylvania from using a tiered approach for case-by-case RACT, EPA's actions are an abuse of discretion for imposing policy choices that are within the purview of the States under CAA sections 110(a)(1) and (2), 182(b)(2) and (f), and 184(b), 42 U.S.C. §§ 7410(a)(1) and (2), 7511a(b)(2) and (f), and 7511c(b).

Courts have previously rejected EPA attempts to use its ministerial CAA role to impose its policy choices on States through the SIP process. *See Texas I*, 690

F.3d at 675, 679 and 682; *see also Virginia v. EPA*, 108 F.3d 1397, 1408-1410 (D.C.

Cir. 1997).  Albeit in a different context, the Sixth Circuit previously observed in a

case involving RACT determinations that:

> "[EPA's] formulation of a presumption *against* the acceptability of state standards appears troublesome…. By placing such an additional burden on the states, the EPA seems to be removing some of the flexibility that Congress meant to afford the states in formulating their individual implementation plans. This may, indeed, be beyond the bounds of the discretion which the EPA is permitted to exercise in fulfilling its secondary role."

*Nat'l Steel Corp., Great Lakes Steel Div. v. Gorsuch*, 700 F.2d 314, 323 (6th Cir.

1983) ("*Gorsuch*").

EPA exceeded its limited CAA authority here by claiming some sort of

presumption existed that Pennsylvania's tiered emission limit approach was not

legally acceptable.  *Id.*; *see* 87 Fed. Reg. 53,386/3 and 53,393/2. (JA___).  EPA

further maneuvered procedurally to substitute its preferred approach for determining

case-by-case RACT through the FIP because Pennsylvania was lawfully seeking to

advance a different approach.  *Texas I*, 690 F.3d at 679 and 682.  Because EPA

procedurally maneuvered to impose its own policies in the FIP in circumvention of

Pennsylvania's RACT emissions control strategy, it abused its discretion under the

CAA and violated those provisions of the CAA that reserve policy choices to be

made by the States.

## II.    EPA'S FAILURE TO FOLLOW ITS OWN RACT SELECTION PROCESS UNDER THE FIP WAS ARBITRARY AND UNLAWFUL

Contrary to this Court's explicit direction in *Sierra Club*, 972 F.3d at 309, that EPA follow its own RACT selection process, EPA's FIP that determined case-by-case RACT for the coal-fired power plants units in Pennsylvania with SCR controls failed to follow that process.  Therefore, EPA's FIP is arbitrary and unlawful.

### A.    The FIP Is Void of Source-Specific Technological Feasibility Analyses

RACT for a particular source is determined on a case-by-case basis, considering the technological and economic circumstances of the individual source.[15]  Longstanding EPA guidance references the factors to consider when performing a source-specific technological feasibility analysis, like source configuration, retrofit feasibility, operation procedures, raw materials, and other technical or economic characteristics of an individual source or group of sources.[16]

PADEP commented that "EPA's Proposed FIP does not provide a source-specific analysis of technological feasibility for each unit, which is what the CAA RACT standard requires."  *See* PADEP Proposed FIP Comment Letter at 3 and 4, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1.  (JAs___).  While EPA affirmed Pennsylvania's observation of how a case-by-case RACT analysis is to be conducted in the FIP, 87 Fed. Reg. 53,387/1 (JA___), the administrative record

---

[15] *See supra,* notes 2 and 10.
[16] *See supra,* note 11.

is void of any source-specific technological feasibility analyses for setting such standards. Without EPA conducting these source-specific analyses consistent with the agency's own longstanding guidance, the FIP does not properly account for the application and operation of case-by-case RACT at each power plant's units. 57 Fed. Reg. 18,073/3-18,074/1. *See also Gorsuch*, 700 F.2d 314, 322–323 (recognizing that "depending on site-specific considerations, such as geographic constraints, RACT can differ for similar sources.") Because EPA did not conduct source-specific technological feasibility analyses for each of the three power plants in accord with the RACT selection process, the FIP is arbitrary and unlawful.

### B.    A Statistical Analysis Is Not A Technological Feasibility Analysis

EPA's CAA section 110(c)(1) FIP authority does not exclude it from establishing case-by-case RACT limits in accord with the RACT selection process. *Texas II*, 829 F.3d at 411. However, any RACT selection process involves an analysis of technological feasibility. Here EPA's RACT selection process under the FIP replaced a case-by-case technological feasibility analysis for each of the coal-fired power plant units with a statistical analysis. 87 Fed. Reg. 53,387/2. (JA___). As a result, EPA's FIP established arbitrary and unreasonable RACT emission limits.

EPA's proposed FIP stated that "creating an enforceable RACT limit is a highly technical, unit specific determination that depends on several varying factors." 87 Fed. Reg 31,804/2. (JA___). "The consideration of the technical and

economic feasibility of a given RACT limit should reflect, to the extent possible, consideration of the past, current, and future expected operating environment of a given unit." *Id*. at 31,805/1, 53,383/3. (JA___). Nevertheless, without conducting a source-specific technological feasibility analysis, EPA developed RACT emission standards for units at Petitioner's three power plants from a statistical analysis. *Id*. at 31,805/2, 53,384/3. (JAs___). That analysis relied on an approach used under a CAA provision unrelated to RACT.[17] EPA's explanation that "SCRs *installed in the early 2000s* were designed and built to work in tandem with a baseload boiler" and that "recent data indicates that these units are not operating as baseload units and are not likely to do so in the future," 87 Fed. Reg. 31,804/1, 53,382/3 (JAs___), demonstrated the need for EPA to perform a source-specific technological feasibility analysis. So too did EPA's acknowledgement of equipment degradation issues at these facilities. *Id*. at 53,395/1. (JA__). It must follow that EPA's RACT emission standards under the FIP do not reflect the expected operating environment of the coal-fired power plants. *Sierra Club*, 972 F.3d at 302 (explaining "that 'mere' data alone may not require a particular result").

---

[17] EPA used a weighted rates third best ozone season approach for the Revised CSAPR Update for the 2008 ozone NAAQS and Proposed FIP for the 2015 Ozone NAAQS. EPA's approach contains the assumption that the third-best ozone season accounts for equipment degradation at each of the three power plants, with exception of Conemaugh, without conducting a source-specific technological feasibility analysis.

PADEP commented on the need for EPA to include a case-by-case technological feasibility analysis for each of the units instead of the FIP's sole reliance on a weighted rates third best ozone season statistical approach. Those comments identify shortcomings with EPA's weighted rates approach as well as concern with EPA's conclusion that "the proposed limits are technologically and economically feasible during the entire year." 87 Fed. Reg. 31,802/1, 53,382/2. (JAs___). For example, PADEP explained:

> "[t]he third-best year approach "involves no analysis of the current technological capabilities of the equipment, changes in facility operation including cycling, the effect of mercury and other emission controls added over time. EPA incorrectly states that using the third-best year accounts for equipment degradation. EPA shows no evidence to demonstrate that the third-best year bears any connection to age or condition of equipment." *State Farm*., 463 U.S. at 43. Also, during the ozone season, EGUs generally operate at more of a steady state mode at or near baseload. Less cycling results in lower emission rates as compared to periods with more cycling. Use of data from only the five-month ozone season skews the results to indicate less cycling than occurs. This results in NOx emission rates that are substantially less compared to when EGUs operate outside of the ozone season at a time when they may not be operating at baseload and with more shutdowns."

See PADEP Proposed FIP Comment Letter at 17, Docket No. EPA-R03-OAR-2022-0347-0079, at 11, Attachment 1. (JA___). Likewise, Pennsylvania commented that "EPA does not discuss both technological limitations and negative economic consequences to both equipment and the environment which is unlawful." *Id.* at 9-10 (referencing Petitioner KEY-CON's engineering analysis, Docket No. EPA-R03-OAR-2022-0347-0075, Attachment 3 at 5, 6, 10, 11, 14-17 (JAs ___) regarding the

effects of varying the rates of ammonia injection on equipment, the creation of secondary pollution and the FIPs failure to account for them).

Instead of conducting a technological feasibility analysis evaluating unit-specific factors as part of the FIP process to establish case-by-case RACT emission rates along with an evaluation of historic data, EPA's weighted rates approach establishes a selected emissions rate based on selective past data from the units and presumes, without bases, that these units and their existing controls will adjust operations in the future to meet EPA's selected emission rate.  This approach omits plant-specific technical considerations and does not account for all periods of operation.  Because EPA did not conduct source-specific technological feasibility analyses as part of its FIP process, the FIP limits established by the weighted rates approach are not in accord with the established RACT development methodology.

### C.   The FIP Failed to Include the Required RACT Economic Feasibility Analysis

As confirmed by EPA, 87 Fed. Reg. 53,387/1 (JA___), RACT for a particular unit is determined on a case-by-case basis, considering the technological and economic circumstances of that individual unit.  44 Fed. Reg. 53,762/1 (Sept. 17, 1979).  EPA's FIP, however, departed from the RACT selection process economic feasibility analysis in at least two significant respects.  First, instead of performing the required economic analysis *specific* to each unit, EPA relied on assumptions made in a fleetwide cost analysis performed in 2015 Good Neighbor ("CSAPR") Plan.  The fleetwide cost analysis included 172 units and did not perform a comprehensive cost analysis specific to equipment and operations at each of the three power plants as required by law.[18]  *See* PADEP Proposed FIP Comment Letter at 8-9; Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1; *see* 87 Fed. Reg. 53,389/1. (JAs___).  Other than evaluating updated ammonia reagent costs for SCR controls at each power plant, EPA's FIP never analyzed the specific control technologies and techniques unique to each power plant unit.  87 Fed. Reg. 53,389/1

---

[18] U.S. EPA, Technical Support Document (TSD) for the Final Revised CSAPR Update for the 2008 Ozone NAAQS, March 2021 at 4, notes 5 and 6 and 5; Docket No. EPA-R03-OAR-2022-0347-0002 (JA___); *See also* U.S. EPA, Technical Support Document (TSD) for the Proposed Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard, February 2022 at 5-6; Docket No. EPA-R03-OAR-2022-0347-0052. (JA___). EPA did not explain how its selected 2015 CSAPR fleetwide capacity assumption accurately reflects current and future operations at the Keystone, Conemaugh and Homer City power plants in lieu of the decline from coal-fired generation (87 Fed Reg. 53,382/3, 53,383/3 (JAs___)).

(JA___); PADEP Proposed FIP Comment Letter at 3, 4, 8 and 9, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1. (JAs___). Nor did EPA evaluate non-reagent variable operation and maintenance (VOM) costs despite changing economic conditions. PADEP Proposed FIP Comment Letter at 4, 8-9; Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1; U.S.EPA FIP Technical Support Document at 19; EPA-R03-OAR-2022-0347-0059. (JAs___). In other words, EPA failed to "show its work" pertaining to economic feasibility for each unit at the three power plants. *National Parks Conservation Assn v. EPA*, 803 F.3d 151, 167 (3d Cir. 2015). While this may have been acceptable for CSAPR, this is irreconcilably at odds with how RACT must be determined for a particular unit.

Second, EPA's FIP is void of any analysis or consideration of other emission control technologies other than SCR controls. 87 Fed. Reg. 53,389/1. (JA___). *See* PADEP Proposed FIP Comment Letter at 8 and 9, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1 (JA___). This omission precludes assessing the economic feasibility of other technologically feasible control options and thus, is at odds with EPA's RACT selection process. *See* 57 Fed. Reg. 18,074/2. For example, EPA states that other control technologies, such as Low NOx burners, are feasible. 87 Fed. Reg. 31,810/1; *see also* PADEP Proposed FIP Comment Letter at 17, Docket No. EPA-R03-OAR-2022-0347-0079, Attachment 1. (JA___). Despite identifying other control technologies, EPA did not evaluate them. EPA did nothing to calculate

emission reductions and cost effectiveness of these technologies, either on their own or in tandem with SCR.  87 Fed. Reg. 53,389/1. (JA___).

Because of each of these fatal flaws regarding economic feasibility, the FIP violates this Court's order in *Sierra Club*.

## CONCLUSION

For the foregoing reasons, Intervenor PADEP respectfully requests that this Court find that EPA acted arbitrarily, capriciously or otherwise not in accordance with the law, and vacate the RACT II FIP.  PADEP requests that this Court order EPA to address *Sierra Club* in accord with the RACT selection process and consistent with the CAA sections 110(a)(1) and (2), 182(b)(2) and (f), and 184(b) of the CAA, 42 U.S.C. §§ 7410(a)(1) and (2), 7511a(b)(2) and (f), and 7511c(b).

Respectfully Submitted,

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

*/s/ Jesse C. Walker*
JESSE C. WALKER
Assistant Counsel
Bureau of Regulatory Counsel
PA Bar No. 317750
jeswalker@pa.gov

ROBERT A. REILEY
Director
Bureau of Regulatory Counsel
PA Bar No. 61319
rreiley@pa.gov

Commonwealth of Pennsylvania,
Department of Environmental Protection
P.O. Box 8464
Harrisburg, PA 17105-8464
717-787-7060

Date:  January 23, 2023

## CERTIFICATE OF COMPLIANCE

I certify that this PADEP brief is double spaced text (excluding quotations, headings, and footnotes) in proportional 14-point type. According to the "word count" feature of my Microsoft Office Word 2010 software, the brief (excluding tables and certifications) is 6,920 words. I certify that the E-Brief transmitted to the Court in PDF format was scanned for computer viruses using the MacAfee VirusScan Enterprise; Version number 8.8.0 software and, according to the program, is free of viruses. I certify that I am a member in good standing of the U.S. Court of Appeals for the Third Circuit. The electronic version filed is identical to the hard copies of the brief to be filed with the Court.

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

*/s/ Jesse C. Walker*
JESSE C. WALKER
Assistant Counsel
Bureau of Regulatory Counsel
PA Bar No. 317750
jeswalker@pa.gov

ROBERT A. REILEY
Director
Bureau of Regulatory Counsel
PA Bar No. 61319
rreiley@pa.gov

Commonwealth of Pennsylvania,
Department of Environmental Protection
P.O. Box 8464
Harrisburg, PA 17105-8464
717-787-7060

Date:  January 23, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2023, I electronically filed the foregoing Brief and Statutory and Regulatory Addendum with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

*/s/ Jesse C. Walker*
JESSE C. WALKER
Assistant Counsel
Bureau of Regulatory Counsel
PA Bar No. 317750
jeswalker@pa.gov

ROBERT A. REILEY
Director
Bureau of Regulatory Counsel
PA Bar No. 61319
rreiley@pa.gov

Commonwealth of Pennsylvania,
Department of Environmental Protection
P.O. Box 8464
Harrisburg, PA 17105-8464
717-787-7060

Date: January 23, 2023