**No. 22-3026**
**(Consolidated with No. 22-3039)**

In the
# United States Court of Appeals for the Third Circuit

KEYSTONE-CONEMAUGH PROJECTS, LLC,
*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
ADMINISTRATOR ENVIRONMENTAL PROTECTION AGENCY,
*Respondents*.

*On Petition for Review of Final Action of the*
*U.S. Environmental Protection Agency*

**STATUTORY ADDENDUM TO**
**PROOF BRIEF OF PETITIONER**
**KEYSTONE-CONEMAUGH PROJECTS, LLC**

Michael H. Winek (PA 69464)
Joseph V. Schaeffer (PA 323256)
BABST, CALLAND, CLEMENTS
AND ZOMNIR, P.C.
603 Stanwix Street, Floor 6
Pittsburgh, PA 15222
(412) 394-5400
mwinek@babstcalland.com
jschaeffer@babstcalland.com

Gina N. Falaschi (DC 198197)
BABST, CALLAND, CLEMENTS
AND ZOMNIR, P.C.
505 9th Street NW, Suite 602
Washington, DC 20004
(202) 853-3455
gfalaschi@babstcalland.com

# TABLE OF CONTENTS

**STATUTES**

42 U.S.C. § 7408 ................................................................ ADD01

42 U.S.C. § 7409 ................................................................ ADD04

42 U.S.C. § 7410 ................................................................ ADD05

42 U.S.C. § 7491 ................................................................ ADD12

42 U.S.C. § 7511a ............................................................... ADD14

42 U.S.C. § 7511c ............................................................... ADD25

42 U.S.C. § 7607 ................................................................ ADD27

42 U.S.C. § 7661 ................................................................ ADD31

42 U.S.C. § 7661a ............................................................... ADD32

42 U.S.C. § 7661b ............................................................... ADD35

42 U.S.C. § 7661c ............................................................... ADD35

42 U.S.C. § 7661d ............................................................... ADD36

42 U.S.C. § 7661e ............................................................... ADD37

42 U.S.C. § 7661f ............................................................... ADD37

cordance with any applicable Federal reference methods for the relevant areas. Only data from the monitoring network designated in subsection (a) and other Federal reference method PM₂.₅ monitors shall be considered for such designations. Nothing in the previous sentence shall be construed as affecting the Governor's authority to designate an area initially as nonattain-ment, and the Administrator's authority to promulgate the designation of an area as nonattainment, under section 107(d)(1) of the Clean Air Act, based on its contribution to ambient air quality in a nearby nonattain-ment area.

"(2) For any area designated as nonattainment for the July 1997 PM₂.₅ national ambient air quality standard in accordance with the schedule set forth in this section, notwithstanding the time limit prescribed in paragraph (2) of section 169B(e) of the Clean Air Act [42 U.S.C. 7492(e)(2)], the Administrator shall require State implementation plan revisions referred to in such paragraph (2) to be submitted at the same time as State implementation plan revisions referred to in section 172 of the Clean Air Act [42 U.S.C. 7502] implementing the revised national ambient air quality standard for fine particulate matter are required to be submitted. For any area designated as attainment or unclassifiable for such standard, the Administrator shall require the State implementation plan revisions referred to in such paragraph (2) to be submitted 1 year after the area has been so designated. The preceding provisions of this paragraph shall not preclude the implementation of the agreements and recommendations set forth in the Grand Canyon Visibility Transport Commission Report dated June 1996.

"(d) The Administrator shall promulgate the designations referred to in section 107(d)(1) of the Clean Air Act [42 U.S.C. 7407(d)(1)] for each area following promulgation of the July 1997 PM₂.₅ national ambient air quality standard by the earlier of 1 year after the initial designations required under subsection (c)(1) are required to be submitted or December 31, 2005.

"(e) FIELD STUDY.—Not later than 2 years after the date of enactment of the SAFETEA–LU [Aug. 10, 2005], the Administrator shall—

"(1) conduct a field study of the ability of the PM₂.₅ Federal Reference Method to differentiate those particles that are larger than 2.5 micrometers in diameter;

"(2) develop a Federal reference method to measure directly particles that are larger than 2.5 micrometers in diameter without reliance on subtracting particle mass measurements those particles that are equal to or smaller than 2.5 micrometers in diameter;

"(3) develop a method of measuring the composition of coarse particles; and

"(4) submit a report on the study and responsibilities of the Administrator under paragraphs (1) through (3) to—

"(A) the Committee on Energy and Commerce of the House of Representatives; and

"(B) the Committee on Environment and Public Works of the Senate.

"SEC. 6103. OZONE DESIGNATION REQUIREMENTS.

"(a) The Governors shall be required to submit the designations referred to in section 107(d)(1) of the Clean Air Act [42 U.S.C. 7407(d)(1)] within 2 years following the promulgation of the July 1997 ozone national ambient air quality standards.

"(b) The Administrator shall promulgate final designations no later than 1 year after the designations required under subsection (a) are required to be submitted.

"SEC. 6104. ADDITIONAL PROVISIONS.

"Nothing in sections 6101 through 6103 shall be construed by the Administrator of Environmental Protection Agency or any court, State, or person to affect any pending litigation or to be a ratification of the ozone or PM₂.₅ standards."

PENDING ACTIONS AND PROCEEDINGS

Suits, actions, and other proceedings lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under act July 14, 1955, the Clean Air Act, as in effect immediately prior to the enactment of Pub. L. 95–95 [Aug. 7, 1977], not to abate by reason of the taking effect of Pub. L. 95–95, see section 406(a) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

§ 7408. Air quality criteria and control techniques

(a) Air pollutant list; publication and revision by Administrator; issuance of air quality criteria for air pollutants

(1) For the purpose of establishing national primary and secondary ambient air quality standards, the Administrator shall within 30 days after December 31, 1970, publish, and shall from time to time thereafter revise, a list which includes each air pollutant—

(A) emissions of which, in his judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare;

(B) the presence of which in the ambient air results from numerous or diverse mobile or stationary sources; and

(C) for which air quality criteria had not been issued before December 31, 1970 but for which he plans to issue air quality criteria under this section.

(2) The Administrator shall issue air quality criteria for an air pollutant within 12 months after he has included such pollutant in a list under paragraph (1). Air quality criteria for an air pollutant shall accurately reflect the latest scientific knowledge useful in indicating the kind and extent of all identifiable effects on public health or welfare which may be expected from the presence of such pollutant in the ambient air, in varying quantities. The criteria for an air pollutant, to the extent practicable, shall include information on—

(A) those variable factors (including atmospheric conditions) which of themselves or in combination with other factors may alter the effects on public health or welfare of such air pollutant;

(B) the types of air pollutants which, when present in the atmosphere, may interact with such pollutant to produce an adverse effect on public health or welfare; and

(C) any known or anticipated adverse effects on welfare.

**(b) Issuance by Administrator of information on air pollution control techniques; standing consulting committees for air pollutants; establishment; membership**

(1) Simultaneously with the issuance of criteria under subsection (a), the Administrator shall, after consultation with appropriate advisory committees and Federal departments and agencies, issue to the States and appropriate air pollution control agencies information on air pollution control techniques, which information shall include data relating to the cost of installation and operation, energy requirements, emission reduction benefits, and environmental impact of the emission control technology. Such information shall include such data as are available on available technology and alternative methods of prevention and control of air pollution. Such information shall also include data on alternative fuels, processes, and operating methods which will result in elimination or significant reduction of emissions.

(2) In order to assist in the development of information on pollution control techniques, the Administrator may establish a standing consulting committee for each air pollutant included in a list published pursuant to subsection (a)(1), which shall be comprised of technically qualified individuals representative of State and local governments, industry, and the academic community. Each such committee shall submit, as appropriate, to the Administrator information related to that required by paragraph (1).

**(c) Review, modification, and reissuance of criteria or information**

The Administrator shall from time to time review, and, as appropriate, modify, and reissue any criteria or information on control techniques issued pursuant to this section. Not later than six months after August 7, 1977, the Administrator shall revise and reissue criteria relating to concentrations of $NO_2$ over such period (not more than three hours) as he deems appropriate. Such criteria shall include a discussion of nitric and nitrous acids, nitrites, nitrates, nitrosamines, and other carcinogenic and potentially carcinogenic derivatives of oxides of nitrogen.

**(d) Publication in Federal Register; availability of copies for general public**

The issuance of air quality criteria and information on air pollution control techniques shall be announced in the Federal Register and copies shall be made available to the general public.

**(e) Transportation planning and guidelines**

The Administrator shall, after consultation with the Secretary of Transportation, and after providing public notice and opportunity for comment, and with State and local officials, within nine months after November 15, 1990,[1] and periodically thereafter as necessary to maintain a continuous transportation-air quality planning process, update the June 1978 Transportation-Air Quality Planning Guidelines and publish guidance on the development and implementation of transportation and other measures necessary to demonstrate and maintain attain-

_____
[1] See Codification note below.

ment of national ambient air quality standards. Such guidelines shall include information on—

(1) methods to identify and evaluate alternative planning and control activities;

(2) methods of reviewing plans on a regular basis as conditions change or new information is presented;

(0)identification of funds and other resources necessary to implement the plan, including interagency agreements on providing such funds and resources;

(3) methods to assure participation by the public in all phases of the planning process; and

(4) such other methods as the Administrator determines necessary to carry out a continuous planning process.

**(f) Information regarding processes, procedures, and methods to reduce or control pollutants in transportation; reduction of mobile source related pollutants; reduction of impact on public health**

(1) The Administrator shall publish and make available to appropriate Federal, State, and local environmental and transportation agencies not later than one year after November 15, 1990, and from time to time thereafter—

(A) information prepared, as appropriate, in consultation with the Secretary of Transportation, and after providing public notice and opportunity for comment, regarding the formulation and emission reduction potential of transportation control measures related to criteria pollutants and their precursors, including, but not limited to—

(i)  programs for improved public transit;

( )  restriction of certain roads or lanes to, or construction of such roads or lanes for use by, passenger buses or high occupancy vehicles;

( )  employer-based transportation management plans, including incentives;

(i)  trip-reduction ordinances;

(ii)  traffic flow improvement programs that achieve emission reductions;

(iii)  fringe and transportation corridor parking facilities serving multiple occupancy vehicle programs or transit service;

(iv)  programs to limit or restrict vehicle use in downtown areas or other areas of emission concentration particularly during periods of peak use;

(v)  programs for the provision of all forms of high-occupancy, shared-ride services;

(vi)  programs to limit portions of road surfaces or certain sections of the metropolitan area to the use of non-motorized vehicles or pedestrian use, both as to time and place;

(i)  programs for secure bicycle storage facilities and other facilities, including bicycle lanes, for the convenience and protection of bicyclists, in both public and private areas;

(vii)  programs to control extended idling of vehicles;

(viii)  programs to reduce motor vehicle emissions, consistent with subchapter II, which are caused by extreme cold start conditions;

(ix) employer-sponsored programs to permit flexible work schedules;

(x) programs and ordinances to facilitate non-automobile travel, provision and utilization of mass transit, and to generally reduce the need for single-occupant vehicle travel, as part of transportation planning and development efforts of a locality, including programs and ordinances applicable to new shopping centers, special events, and other centers of vehicle activity;

(xi) programs for new construction and major reconstructions of paths, tracks or areas solely for the use by pedestrian or other non-motorized means of transportation when economically feasible and in the public interest. For purposes of this clause, the Administrator shall also consult with the Secretary of the Interior; and

(xii) program to encourage the voluntary removal from use and the marketplace of pre-1980 model year light duty vehicles and pre-1980 model light duty trucks.[2]

(B) information on additional methods or strategies that will contribute to the reduction of mobile source related pollutants during periods in which any primary ambient air quality standard will be exceeded and during episodes for which an air pollution alert, warning, or emergency has been declared;

(C) information on other measures which may be employed to reduce the impact on public health or protect the health of sensitive or susceptible individuals or groups; and

(D) information on the extent to which any process, procedure, or method to reduce or control such air pollutant may cause an increase in the emissions or formation of any other pollutant.

(2) In publishing such information the Administrator shall also include an assessment of—

(A) the relative effectiveness of such processes, procedures, and methods;

(B) the potential effect of such processes, procedures, and methods on transportation systems and the provision of transportation services; and

(C) the environmental, energy, and economic impact of such processes, procedures, and methods.

**(g) Assessment of risks to ecosystems**

The Administrator may assess the risks to ecosystems from exposure to criteria air pollutants (as identified by the Administrator in the Administrator's sole discretion).

**(h) RACT/BACT/LAER clearinghouse**

The Administrator shall make information regarding emission control technology available to the States and to the general public through a central database. Such information shall include all control technology information received pursuant to State plan provisions requiring permits for sources, including operating permits for existing sources.

(July 14, 1955, ch. 360, title I, § 108, as added Pub. L. 91–604, § 4(a), Dec. 31, 1970, 84 Stat. 1678;

amended Pub. L. 95–95, title I, §§ 104, 105, title IV, § 401(a), Aug. 7, 1977, 91 Stat. 689, 790; Pub. L. 101–549, title I, §§ 108(a)–(c), (o), 111, Nov. 15, 1990, 104 Stat. 2465, 2466, 2469, 2470; Pub. L. 105–362, title XV, § 1501(b), Nov. 10, 1998, 112 Stat. 3294.)

CODIFICATION

November 15, 1990, referred to in subsec. (e), was in the original "enactment of the Clean Air Act Amendments of 1989", and was translated as meaning the date of the enactment of Pub. L. 101–549, popularly known as the Clean Air Act Amendments of 1990, to reflect the probable intent of Congress.

Section was formerly classified to section 1857c–3 of this title.

PRIOR PROVISIONS

A prior section 108 of act July 14, 1955, was renumbered section 115 by Pub. L. 91–604 and is classified to section 7415 of this title.

AMENDMENTS

1998—Subsec. (f)(3), (4). Pub. L. 105–362 struck out par. (3), which required reports by the Secretary of Transportation and the Administrator to be submitted to Congress by Jan. 1, 1993, and every 3 years thereafter, reviewing and analyzing existing State and local air quality related transportation programs, evaluating achievement of goals, and recommending changes to existing programs, and par. (4), which required that in each report after the first report the Secretary of Transportation include a description of the actions taken to implement the changes recommended in the preceding report.

1990—Subsec. (e). Pub. L. 101–549, § 108(a), inserted first sentence and struck out former first sentence which read as follows: "The Administrator shall, after consultation with the Secretary of Transportation and the Secretary of Housing and Urban Development and State and local officials and within 180 days after August 7, 1977, and from time to time thereafter, publish guidelines on the basic program elements for the plan-

ning process assisted under section 7505 of this title. Such provisions, substituted present provisions for provisions relating to Federal agencies, States, and air pollution control agencies within either 6 months or one year after Aug. 7, 1977.

Subsec. (f)(1)(A). Pub. L. 101–549, § 108(b), substituted present provisions for provisions relating to information prepared in cooperation with Secretary of Transportation, regarding processes, procedures, and methods to reduce certain pollutants.

Subsec. (f)(3), (4). Pub. L. 101–549, § 111, added pars. (3) and (4).

Subsec. (g). Pub. L. 101–549, § 108(o), added subsec. (g).

Subsec. (h). Pub. L. 101–549, § 108(c), added subsec. (h).

1977—Subsec. (a)(1)(A). Pub. L. 95–95, § 401(a), substituted "emissions of which, in his judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare" for "which in his judgment has an adverse effect on public health or welfare".

Subsec. (b)(1). Pub. L. 95–95, § 104(a), substituted "cost of installation and operation, energy requirements, emission reduction benefits, and environmental impact of the emission control technology" for "technology and costs of emission control".

Subsec. (c). Pub. L. 95–95, § 104(b), inserted provision directing the Administrator, not later than six months after Aug. 7, 1977, to revise and reissue criteria relating to concentrations of $NO_2$ over such period (not more than three hours) as he deems appropriate, with the criteria to include a discussion of nitric and nitrous acids, nitrites, nitrates, nitrosamines, and other carcinogenic and potentially carcinogenic derivatives of oxides of nitrogen.

Subsecs. (e), (f). Pub. L. 95–95, § 105, added subsecs. (e) and (f).

---

[2] So in original. The period probably should be a semicolon.

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

## § 7409. National primary and secondary ambient air quality standards

**(a) Promulgation**

(1) The Administrator—

(A) within 30 days after December 31, 1970, shall publish proposed regulations prescribing a national primary ambient air quality standard and a national secondary ambient air quality standard for each air pollutant for which air quality criteria have been issued prior to such date; and

(B) after a reasonable time for interested persons to submit written comments thereon (but no later than 90 days after the initial publication of such proposed standards) shall by regulation promulgate such proposed national primary and secondary ambient air quality standards with such modifications as he deems appropriate.

(2) With respect to any air pollutant for which air quality criteria are issued after December 31, 1970, the Administrator shall publish, simultaneously with the issuance of such criteria and information, proposed national primary and secondary ambient air quality standards for any such pollutant. The procedure provided for in paragraph (1)(B) of this subsection shall apply to the promulgation of such standards.

**(b) Protection of public health and welfare**

(1) National primary ambient air quality standards, prescribed under subsection (a) shall be ambient air quality standards the attainment and maintenance of which in the judgment of the Administrator, based on such criteria and allowing an adequate margin of safety, are requisite to protect the public health. Such primary standards may be revised in the same manner as promulgated.

(2) Any national secondary ambient air quality standard prescribed under subsection (a) shall specify a level of air quality the attainment and maintenance of which in the judgment of the Administrator, based on such criteria, is requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air. Such secondary standards may be revised in the same manner as promulgated.

**(c) National primary ambient air quality standard for nitrogen dioxide**

The Administrator shall, not later than one year after August 7, 1977, promulgate a national primary ambient air quality standard for $NO_2$ concentrations over a period of not more than 3 hours unless, based on the criteria issued under section 7408(c) of this title, he finds that there is no significant evidence that such a standard for such a period is requisite to protect public health.

**(d) Review and revision of criteria and standards; independent scientific review committee; appointment; advisory functions**

(1) Not later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under section 7408 of this title and the national ambient air quality standards promulgated under this section and shall make such revisions in such criteria and standards and promulgate such new standards as may be appropriate in accordance with section 7408 of this title and subsection (b) of this section. The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

(2)(A) The Administrator shall appoint an independent scientific review committee composed of seven members including at least one member of the National Academy of Sciences, one physician, and one person representing State air pollution control agencies.

(B) Not later than January 1, 1980, and at five-year intervals thereafter, the committee referred to in subparagraph (A) shall complete a review of the criteria published under section 7408 of this title and the national primary and secondary ambient air quality standards promulgated under this section and shall recommend to the Administrator any new national ambient air quality standards and revisions of existing criteria and standards as may be appropriate under section 7408 of this title and subsection (b) of this section.

(C) Such committee shall also (i) advise the Administrator of areas in which additional knowledge is required to appraise the adequacy and basis of existing, new, or revised national ambient air quality standards, (ii) describe the research efforts necessary to provide the required information, (iii) advise the Administrator on the relative contribution to air pollution concentrations of natural as well as anthropogenic activity, and (iv) advise the Administrator of any adverse public health, welfare, social, economic, or energy effects which may result from various strategies for attainment and maintenance of such national ambient air quality standards.

(July 14, 1955, ch. 360, title I, § 109, as added Pub. L. 91–604, § 4(a), Dec. 31, 1970, 84 Stat. 1679; amended Pub. L. 95–95, title I, § 106, Aug. 7, 1977, 91 Stat. 691.)

CODIFICATION

Section was formerly classified to section 1857c–4 of this title.

PRIOR PROVISIONS

A prior section 109 of act July 14, 1955, was renumbered section 116 by Pub. L. 91–604 and is classified to section 7416 of this title.

AMENDMENTS

1977—Subsec. (c). Pub. L. 95–95, § 106(b), added subsec. (c).

Subsec. (d). Pub. L. 95–95, § 106(a), added subsec. (d).

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

TERMINATION OF ADVISORY COMMITTEES

Advisory committees established after Jan. 5, 1973, to terminate not later than the expiration of the 2-year period beginning on the date of their establishment, unless, in the case of a committee established by the President or an officer of the Federal Government, such committee is renewed by appropriate action prior to the expiration of such 2-year period, or in the case of a committee established by the Congress, its duration is otherwise provided for by law. See section 14 of Pub. L. 92–463, Oct. 6, 1972, 86 Stat. 776, set out in the Appendix to Title 5, Government Organization and Employees.

ROLE OF SECONDARY STANDARDS

Pub. L. 101–549, title VIII, § 817, Nov. 15, 1990, 104 Stat. 2697, provided that:

"(a)  REPORT.—The Administrator shall request the National Academy of Sciences to prepare a report to the Congress on the role of national secondary ambient air quality standards in protecting welfare and the environment. The report shall:

"(1)  include information on the effects on welfare and the environment which are caused by ambient concentrations of pollutants listed pursuant to section 108 [42 U.S.C. 7408] and other pollutants which may be listed;

"(2)  estimate welfare and environmental costs incurred as a result of such effects;

"(3)  examine the role of secondary standards and the State implementation planning process in preventing such effects;

"(4)  determine ambient concentrations of each such pollutant which would be adequate to protect welfare and the environment from such effects;

"(5)  estimate the costs and other impacts of meeting secondary standards; and

"(6)  consider other means consistent with the goals and objectives of the Clean Air Act [42 U.S.C. 7401 et seq.] which may be more effective than secondary standards in preventing or mitigating such effects.

"(b)  SUBMISSION TO CONGRESS; COMMENTS; AUTHORIZATION.—(1) The report shall be transmitted to the Congress not later than 3 years after the date of enactment of the Clean Air Act Amendments of 1990 [Nov. 15, 1990].

"(2) At least 90 days before issuing a report the Administrator shall provide an opportunity for public comment on the proposed report. The Administrator shall include in the final report a summary of the comments received on the proposed report.

"(3) There are authorized to be appropriated such sums as are necessary to carry out this section."

§ 7410.  State implementation plans for national primary and secondary ambient air quality standards

(a)  Adoption of plan by State; submission to Administrator; content of plan; revision; new sources; indirect source review program; supplemental or intermittent control systems

(1)  Each State shall, after reasonable notice and public hearings, adopt and submit to the Administrator, within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national primary ambient air quality standard (or any revision thereof) under section 7409 of this title for any air pollutant, a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof) within such State. In addition, such State shall adopt and submit to the Administrator (either as a part of a plan submitted under the preceding sentence or separately) within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national ambient air quality secondary standard (or revision thereof), a plan which provides for implementation, maintenance, and enforcement of such secondary standard in each air quality control region (or portion thereof) within such State. Unless a separate public hearing is provided, each State shall consider its plan implementing such secondary standard at the hearing required by the first sentence of this paragraph.

(2) Each implementation plan submitted by a State under this chapter shall be adopted by the State after reasonable notice and public hearing. Each such plan shall—

(A)  include enforceable emission limitations and other control measures, means, or techniques (including economic incentives such as fees, marketable permits, and auctions of emissions rights), as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements of this chapter;

(B)  provide for establishment and operation of appropriate devices, methods, systems, and procedures necessary to—

(i)  monitor, compile, and analyze data on ambient air quality, and

(ii)  upon request, make such data available to the Administrator;

(C)  include a program to provide for the enforcement of the measures described in subparagraph (A), and regulation of the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that national ambient air quality standards are achieved, including a permit program as required in parts C and D;

(D)  contain adequate provisions—

(i)  prohibiting, consistent with the provisions of this subchapter, any source or other type of emissions activity within the State

from emitting any air pollutant in amounts which will—

(I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard, or

(II) interfere with measures required to be included in the applicable implementation plan for any other State under part C to prevent significant deterioration of air quality or to protect visibility,

(ii) insuring compliance with the applicable requirements of sections 7426 and 7415 of this title (relating to interstate and international pollution abatement);

(E) provide (i) necessary assurances that the State (or, except where the Administrator deems inappropriate, the general purpose local government or governments, or a regional agency designated by the State or general purpose local governments for such purpose) will have adequate personnel, funding, and authority under State (and, as appropriate, local) law to carry out such implementation plan (and is not prohibited by any provision of Federal or State law from carrying out such implementation plan or portion thereof), (ii) requirements that the State comply with the requirements respecting State boards under section 7428 of this title, and (iii) necessary assurances that, where the State has relied on a local or regional government, agency, or instrumentality for the implementation of any plan provision, the State has responsibility for ensuring adequate implementation of such plan provision;

(F) require, as may be prescribed by the Administrator—

(i) the installation, maintenance, and replacement of equipment, and the implementation of other necessary steps, by owners or operators of stationary sources to monitor emissions from such sources,

(ii) periodic reports on the nature and amounts of emissions and emissions-related data from such sources, and

(xiii) correlation of such reports by the State agency with any emission limitations or standards established pursuant to this chapter, which reports shall be available at reasonable times for public inspection;

(G) provide for authority comparable to that in section 7603 of this title and adequate contingency plans to implement such authority;

(H) provide for revision of such plan—

(i) from time to time as may be necessary to take account of revisions of such national primary or secondary ambient air quality standard or the availability of improved or more expeditious methods of attaining such standard, and

(ii) except as provided in paragraph (3)(C), whenever the Administrator finds on the basis of information available to the Administrator that the plan is substantially inadequate to attain the national ambient air quality standard which it implements or to otherwise comply with any additional requirements established under this chapter;

(I) in the case of a plan or plan revision for an area designated as a nonattainment area, meet the applicable requirements of part D (relating to nonattainment areas);

(J) meet the applicable requirements of section 7421 of this title (relating to consultation), section 7427 of this title (relating to public notification), and part C (relating to prevention of significant deterioration of air quality and visibility protection);

(K) provide for—

(i) the performance of such air quality modeling as the Administrator may prescribe for the purpose of predicting the effect on ambient air quality of any emissions of any air pollutant for which the Administrator has established a national ambient air quality standard, and

(ii) the submission, upon request, of data related to such air quality modeling to the Administrator;

(L) require the owner or operator of each major stationary source to pay to the permitting authority, as a condition of any permit required under this chapter, a fee sufficient to cover—

(i) the reasonable costs of reviewing and acting upon any application for such a permit, and

(ii) if the owner or operator receives a permit for such source, the reasonable costs of implementing and enforcing the terms and conditions of any such permit (not including any court costs or other costs associated with any enforcement action),

until such fee requirement is superseded with respect to such sources by the Administrator's approval of a fee program under subchapter V; and

(M) provide for consultation and participation by local political subdivisions affected by the plan.

(3)(A) Repealed. Pub. L. 101–549, title I, § 101(d)(1), Nov. 15, 1990, 104 Stat. 2409.

(B)     As soon as practicable, the Administrator shall, consistent with the purposes of this chapter and the Energy Supply and Environmental Coordination Act of 1974 [15 U.S.C. 791 et seq.], review each State's applicable implementation plans and report to the State on whether such plans can be revised in relation to fuel burning stationary sources (or persons supplying fuel to such sources) without interfering with the attainment and maintenance of any national ambient air quality standard within the period permitted in this section. If the Administrator determines that any such plan can be revised, he shall notify the State that a plan revision may be submitted by the State. Any plan revision which is submitted by the State shall, after public notice and opportunity for public hearing, be approved by the Administrator if the revision relates only to fuel burning stationary sources (or persons supplying fuel to such sources), and the plan as revised complies with paragraph (2) of this subsection. The Administrator shall approve or disapprove any revision no later than three months after its submission.

(C)     Neither the State, in the case of a plan (or portion thereof) approved under this subsection,

nor the Administrator, in the case of a plan (or portion thereof) promulgated under subsection (c), shall be required to revise an applicable implementation plan because one or more exemptions under section 7418 of this title (relating to Federal facilities), enforcement orders under section 7413(d) [1] of this title, suspensions under subsection (f) or (g) (relating to temporary energy or economic authority), orders under section 7419 of this title (relating to primary nonferrous smelters), or extensions of compliance in decrees entered under section 7413(e) [1] of this title (relating to iron- and steel-producing operations) have been granted, if such plan would have met the requirements of this section if no such exemptions, orders, or extensions had been granted.

(4) Repealed. Pub. L. 101–549, title I, § 101(d)(2), Nov. 15, 1990, 104 Stat. 2409.

(5)(A)(i) Any State may include in a State implementation plan, but the Administrator may not require as a condition of approval of such plan under this section, any indirect source review program. The Administrator may approve and enforce, as part of an applicable implementation plan, an indirect source review program which the State chooses to adopt and submit as part of its plan.

(ii) Except as provided in subparagraph (B), no plan promulgated by the Administrator shall include any indirect source review program for any air quality control region, or portion thereof.

(iii) Any State may revise an applicable implementation plan approved under this subsection to suspend or revoke any such program included in such plan, provided that such plan meets the requirements of this section.

(B) The Administrator shall have the authority to promulgate, implement and enforce regulations under subsection (c) respecting indirect source review programs which apply only to federally assisted highways, airports, and other major federally assisted indirect sources and federally owned or operated indirect sources.

(C) For purposes of this paragraph, the term "indirect source" means a facility, building, structure, installation, real property, road, or highway which attracts, or may attract, mobile sources of pollution. Such term includes parking lots, parking garages, and other facilities subject to any measure for management of parking supply (within the meaning of subsection (c)(2)(D)(ii)), including regulation of existing off-street parking but such term does not include new or existing on-street parking. Direct emissions sources or facilities at, within, or associated with, any indirect source shall not be deemed indirect sources for the purpose of this paragraph.

(D) For purposes of this paragraph the term "indirect source review program" means the facility-by-facility review of indirect sources of air pollution, including such measures as are necessary to assure, or assist in assuring, that a new or modified indirect source will not attract mobile sources of air pollution, the emissions from which would cause or contribute to air pollution concentrations—

(i) exceeding any national primary ambient air quality standard for a mobile source-related air pollutant after the primary standard attainment date, or

(iii) preventing maintenance of any such standard after such date.

(E) For purposes of this paragraph and paragraph (2)(B), the term "transportation control measure" does not include any measure which is an "indirect source review program".

(6) No State plan shall be treated as meeting the requirements of this section unless such plan provides that in the case of any source which uses a supplemental, or intermittent control system for purposes of meeting the requirements of an order under section 7413(d) [1] of this title or section 7419 of this title (relating to primary nonferrous smelter orders), the owner or operator of such source may not temporarily reduce the pay of any employee by reason of the use of such supplemental or intermittent or other dispersion dependent control system.

**(b) Extension of period for submission of plans**

The Administrator may, wherever he determines necessary, extend the period for submission of any plan or portion thereof which implements a national secondary ambient air quality standard for a period not to exceed 18 months from the date otherwise required for submission of such plan.

**(c) Preparation and publication by Administrator of proposed regulations setting forth implementation plan; transportation regulations study and report; parking surcharge; suspension authority; plan implementation**

(1) The Administrator shall promulgate a Federal implementation plan at any time within 2 years after the Administrator—

(A) finds that a State has failed to make a required submission or finds that the plan or plan revision submitted by the State does not satisfy the minimum criteria established under subsection (k)(1)(A), or

(B) disapproves a State implementation plan submission in whole or in part,

unless the State corrects the deficiency, and the Administrator approves the plan or plan revision, before the Administrator promulgates such Federal implementation plan.

(2)(A) Repealed. Pub. L. 101–549, title I, § 101(d)(3)(A), Nov. 15, 1990, 104 Stat. 2409.

(B) No parking surcharge regulation may be required by the Administrator under paragraph (1) of this subsection as a part of an applicable implementation plan. All parking surcharge regulations previously required by the Administrator shall be void upon June 22, 1974. This subparagraph shall not prevent the Administrator from approving parking surcharges if they are adopted and submitted by a State as part of an applicable implementation plan. The Administrator may not condition approval of any implementation plan submitted by a State on such plan's including a parking surcharge regulation.

(C) Repealed. Pub. L. 101–549, title I, § 101(d)(3)(B), Nov. 15, 1990, 104 Stat. 2409.

(F) For purposes of this paragraph—

(i) The term "parking surcharge regulation" means a regulation imposing or requiring the

---

[1] See References in Text note below.

imposition of any tax, surcharge, fee, or other charge on parking spaces, or any other area used for the temporary storage of motor vehicles.

(ii) The term "management of parking supply" shall include any requirement providing that any new facility containing a given number of parking spaces shall receive a permit or other prior approval, issuance of which is to be conditioned on air quality considerations.

(xiv) The term "preferential bus/carpool lane" shall include any requirement for the setting aside of one or more lanes of a street or highway on a permanent or temporary basis for the exclusive use of buses or carpools, or both.

(E) No standard, plan, or requirement, relating to management of parking supply or preferential bus/carpool lanes shall be promulgated after June 22, 1974, by the Administrator pursuant to this section, unless such promulgation has been subjected to at least one public hearing which has been held in the area affected and for which reasonable notice has been given in such area. If substantial changes are made following public hearings, one or more additional hearings shall be held in such area after such notice.

(3) Upon application of the chief executive officer of any general purpose unit of local government, if the Administrator determines that such unit has adequate authority under State or local law, the Administrator may delegate to such unit the authority to implement and enforce within the jurisdiction of such unit any part of a plan promulgated under this subsection. Nothing in this paragraph shall prevent the Administrator from implementing or enforcing any applicable provision of a plan promulgated under this subsection.

(0) Repealed. Pub. L. 101–549, title I, § 101(d)(3)(C), Nov. 15, 1990, 104 Stat. 2409.

(5)(A) Any measure in an applicable implementation plan which requires a toll or other charge for the use of a bridge located entirely within one city shall be eliminated from such plan by the Administrator upon application by the Governor of the State, which application shall include a certification by the Governor that he will revise such plan in accordance with subparagraph (B).

(B) In the case of any applicable implementation plan with respect to which a measure has been eliminated under subparagraph (A), such plan shall, not later than one year after August 7, 1977, be revised to include comprehensive measures to:

(i) establish, expand, or improve public transportation measures to meet basic transportation needs, as expeditiously as is practicable; and

(ii) implement transportation control measures necessary to attain and maintain national ambient air quality standards,

and such revised plan shall, for the purpose of implementing such comprehensive public transportation measures, include requirements to use (insofar as is necessary) Federal grants, State or local funds, or any combination of such grants and funds as may be consistent with the terms of the legislation providing such grants and

funds. Such measures shall, as a substitute for the tolls or charges eliminated under subparagraph (A), provide for emissions reductions equivalent to the reductions which may reasonably be expected to be achieved through the use of the tolls or charges eliminated.

(C) Any revision of an implementation plan for purposes of meeting the requirements of subparagraph (B) shall be submitted in coordination with any plan revision required under part D.

**(d), (e) Repealed. Pub. L. 101–549, title I, § 101(d)(4), (5), Nov. 15, 1990, 104 Stat. 2409**

**(f) National or regional energy emergencies; determination by President**

(1) Upon application by the owner or operator of a fuel burning stationary source, and after notice and opportunity for public hearing, the Governor of the State in which such source is located may petition the President to determine that a national or regional energy emergency exists of such severity that—

(A) a temporary suspension of any part of the applicable implementation plan or of any requirement under section 7651j of this title (concerning excess emissions penalties or offsets) may be necessary, and

(B) other means of responding to the energy emergency may be inadequate.

Such determination shall not be delegable by the President to any other person. If the President determines that a national or regional energy emergency of such severity exists, a temporary emergency suspension of any part of an applicable implementation plan or of any requirement under section 7651j of this title (concerning excess emissions penalties or offsets) adopted by the State may be issued by the Governor of any State covered by the President's determination under the condition specified in paragraph (2) and may take effect immediately.

(2) A temporary emergency suspension under this subsection shall be issued to a source only if the Governor of such State finds that—

(A) there exists in the vicinity of such source a temporary energy emergency involving high levels of unemployment or loss of necessary energy supplies for residential dwellings; and

(B) such unemployment or loss can be totally or partially alleviated by such emergency suspension.

Not more than one such suspension may be issued for any source on the basis of the same set of circumstances or on the basis of the same emergency.

(3) A temporary emergency suspension issued by a Governor under this subsection shall remain in effect for a maximum of four months or such lesser period as may be specified in a disapproval order of the Administrator, if any. The Administrator may disapprove such suspension if he determines that it does not meet the requirements of paragraph (2).

(4) This subsection shall not apply in the case of a plan provision or requirement promulgated by the Administrator under subsection (c) of this section, but in any such case the President may grant a temporary emergency suspension for a four month period of any such provision or

requirement if he makes the determinations and findings specified in paragraphs (1) and (2).

(5) The Governor may include in any temporary emergency suspension issued under this subsection a provision delaying for a period identical to the period of such suspension any compliance schedule (or increment of progress) to which such source is subject under section 1857c–10[1] of this title, as in effect before August 7, 1977, or section 7413(d)[1] of this title, upon a finding that such source is unable to comply with such schedule (or increment) solely because of the conditions on the basis of which a suspension was issued under this subsection.

**(g) Governor's authority to issue temporary emergency suspensions**

(1) In the case of any State which has adopted and submitted to the Administrator a proposed plan revision which the State determines—

(A) meets the requirements of this section, and

(B) is necessary (i) to prevent the closing for one year or more of any source of air pollution, and (ii) to prevent substantial increases in unemployment which would result from such closing, and

which the Administrator has not approved or disapproved under this section within 12 months of submission of the proposed plan revision, the Governor may issue a temporary emergency suspension of the part of the applicable implementation plan for such State which is proposed to be revised with respect to such source. The determination under subparagraph (B) may not be made with respect to a source which would close without regard to whether or not the proposed plan revision is approved.

(2) A temporary emergency suspension issued by a Governor under this subsection shall remain in effect for a maximum of four months or such lesser period as may be specified in a disapproval order of the Administrator. The Administrator may disapprove such suspension if he determines that it does not meet the requirements of this subsection.

(3) The Governor may include in any temporary emergency suspension issued under this subsection a provision delaying for a period identical to the period of such suspension any compliance schedule (or increment of progress) to which such source is subject under section 1857c–10[1] of this title as in effect before August 7, 1977, or under section 7413(d)[1] of this title upon a finding that such source is unable to comply with such schedule (or increment) solely because of the conditions on the basis of which a suspension was issued under this subsection.

**(h) Publication of comprehensive document for each State setting forth requirements of applicable implementation plan**

(1) Not later than 5 years after November 15, 1990, and every 3 years thereafter, the Administrator shall assemble and publish a comprehensive document for each State setting forth all requirements of the applicable implementation plan for such State and shall publish notice in the Federal Register of the availability of such documents.

(2) The Administrator may promulgate such regulations as may be reasonably necessary to carry out the purpose of this subsection.

**(i) Modification of requirements prohibited**

Except for a primary nonferrous smelter order under section 7419 of this title, a suspension under subsection (f) or (g) (relating to emergency suspensions), an exemption under section 7418 of this title (relating to certain Federal facilities), an order under section 7413(d)[1] of this title (relating to compliance orders), a plan promulgation under subsection (c), or a plan revision under subsection (a)(3); no order, suspension, plan revision, or other action modifying any requirement of an applicable implementation plan may be taken with respect to any stationary source by the State or by the Administrator.

**(j) Technological systems of continuous emission reduction on new or modified stationary sources; compliance with performance standards**

As a condition for issuance of any permit required under this subchapter, the owner or operator of each new or modified stationary source which is required to obtain such a permit must show to the satisfaction of the permitting authority that the technological system of continuous emission reduction which is to be used at such source will enable it to comply with the standards of performance which are to apply to such source and that the construction or modification and operation of such source will be in compliance with all other requirements of this chapter.

**(k) Environmental Protection Agency action on plan submissions**

**(1) Completeness of plan submissions**

**(A) Completeness criteria**

Within 9 months after November 15, 1990, the Administrator shall promulgate minimum criteria that any plan submission must meet before the Administrator is required to act on such submission under this subsection. The criteria shall be limited to the information necessary to enable the Administrator to determine whether the plan submission complies with the provisions of this chapter.

**(B) Completeness finding**

Within 60 days of the Administrator's receipt of a plan or plan revision, but no later than 6 months after the date, if any, by which a State is required to submit the plan or revision, the Administrator shall determine whether the minimum criteria established pursuant to subparagraph (A) have been met. Any plan or plan revision that a State submits to the Administrator, and that has not been determined by the Administrator (by the date 6 months after receipt of the submission) to have failed to meet the minimum criteria established pursuant to subparagraph (A), shall on that date be deemed by operation of law to meet such minimum criteria.

**(C) Effect of finding of incompleteness**

Where the Administrator determines that a plan submission (or part thereof) does not meet the minimum criteria established pur-

suant to subparagraph (A), the State shall be treated as not having made the submission (or, in the Administrator's discretion, part thereof).

**(2) Deadline for action**

Within 12 months of a determination by the Administrator (or a determination deemed by operation of law) under paragraph (1) that a State has submitted a plan or plan revision (or, in the Administrator's discretion, part thereof) that meets the minimum criteria established pursuant to paragraph (1), if applicable (or, if those criteria are not applicable, within 12 months of submission of the plan or revision), the Administrator shall act on the submission in accordance with paragraph (3).

**(3) Full and partial approval and disapproval**

In the case of any submittal on which the Administrator is required to act under paragraph (2), the Administrator shall approve such submittal as a whole if it meets all of the applicable requirements of this chapter. If a portion of the plan revision meets all the applicable requirements of this chapter, the Administrator may approve the plan revision in part and disapprove the plan revision in part. The plan revision shall not be treated as meeting the requirements of this chapter until the Administrator approves the entire plan revision as complying with the applicable requirements of this chapter.

**(4) Conditional approval**

The Administrator may approve a plan revision based on a commitment of the State to adopt specific enforceable measures by a date certain, but not later than 1 year after the date of approval of the plan revision. Any such conditional approval shall be treated as a disapproval if the State fails to comply with such commitment.

**(5) Calls for plan revisions**

Whenever the Administrator finds that the applicable implementation plan for any area is substantially inadequate to attain or maintain the relevant national ambient air quality standard, to mitigate adequately the interstate pollutant transport described in section 7506a of this title or section 7511c of this title, or to otherwise comply with any requirement of this chapter, the Administrator shall require the State to revise the plan as necessary to correct such inadequacies. The Administrator shall notify the State of the inadequacies, and may establish reasonable deadlines (not to exceed 18 months after the date of such notice) for the submission of such plan revisions. Such findings and notice shall be public. Any finding under this paragraph shall, to the extent the Administrator deems appropriate, subject the State to the requirements of this chapter to which the State was subject when it developed and submitted the plan for which such finding was made, except that the Administrator may adjust any dates applicable under such requirements as appropriate (except that the Administrator may not adjust any attainment date prescribed under part D, unless such date has elapsed).

**(6) Corrections**

Whenever the Administrator determines that the Administrator's action approving, disapproving, or promulgating any plan or plan revision (or part thereof), area designation, redesignation, classification, or reclassification was in error, the Administrator may in the same manner as the approval, disapproval, or promulgation revise such action as appropriate without requiring any further submission from the State. Such determination and the basis thereof shall be provided to the State and public.

**(l)    Plan revisions**

Each revision to an implementation plan submitted by a State under this chapter shall be adopted by such State after reasonable notice and public hearing. The Administrator shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment and reasonable further progress (as defined in section 7501 of this title), or any other applicable requirement of this chapter.

**()    Sanctions**

The Administrator may apply any of the sanctions listed in section 7509(b) of this title at any time (or at any time after) the Administrator makes a finding, disapproval, or determination under paragraphs (1) through (4), respectively, of section 7509(a) of this title in relation to any plan or plan item (as that term is defined by the Administrator) required under this chapter, with respect to any portion of the State the Administrator determines reasonable and appropriate, for the purpose of ensuring that the requirements of this chapter relating to such plan or plan item are met. The Administrator shall, by rule, establish criteria for exercising his authority under the previous sentence with respect to any deficiency referred to in section 7509(a) of this title to ensure that, during the 24-month period following the finding, disapproval, or determination referred to in section 7509(a) of this title, such sanctions are not applied on a statewide basis where one or more political subdivisions covered by the applicable implementation plan are principally responsible for such deficiency.

**(m)    Savings clauses**

**(1) Existing plan provisions**

Any provision of any applicable implementation plan that was approved or promulgated by the Administrator pursuant to this section as in effect before November 15, 1990, shall remain in effect as part of such applicable implementation plan, except to the extent that a revision to such provision is approved or promulgated by the Administrator pursuant to this chapter.

**(2) Attainment dates**

For any area not designated nonattainment, any plan or plan revision submitted or required to be submitted by a State—

(A) in response to the promulgation or revision of a national primary ambient air quality standard in effect on November 15, 1990, or

(B) in response to a finding of substantial inadequacy under subsection (a)(2) (as in effect immediately before November 15, 1990),

shall provide for attainment of the national primary ambient air quality standards within 3 years of November 15, 1990, or within 5 years of issuance of such finding of substantial inadequacy, whichever is later.

**(3) Retention of construction moratorium in certain areas**

In the case of an area to which, immediately before November 15, 1990, the prohibition on construction or modification of major stationary sources prescribed in subsection (a)(2)(I) (as in effect immediately before November 15, 1990) applied by virtue of a finding of the Administrator that the State containing such area had not submitted an implementation plan meeting the requirements of section 7502(b)(6) of this title (relating to establishment of a permit program) (as in effect immediately before November 15, 1990) or 7502(a)(1) of this title (to the extent such requirements relate to provision for attainment of the primary national ambient air quality standard for sulfur oxides by December 31, 1982) as in effect immediately before November 15, 1990, no major stationary source of the relevant air pollutant or pollutants shall be constructed or modified in such area until the Administrator finds that the plan for such area meets the applicable requirements of section 7502(c)(5) of this title (relating to permit programs) or subpart 5 of part D (relating to attainment of the primary national ambient air quality standard for sulfur dioxide), respectively.

**(o) Indian tribes**

If an Indian tribe submits an implementation plan to the Administrator pursuant to section 7601(d) of this title, the plan shall be reviewed in accordance with the provisions for review set forth in this section for State plans, except as otherwise provided by regulation promulgated pursuant to section 7601(d)(2) of this title. When such plan becomes effective in accordance with the regulations promulgated under section 7601(d) of this title, the plan shall become applicable to all areas (except as expressly provided otherwise in the plan) located within the exterior boundaries of the reservation, notwithstanding the issuance of any patent and including rights-of-way running through the reservation.

**(p) Reports**

Any State shall submit, according to such schedule as the Administrator may prescribe, such reports as the Administrator may require relating to emission reductions, vehicle miles traveled, congestion levels, and any other information the Administrator may deem necessary to assess the development[2] effectiveness, need for revision, or implementation of any plan or plan revision required under this chapter.

(July 14, 1955, ch. 360, title I, § 110, as added Pub. L. 91–604, § 4(a), Dec. 31, 1970, 84 Stat. 1680;

---

[2] So in original. Probably should be followed by a comma.

---

amended Pub. L. 93–319, § 4, June 22, 1974, 88 Stat. 256; Pub. L. 95–95, title I, §§ 107, 108, Aug. 7, 1977, 91 Stat. 691, 693; Pub. L. 95–190, § 14(a)(1)–(6), Nov. 16, 1977, 91 Stat. 1399; Pub. L. 97–23, § 3, July 17, 1981, 95 Stat. 142; Pub. L. 101–549, title I, §§ 101(b)–(d), 102(h), 107(c), 108(d), title IV, § 412, Nov. 15, 1990, 104 Stat. 2404–2408, 2422, 2464, 2466, 2634.)

REFERENCES IN TEXT

The Energy Supply and Environmental Coordination Act of 1974, referred to in subsec. (a)(3)(B), is Pub. L. 93–319, June 22, 1974, 88 Stat. 246, as amended, which is classified principally to chapter 16C (§ 791 et seq.) of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 791 of Title 15 and Tables.

Section 7413 of this title, referred to in subsecs. (a)(3)(C), (6), (f)(5), (g)(3), and (i), was amended generally by Pub. L. 101–549, title VII, § 701, Nov. 15, 1990, 104 Stat. 2672, and, as so amended, subsecs. (d) and (e) of section 7413 no longer relates to final compliance orders and steel industry compliance extension, respectively.

Section 1857c–10 of this title, as in effect before August 7, 1977, referred to in subsecs. (f)(5) and (g)(3), was in the original "section 119, as in effect before the date of the enactment of this paragraph", meaning section 119 of act July 14, 1955, ch. 360, title I, as added June 22, 1974, Pub. L. 93–319, § 3, 88 Stat. 248, (which was classified to section 1857c–10 of this title) as in effect prior to the enactment of subsecs. (f)(5) and (g)(3) of this section by Pub. L. 95–95, § 107, Aug. 7, 1977, 91 Stat. 691, effective Aug. 7, 1977. Section 112(b)(1) of Pub. L. 95–95 repealed section 119 of act July 14, 1955, ch. 360, title I, as added by Pub. L. 93–319, and provided that all references to such section 119 in any subsequent enactment which supersedes Pub. L. 93–319 shall be construed to refer to section 113(d) of the Clean Air Act and to paragraph (5) thereof in particular which is classified to section 7413(d)(5) of this title. Section 7413 of this title was subsequently amended generally by Pub. L. 101–549, title VII, § 701, Nov. 15, 1990, 104 Stat. 2672, see note above. Section 117(b) of Pub. L. 95–95 added a new section 119 of act July 14, 1955, which is classified to section 7419 of this title.

CODIFICATION

Section was formerly classified to section 1857c–5 of this title.

PRIOR PROVISIONS

A prior section 110 of act July 14, 1955, was renumbered section 117 by Pub. L. 91–604 and is classified to section 7417 of this title.

AMENDMENTS

1990—Subsec. (a)(1). Pub. L. 101–549, § 101(d)(8), substituted "3 years (or such shorter period as the Administrator may prescribe)" for "nine months" in two places.

Subsec. (a)(2). Pub. L. 101–549, § 101(b), amended par. (2) generally, substituting present provisions for provisions setting the time within which the Administrator was to approve or disapprove a plan or portion thereof and listing the conditions under which the plan or portion thereof was to be approved after reasonable notice and hearing.

Subsec. (a)(3)(A). Pub. L. 101–549, § 101(d)(1), struck out subpar. (A) which directed Administrator to approve any revision of an implementation plan if it met certain requirements and had been adopted by the State after reasonable notice and public hearings.

Subsec. (a)(3)(D). Pub. L. 101–549, § 101(d)(1), struck out subpar. (D) which directed that certain implementation plans be revised to include comprehensive measures and requirements.

Subsec. (a)(4). Pub. L. 101–549, § 101(d)(2), struck out par. (4) which set forth requirements for review procedure.

which construction commenced after January 6, 1975, shall not be included in the baseline and shall be counted against the maximum allowable increases in pollutant concentrations established under this part.

(July 14, 1955, ch. 360, title I, § 169, as added Pub. L. 95–95, title I, § 127(a), Aug. 7, 1977, 91 Stat. 740; amended Pub. L. 95–190, § 14(a)(54), Nov. 16, 1977, 91 Stat. 1402; Pub. L. 101–549, title III, § 305(b), title IV, § 403(d), Nov. 15, 1990, 104 Stat. 2583, 2631.)

### AMENDMENTS

1990—Par. (1). Pub. L. 101–549, § 305(b), struck out "two hundred and" after "municipal incinerators capable of charging more than".

Par. (3). Pub. L. 101–549, § 403(d), directed the insertion of ", clean fuels," after "including fuel cleaning,", which was executed by making the insertion after "including fuel cleaning" to reflect the probable intent of Congress, and inserted at end "Emissions from any source utilizing clean fuels, or any other means, to comply with this paragraph shall not be allowed to increase above levels that would have been required under this paragraph as it existed prior to November 15,

1990."1977—Par. (2)(C). Pub. L. 95–190 added subpar. (C).

### STUDY OF MAJOR EMITTING FACILITIES WITH POTENTIAL OF EMITTING 250 TONS PER YEAR

Pub. L. 95–95, title I, § 127(b), Aug. 7, 1977, 91 Stat. 741, directed Administrator, within 1 year after Aug. 7, 1977, to report to Congress on consequences of that portion of definition of "major emitting facility" under this subpart which applies to facilities with potential to emit 250 tons per year or more.

### SUBPART II—VISIBILITY PROTECTION

### CODIFICATION

As originally enacted, subpart II of part C of subchapter I of this chapter was added following section 7478 of this title. Pub. L. 95–190, § 14(a)(53), Nov. 16, 1977, 91 Stat. 1402, struck out subpart II and inserted such subpart following section 7479 of this title.

### § 7491. Visibility protection for Federal class I areas

#### (a) Impairment of visibility; list of areas; study and report

(1) Congress hereby declares as a national goal the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory class I Federal areas which impairment results from manmade air pollution.

(2) Not later than six months after August 7, 1977, the Secretary of the Interior in consultation with other Federal land managers shall review all mandatory class I Federal areas and identify those where visibility is an important value of the area. From time to time the Secretary of the Interior may revise such identifications. Not later than one year after August 7, 1977, the Administrator shall, after consultation with the Secretary of the Interior, promulgate a list of mandatory class I Federal areas in which he determines visibility is an important value.

(3) Not later than eighteen months after August 7, 1977, the Administrator shall complete a study and report to Congress on available methods for implementing the national goal set forth in paragraph (1). Such report shall include recommendations for—

(A) methods for identifying, characterizing, determining, quantifying, and measuring visibility impairment in Federal areas referred to in paragraph (1), and

(B) modeling techniques (or other methods) for determining the extent to which manmade air pollution may reasonably be anticipated to cause or contribute to such impairment, and

(C) methods for preventing and remedying such manmade air pollution and resulting visibility impairment.

Such report shall also identify the classes or categories of sources and the types of air pollutants which, alone or in conjunction with other sources or pollutants, may reasonably be anticipated to cause or contribute significantly to impairment of visibility.

(4) Not later than twenty-four months after August 7, 1977, and after notice and public hearing, the Administrator shall promulgate regulations to assure (A) reasonable progress toward meeting the national goal specified in paragraph (1), and (B) compliance with the requirements of this section.

#### (b) Regulations

Regulations under subsection (a)(4) shall—

(1) provide guidelines to the States, taking into account the recommendations under subsection (a)(3) on appropriate techniques and methods for implementing this section (as provided in subparagraphs (A) through (C) of such subsection (a)(3)), and

(2) require each applicable implementation plan for a State in which any area listed by the Administrator under subsection (a)(2) is located (or for a State the emissions from which may reasonably be anticipated to cause or contribute to any impairment of visibility in any such area) to contain such emission limits, schedules of compliance and other measures as may be necessary to make reasonable progress toward meeting the national goal specified in subsection (a), including—

(A) except as otherwise provided pursuant to subsection (c), a requirement that each major stationary source which is in existence on August 7, 1977, but which has not been in operation for more than fifteen years as of such date, and which, as determined by the State (or the Administrator in the case of a plan promulgated under section 7410(c) of this title) emits any air pollutant which may reasonably be anticipated to cause or contribute to any impairment of visibility in any such area, shall procure, install, and operate, as expeditiously as practicable (and maintain thereafter) the best available retrofit technology, as determined by the State (or the Administrator in the case of a plan promulgated under section 7410(c) of this title) for controlling emissions from such source for the purpose of eliminating or reducing any such impairment, and

(B) a long-term (ten to fifteen years) strategy for making reasonable progress toward meeting the national goal specified in subsection (a).

In the case of a fossil-fuel fired generating powerplant having a total generating capacity in ex-

cess of 750 megawatts, the emission limitations required under this paragraph shall be determined pursuant to guidelines, promulgated by the Administrator under paragraph (1).

**(c) Exemptions**

(1) The Administrator may, by rule, after notice and opportunity for public hearing, exempt any major stationary source from the requirement of subsection (b)(2)(A), upon his determination that such source does not or will not, by itself or in combination with other sources, emit any air pollutant which may reasonably be anticipated to cause or contribute to a significant impairment of visibility in any mandatory class I Federal area.

(2) Paragraph (1) of this subsection shall not be applicable to any fossil-fuel fired powerplant with total design capacity of 750 megawatts or more, unless the owner or operator of any such plant demonstrates to the satisfaction of the Administrator that such powerplant is located at such distance from all areas listed by the Administrator under subsection (a)(2) that such powerplant does not or will not, by itself or in combination with other sources, emit any air pollutant which may reasonably be anticipated to cause or contribute to significant impairment of visibility in any such area.

(3) An exemption under this subsection shall be effective only upon concurrence by the appropriate Federal land manager or managers with the Administrator's determination under this subsection.

**(d) Consultations with appropriate Federal land managers**

Before holding the public hearing on the proposed revision of an applicable implementation plan to meet the requirements of this section, the State (or the Administrator, in the case of a plan promulgated under section 7410(c) of this title) shall consult in person with the appropriate Federal land manager or managers and shall include a summary of the conclusions and recommendations of the Federal land managers in the notice to the public.

**(e) Buffer zones**

In promulgating regulations under this section, the Administrator shall not require the use of any automatic or uniform buffer zone or zones.

**(f) Nondiscretionary duty**

For purposes of section 7604(a)(2) of this title, the meeting of the national goal specified in subsection (a)(1) by any specific date or dates shall not be considered a "nondiscretionary duty" of the Administrator.

**(g) Definitions**

For the purpose of this section—

(1) in determining reasonable progress there shall be taken into consideration the costs of compliance, the time necessary for compliance, and the energy and nonair quality environmental impacts of compliance, and the remaining useful life of any existing source subject to such requirements;

(2) in determining best available retrofit technology the State (or the Administrator in determining emission limitations which re

flect such technology) shall take into consideration the costs of compliance, the energy and nonair quality environmental impacts of compliance, any existing pollution control technology in use at the source, the remaining useful life of the source, and the degree of improvement in visibility which may reasonably be anticipated to result from the use of such technology;

(4) the term "manmade air pollution" means air pollution which results directly or indirectly from human activities;

(5) the term "as expeditiously as practicable" means as expeditiously as practicable but in no event later than five years after the date of approval of a plan revision under this section (or the date of promulgation of such a plan revision in the case of action by the Administrator under section 7410(c) of this title for purposes of this section);

(6) the term "mandatory class I Federal areas" means Federal areas which may not be designated as other than class I under this part;

(7) the terms "visibility impairment" and "impairment of visibility" shall include reduction in visual range and atmospheric discoloration; and

(8) the term "major stationary source" means the following types of stationary sources with the potential to emit 250 tons or more of any pollutant: fossil-fuel fired steam electric plants of more than 250 million British thermal units per hour heat input, coal cleaning plants (thermal dryers), kraft pulp mills, Portland Cement plants, primary zinc smelters, iron and steel mill plants, primary aluminum ore reduction plants, primary copper smelters, municipal incinerators capable of charging more than 250 tons of refuse per day, hydrofluoric, sulfuric, and nitric acid plants, petroleum refineries, lime plants, phosphate rock processing plants, coke oven batteries, sulfur recovery plants, carbon black plants (furnace process), primary lead smelters, fuel conversion plants, sintering plants, secondary metal production facilities, chemical process plants, fossil-fuel boilers of more than 250 million British thermal units per hour heat input, petroleum storage and transfer facilities with a capacity exceeding 300,000 barrels, taconite ore processing facilities, glass fiber processing plants, charcoal production facilities.

(July 14, 1955, ch. 360, title I, § 169A, as added Pub. L. 95–95, title I, § 128, Aug. 7, 1977, 91 Stat. 742.)

EFFECTIVE DATE

Subpart effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

## § 7492. Visibility

**(a) Studies**

(1) The Administrator, in conjunction with the National Park Service and other appropriate Federal agencies, shall conduct research to identify and evaluate sources and source regions of

thereof) for an ozone nonattainment area, the Administrator shall determine, based on the area's design value (as of the attainment date), whether the area attained the standard by that date. Except for any Severe or Extreme area, any area that the Administrator finds has not attained the standard by that date shall be reclassified by operation of law in accordance with table 1 of subsection (a) to the higher of—

    (i) the next higher classification for the area, or

    (iv) the classification applicable to the area's design value as determined at the time of the notice required under subparagraph (B).

No area shall be reclassified as Extreme under clause (ii).

(B) The Administrator shall publish a notice in the Federal Register, no later than 6 months following the attainment date, identifying each area that the Administrator has determined under subparagraph (A) as having failed to attain and identifying the reclassification, if any, described under subparagraph (A).

**(3) Voluntary reclassification**

The Administrator shall grant the request of any State to reclassify a nonattainment area in that State in accordance with table 1 of subsection (a) to a higher classification. The Administrator shall publish a notice in the Federal Register of any such request and of action by the Administrator granting the request.

**(4) Failure of Severe Areas to attain standard**

(A) If any Severe Area fails to achieve the national primary ambient air quality standard for ozone by the applicable attainment date (including any extension thereof), the fee provisions under section 7511d of this title shall apply within the area, the percent reduction requirements of section 7511a(c)(2)(B) and (C) of this title (relating to reasonable further progress demonstration and $NO_x$ control) shall continue to apply to the area, and the State shall demonstrate that such percent reduction has been achieved in each 3-year interval after such failure until the standard is attained. Any failure to make such a demonstration shall be subject to the sanctions provided under this part.

(B) In addition to the requirements of subparagraph (A), if the ozone design value for a Severe Area referred to in subparagraph (A) is above 0.140 ppm for the year of the applicable attainment date, or if the area has failed to achieve its most recent milestone under section 7511a(g) of this title, the new source review requirements applicable under this subpart in Extreme Areas shall apply in the area and the term[1] "major source" and "major stationary source" shall have the same meaning as in Extreme Areas.

(C) In addition to the requirements of subparagraph (A) for those areas referred to in subparagraph (A) and not covered by subpara-

graph (B), the provisions referred to in subparagraph (B) shall apply after 3 years from the applicable attainment date unless the area has attained the standard by the end of such 3-year period.

(D) If, after November 15, 1990, the Administrator modifies the method of determining compliance with the national primary ambient air quality standard, a design value or other indicator comparable to 0.140 in terms of its relationship to the standard shall be used in lieu of 0.140 for purposes of applying the provisions of subparagraphs (B) and (C).

**(c) References to terms**

(1)    Any reference in this subpart to a "Marginal Area", a "Moderate Area", a "Serious Area", a "Severe Area", or an "Extreme Area" shall be considered a reference to a Marginal Area, a Moderate Area, a Serious Area, a Severe Area, or an Extreme Area as respectively classified under this section.

(2)    Any reference in this subpart to "next higher classification" or comparable terms shall be considered a reference to the classification related to the next higher set of design values in table 1.

(July 14, 1955, ch. 360, title I, § 181, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2423.)

EXEMPTIONS FOR STRIPPER WELLS

Pub. L. 101–549, title VIII, § 819, Nov. 15, 1990, 104 Stat. 2698, provided that: "Notwithstanding any other provision of law, the amendments to the Clean Air Act made by section 103 of the Clean Air Act Amendments of 1990 [enacting this section and sections 7511a to 7511f of this title] (relating to additional provisions for ozone non-attainment areas), by section 104 of such amendments [enacting sections 7512 and 7512a of this title] (relating to additional provisions for carbon monoxide non-attainment areas), by section 105 of such amendments [enacting sections 7513 to 7513b of this title and amending section 7476 of this title] (relating to additional provisions for PM–10 nonattainment areas), and by section 106 of such amendments [enacting sections 7514 and 7514a of this title] (relating to additional provisions for areas designated as nonattainment for sulfur oxides, nitrogen dioxide, and lead) shall not apply with respect to the production of and equipment used in the exploration, production, development, storage or processing of—

    "(1) oil from a stripper well property, within the meaning of the June 1979 energy regulations (within the meaning of section 4996(b)(7) of the Internal Revenue Code of 1986 [26 U.S.C. 4996(b)(7)], as in effect before the repeal of such section); and

    "(2) stripper well natural gas, as defined in section 108(b) of the Natural Gas Policy Act of 1978 [15 U.S.C. 3318(b)],[,]

except to the extent that provisions of such amendments cover areas designated as Serious pursuant to part D of title I of the Clean Air Act [this part] and having a population of 350,000 or more, or areas designated as Severe or Extreme pursuant to such part D."

**§ 7511a. Plan submissions and requirements**

**(a) Marginal Areas**

Each State in which all or part of a Marginal Area is located shall, with respect to the Marginal Area (or portion thereof, to the extent specified in this subsection), submit to the Administrator the State implementation plan revisions (including the plan items) described under

---

[1] So in original. Probably should be "terms".

this subsection except to the extent the State has made such submissions as of November 15, 1990.

**(1) Inventory**

Within 2 years after November 15, 1990, the State shall submit a comprehensive, accurate, current inventory of actual emissions from all sources, as described in section 7502(c)(3) of this title, in accordance with guidance provided by the Administrator.

**(2) Corrections to the State implementation plan**

Within the periods prescribed in this paragraph, the State shall submit a revision to the State implementation plan that meets the following requirements—

**(A) Reasonably available control technology corrections**

For any Marginal Area (or, within the Administrator's discretion, portion thereof) the State shall submit, within 6 months of the date of classification under section 7511a of this title, a revision that includes such provisions to correct requirements in (or add requirements to) the plan concerning reasonably available control technology as were required under section 7502(b) of this title (as in effect immediately before November 15, 1990), as interpreted in guidance issued by the Administrator under section 7408 of this title before November 15, 1990.

**(B) Savings clause for vehicle inspection and maintenance**

(i) For any Marginal Area (or, within the Administrator's discretion, portion thereof), the plan for which already includes, or was required by section 7502(b)(11)(B) of this title (as in effect immediately before November 15, 1990) to have included, a specific schedule for implementation of a vehicle emission control inspection and maintenance program, the State shall submit, immediately after November 15, 1990, a revision that includes any provisions necessary to provide for a vehicle inspection and maintenance program of no less stringency than that of either the program defined in House Report Numbered 95–294, 95th Congress, 1st Session, 281–291 (1977) as interpreted in guidance of the Administrator issued pursuant to section 7502(b)(11)(B) of this title (as in effect immediately before November 15, 1990) or the program already included in the plan, whichever is more stringent.

(ii) Within 12 months after November 15, 1990, the Administrator shall review, revise, update, and republish in the Federal Register the guidance for the States for motor vehicle inspection and maintenance programs required by this chapter, taking into consideration the Administrator's investigations and audits of such program. The guidance shall, at a minimum, cover the frequency of inspections, the types of vehicles to be inspected (which shall include leased vehicles that are registered in the non-attainment area), vehicle maintenance by owners and operators, audits by the State,

the test method and measures, including whether centralized or decentralized, inspection methods and procedures, quality of inspection, components covered, assurance that a vehicle subject to a recall notice from a manufacturer has complied with that notice, and effective implementation and enforcement, including ensuring that any retesting of a vehicle after a failure shall include proof of corrective action and providing for denial of vehicle registration in the case of tampering or misfueling. The guidance which shall be incorporated in the applicable State implementation plans by the States shall provide the States with continued reasonable flexibility to fashion effective, reasonable, and fair programs for the affected consumer. No later than 2 years after the Administrator promulgates regulations under section 7521(m)(3) of this title (relating to emission control diagnostics), the State shall submit a revision to such program to meet any requirements that the Administrator may prescribe under that section.

**(C) Permit programs**

Within 2 years after November 15, 1990, the State shall submit a revision that includes each of the following:

(i) Provisions to require permits, in accordance with sections 7502(c)(5) and 7503 of this title, for the construction and operation of each new or modified major stationary source (with respect to ozone) to be located in the area.

(ii) Provisions to correct requirements in (or add requirements to) the plan concerning permit programs as were required under section 7502(b)(6) of this title (as in effect immediately before November 15, 1990), as interpreted in regulations of the Administrator promulgated as of November 15, 1990.

**(3) Periodic inventory**

**(A)  General requirement**

No later than the end of each 3-year period after submission of the inventory under paragraph (1) until the area is redesignated to attainment, the State shall submit a revised inventory meeting the requirements of subsection (a)(1).

**(B)  Emissions statements**

(i) Within 2 years after November 15, 1990, the State shall submit a revision to the State implementation plan to require that the owner or operator of each stationary source of oxides of nitrogen or volatile organic compounds provide the State with a statement, in such form as the Administrator may prescribe (or accept an equivalent alternative developed by the State), for classes or categories of sources, showing the actual emissions of oxides of nitrogen and volatile organic compounds from that source. The first such statement shall be submitted within 3 years after November 15, 1990. Subsequent statements shall be submitted at least every year thereafter. The statement shall contain a certification that

the information contained in the statement is accurate to the best knowledge of the individual certifying the statement.

(ii) The State may waive the application of clause (i) to any class or category of stationary sources which emit less than 25 tons per year of volatile organic compounds or oxides of nitrogen if the State, in its submissions under subparagraphs[1] (1) or (3)(A), provides an inventory of emissions from such class or category of sources, based on the use of the emission factors established by the Administrator or other methods acceptable to the Administrator.

**(4) General offset requirement**

For purposes of satisfying the emission offset requirements of this part, the ratio of total emission reductions of volatile organic compounds to total increased emissions of such air pollutant shall be at least 1.1 to 1.

The Administrator may, in the Administrator's discretion, require States to submit a schedule for submitting any of the revisions or other items required under this subsection. The requirements of this subsection shall apply in lieu of any requirement that the State submit a demonstration that the applicable implementation plan provides for attainment of the ozone standard by the applicable attainment date in any Marginal Area. Section 7502(c)(9) of this title (relating to contingency measures) shall not apply to Marginal Areas.

**(b) Moderate Areas**

Each State in which all or part of a Moderate Area is located shall, with respect to the Moderate Area, make the submissions described under subsection (a) of this section (relating to Marginal Areas), and shall also submit the revisions to the applicable implementation plan described under this subsection.

**(1) Plan provisions for reasonable further progress**

**(A) General rule**

(i) By no later than 3 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to provide for volatile organic compound emission reductions, within 6 years after November 15, 1990, of at least 15 percent from baseline emissions, accounting for any growth in emissions after 1990. Such plan shall provide for such specific annual reductions in emissions of volatile organic compounds and oxides of nitrogen as necessary to attain the national primary ambient air quality standard for ozone by the attainment date applicable under this chapter. This subparagraph shall not apply in the case of oxides of nitrogen for those areas for which the Administrator determines (when the Administrator approves the plan or plan revision) that additional reductions of oxides of nitrogen would not contribute to attainment.

(ii) A percentage less than 15 percent may be used for purposes of clause (i) in the case of any State which demonstrates to the satisfaction of the Administrator that—

(I) new source review provisions are applicable in the nonattainment areas in the same manner and to the same extent as required under subsection (e) in the case of Extreme Areas (with the exception that, in applying such provisions, the terms "major source" and "major stationary source" shall include (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 5 tons per year of volatile organic compounds);

( ) reasonably available control technology is required for all existing major sources (as defined in subclause (I)); and

(l) the plan reflecting a lesser percentage than 15 percent includes all measures that can feasibly be implemented in the area, in light of technological achievability.

To qualify for a lesser percentage under this clause, a State must demonstrate to the satisfaction of the Administrator that the plan for the area includes the measures that are achieved in practice by sources in the same source category in nonattainment areas of the next higher category.

**(B) Baseline emissions**

For purposes of subparagraph (A), the term "baseline emissions" means the total amount of actual VOC or $NO_x$ emissions from all anthropogenic sources in the area during the calendar year 1990, excluding emissions that would be eliminated under the regulations described in clauses (i) and (ii) of subparagraph (D).

**(C) General rule for creditability of reductions**

Except as provided under subparagraph (D), emissions reductions are creditable toward the 15 percent required under subparagraph (A) to the extent they have actually occurred, as of 6 years after November 15, 1990, from the implementation of measures required under the applicable implementation plan, rules promulgated by the Administrator, or a permit under subchapter V.

**(D) Limits on creditability of reductions**

Emission reductions from the following measures are not creditable toward the 15 percent reductions required under subparagraph (A):

(i) Any measure relating to motor vehicle exhaust or evaporative emissions promulgated by the Administrator by January 1, 1990.

(xv) Regulations concerning Reid Vapor Pressure promulgated by the Administrator by November 15, 1990, or required to be promulgated under section 7545(h) of this title.

(xvi) Measures required under subsection (a)(2)(A) (concerning corrections to implementation plans prescribed under guidance by the Administrator).

(xvii) Measures required under subsection (a)(2)(B) to be submitted immediately

---
[1] So in original. Probably should be "subparagraph".

after November 15, 1990 (concerning corrections to motor vehicle inspection and maintenance programs).

**(2) Reasonably available control technology**

The State shall submit a revision to the applicable implementation plan to include provisions to require the implementation of reasonably available control technology under section 7502(c)(1) of this title with respect to each of the following:

    (A)  Each category of VOC sources in the area covered by a CTG document issued by the Administrator between November 15, 1990, and the date of attainment.

    (B)  All VOC sources in the area covered by any CTG issued before November 15, 1990.

    (C)  All other major stationary sources of VOCs that are located in the area.

Each revision described in subparagraph (A) shall be submitted within the period set forth by the Administrator in issuing the relevant CTG document. The revisions with respect to sources described in subparagraphs (B) and (C) shall be submitted by 2 years after November 15, 1990, and shall provide for the implementation of the required measures as expeditiously as practicable but no later than May 31, 1995.

**(3) Gasoline vapor recovery**

  **(A) General rule**

    Not later than 2 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to require all owners or operators of gasoline dispensing systems to install and operate, by the date prescribed under subparagraph (B), a system for gasoline vapor recovery of emissions from the fueling of motor vehicles. The Administrator shall issue guidance as appropriate as to the effectiveness of such system. This subparagraph shall apply only to facilities which sell more than 10,000 gallons of gasoline per month (50,000 gallons per month in the case of an independent small business marketer of gasoline as defined in section 7625–1 [2] of this title).

  **(B) Effective date**

    The date required under subparagraph (A) shall be—

      (i)  6 months after the adoption date, in the case of gasoline dispensing facilities for which construction commenced after November 15, 1990;

      (ii)  one year after the adoption date, in the case of gasoline dispensing facilities which dispense at least 100,000 gallons of gasoline per month, based on average monthly sales for the 2-year period before the adoption date; or

      (xviii)  2 years after the adoption date, in the case of all other gasoline dispensing facilities.

    Any gasoline dispensing facility described under both clause (i) and clause (ii) shall meet the requirements of clause (i).

  **(C) Reference to terms**

    For purposes of this paragraph, any reference to the term "adoption date" shall be

considered a reference to the date of adoption by the State of requirements for the installation and operation of a system for gasoline vapor recovery of emissions from the fueling of motor vehicles.

**(4) Motor vehicle inspection and maintenance**

For all Moderate Areas, the State shall submit, immediately after November 15, 1990, a revision to the applicable implementation plan that includes provisions necessary to provide for a vehicle inspection and maintenance program as described in subsection (a)(2)(B) (without regard to whether or not the area was required by section 7502(b)(11)(B) of this title (as in effect immediately before November 15, 1990) to have included a specific schedule for implementation of such a program).

**(5) General offset requirement**

For purposes of satisfying the emission offset requirements of this part, the ratio of total emission reductions of volatile organic compounds to total increase [3] emissions of such air pollutant shall be at least 1.15 to 1.

**(c) Serious Areas**

Except as otherwise specified in paragraph (4), each State in which all or part of a Serious Area is located shall, with respect to the Serious Area (or portion thereof, to the extent specified in this subsection), make the submissions described under subsection (b) (relating to Moderate Areas), and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection. For any Serious Area, the terms "major source" and "major stationary source" include (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 50 tons per year of volatile organic compounds.

**(1) Enhanced monitoring**

In order to obtain more comprehensive and representative data on ozone air pollution, not later than 18 months after November 15, 1990, the Administrator shall promulgate rules, after notice and public comment, for enhanced monitoring of ozone, oxides of nitrogen, and volatile organic compounds. The rules shall, among other things, cover the location and maintenance of monitors. Immediately following the promulgation of rules by the Administrator relating to enhanced monitoring, the State shall commence such actions as may be necessary to adopt and implement a program based on such rules, to improve monitoring for ambient concentrations of ozone, oxides of nitrogen and volatile organic compounds and to improve monitoring of emissions of oxides of nitrogen and volatile organic compounds. Each State implementation plan for the area shall contain measures to improve the ambient monitoring of such air pollutants.

**(2) Attainment and reasonable further progress demonstrations**

Within 4 years after November 15, 1990, the State shall submit a revision to the applicable

---

[2] So in original. Probably should be section "7625".

[3] So in original. Probably should be "increased".

implementation plan that includes each of the following:

**(A) Attainment demonstration**

A demonstration that the plan, as revised, will provide for attainment of the ozone national ambient air quality standard by the applicable attainment date. This attainment demonstration must be based on photochemical grid modeling or any other analytical method determined by the Administrator, in the Administrator's discretion, to be at least as effective.

**(B) Reasonable further progress demonstration**

A demonstration that the plan, as revised, will result in VOC emissions reductions from the baseline emissions described in subsection (b)(1)(B) equal to the following amount averaged over each consecutive 3-year period beginning 6 years after November 15, 1990, until the attainment date:

(i) at least 3 percent of baseline emissions each year; or

(ii) an amount less than 3 percent of such baseline emissions each year, if the State demonstrates to the satisfaction of the Administrator that the plan reflecting such lesser amount includes all measures that can feasibly be implemented in the area, in light of technological achievability.

To lessen the 3 percent requirement under clause (ii), a State must demonstrate to the satisfaction of the Administrator that the plan for the area includes the measures that are achieved in practice by sources in the same source category in nonattainment areas of the next higher classification. Any determination to lessen the 3 percent requirement shall be reviewed at each milestone under subsection (g) and revised to reflect such new measures (if any) achieved in practice by sources in the same category in any State, allowing a reasonable time to implement such measures. The emission reductions described in this subparagraph shall be calculated in accordance with subsection (b)(1)(C) and (D) (concerning creditability of reductions). The reductions creditable for the period beginning 6 years after November 15, 1990, shall include reductions that occurred before such period, computed in accordance with subsection (b)(1), that exceed the 15-percent amount of reductions required under subsection (b)(1)(A).

**(C) NOₓ control**

The revision may contain, in lieu of the demonstration required under subparagraph (B), a demonstration to the satisfaction of the Administrator that the applicable implementation plan, as revised, provides for reductions of emissions of VOC's and oxides of nitrogen (calculated according to the creditability provisions of subsection (b)(1)(C) and (D)), that would result in a reduction in ozone concentrations at least equivalent to that which would result from the amount of VOC emission reductions required under subparagraph (B). Within 1 year after November 15, 1990, the Administrator shall issue guid

ance concerning the conditions under which NOₓ control may be substituted for VOC control or may be combined with VOC control in order to maximize the reduction in ozone air pollution. In accord with such guidance, a lesser percentage of VOCs may be accepted as an adequate demonstration for purposes of this subsection.

**(3) Enhanced vehicle inspection and maintenance program**

**(A) Requirement for submission**

Within 2 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to provide for an enhanced program to reduce hydrocarbon emissions and NOₓ emissions from in-use motor vehicles registered in each urbanized area (in the nonattainment area), as defined by the Bureau of the Census, with a 1980 population of 200,000 or more.

**(B) Effective date of State programs; guidance**

The State program required under subparagraph (A) shall take effect no later than 2 years from November 15, 1990, and shall comply in all respects with guidance published in the Federal Register (and from time to time revised) by the Administrator for enhanced vehicle inspection and maintenance programs. Such guidance shall include—

(i) a performance standard achievable by a program combining emission testing, including on-road emission testing, with inspection to detect tampering with emission control devices and misfueling for all light-duty vehicles and all light-duty trucks subject to standards under section 7521 of this title; and

(ii) program administration features necessary to reasonably assure that adequate management resources, tools, and practices are in place to attain and maintain the performance standard.

Compliance with the performance standard under clause (i) shall be determined using a method to be established by the Administrator.

**(C) State program**

The State program required under subparagraph (A) shall include, at a minimum, each of the following elements—

(i) Computerized emission analyzers, including on-road testing devices.

(ii) No waivers for vehicles and parts covered by the emission control performance warranty as provided for in section 7541(b) of this title unless a warranty remedy has been denied in writing, or for tampering-related repairs.

(iii) In view of the air quality purpose of the program, if, for any vehicle, waivers are permitted for emissions-related repairs not covered by warranty, an expenditure to qualify for the waiver of an amount of $450 or more for such repairs (adjusted annually as determined by the Administrator on the basis of the Consumer Price Index

in the same manner as provided in subchapter V).

(v) Enforcement through denial of vehicle registration (except for any program in operation before November 15, 1990, whose enforcement mechanism is demonstrated to the Administrator to be more effective than the applicable vehicle registration program in assuring that noncomplying vehicles are not operated on public roads).

(vi) Annual emission testing and necessary adjustment, repair, and maintenance, unless the State demonstrates to the satisfaction of the Administrator that a biennial inspection, in combination with other features of the program which exceed the requirements of this chapter, will result in emission reductions which equal or exceed the reductions which can be obtained through such annual inspections.

(vii) Operation of the program on a centralized basis, unless the State demonstrates to the satisfaction of the Administrator that a decentralized program will be equally effective. An electronically connected testing system, a licensing system, or other measures (or any combination thereof) may be considered, in accordance with criteria established by the Administrator, as equally effective for such purposes.

(viii) Inspection of emission control diagnostic systems and the maintenance or repair of malfunctions or system deterioration identified by or affecting such diagnostics systems.

Each State shall biennially prepare a report to the Administrator which assesses the emission reductions achieved by the program required under this paragraph based on data collected during inspection and repair of vehicles. The methods used to assess the emission reductions shall be those established by the Administrator.

**(4) Clean-fuel vehicle programs**

(A) Except to the extent that substitute provisions have been approved by the Administrator under subparagraph (B), the State shall submit to the Administrator, within 42 months of November 15, 1990, a revision to the applicable implementation plan for each area described under part C of subchapter II to include such measures as may be necessary to ensure the effectiveness of the applicable provisions of the clean-fuel vehicle program prescribed under part C of subchapter II, including all measures necessary to make the use of clean alternative fuels in clean-fuel vehicles (as defined in part C of subchapter II) economic from the standpoint of vehicle owners. Such a revision shall also be submitted for each area that opts into the clean fuel-vehicle program as provided in part C of subchapter II.

(B) The Administrator shall approve, as a substitute for all or a portion of the clean-fuel vehicle program prescribed under part C of subchapter II, any revision to the relevant applicable implementation plan that in the Administrator's judgment will achieve long-term reductions in ozone-producing and toxic air emissions equal to those achieved under part C of subchapter II, or the percentage thereof attributable to the portion of the clean-fuel vehicle program for which the revision is to substitute. The Administrator may approve such revision only if it consists exclusively of provisions other than those required under this chapter for the area. Any State seeking approval of such revision must submit the revision to the Administrator within 24 months of November 15, 1990. The Administrator shall approve or disapprove any such revision within 30 months of November 15, 1990. The Administrator shall publish the revision submitted by a State in the Federal Register upon receipt. Such notice shall constitute a notice of proposed rulemaking on whether or not to approve such revision and shall be deemed to comply with the requirements concerning notices of proposed rulemaking contained in sections 553 through 557 of title 5 (related to notice and comment). Where the Administrator approves such revision for any area, the State need not submit the revision required by subparagraph (A) for the area with respect to the portions of the Federal clean-fuel vehicle program for which the Administrator has approved the revision as a substitute.

(C) If the Administrator determines, under section 7509 of this title, that the State has failed to submit any portion of the program required under subparagraph (A), then, in addition to any sanctions available under section 7509 of this title, the State may not receive credit, in any demonstration of attainment or reasonable further progress for the area, for any emission reductions from implementation of the corresponding aspects of the Federal clean-fuel vehicle requirements established in part C of subchapter II.

**(5) Transportation control**

(A)[4] Beginning 6 years after November 15, 1990, and each third year thereafter, the State shall submit a demonstration as to whether current aggregate vehicle mileage, aggregate vehicle emissions, congestion levels, and other relevant parameters are consistent with those used for the area's demonstration of attainment. Where such parameters and emissions levels exceed the levels projected for purposes of the area's attainment demonstration, the State shall within 18 months develop and submit a revision of the applicable implementation plan that includes a transportation control measures program consisting of measures from, but not limited to, section 7408(f) of this title that will reduce emissions to levels that are consistent with emission levels projected in such demonstration. In considering such measures, the State should ensure adequate access to downtown, other commercial, and residential areas and should avoid measures that increase or relocate emissions and congestion rather than reduce them. Such revision shall be developed in accordance with guidance issued by the Administrator pursuant to section 7408(e) of this title and with the requirements of section 7504(b) of this title

---

[4] So in original. No subpar. (B) has been enacted.

and shall include implementation and funding schedules that achieve expeditious emissions reductions in accordance with implementation plan projections.

**(6) De minimis rule**

The new source review provisions under this part shall ensure that increased emissions of volatile organic compounds resulting from any physical change in, or change in the method of operation of, a stationary source located in the area shall not be considered de minimis for purposes of determining the applicability of the permit requirements established by this chapter unless the increase in net emissions of such air pollutant from such source does not exceed 25 tons when aggregated with all other net increases in emissions from the source over any period of 5 consecutive calendar years which includes the calendar year in which such increase occurred.

**(7) Special rule for modifications of sources emitting less than 100 tons**

In the case of any major stationary source of volatile organic compounds located in the area (other than a source which emits or has the potential to emit 100 tons or more of volatile organic compounds per year), whenever any change (as described in section 7411(a)(4) of this title) at that source results in any increase (other than a de minimis increase) in emissions of volatile organic compounds from any discrete operation, unit, or other pollutant emitting activity at the source, such increase shall be considered a modification for purposes of section 7502(c)(5) of this title and section 7503(a) of this title, except that such increase shall not be considered a modification for such purposes if the owner or operator of the source elects to offset the increase by a greater reduction in emissions of volatile organic compounds concerned from other operations, units, or activities within the source at an internal offset ratio of at least 1.3 to 1. If the owner or operator does not make such election, such change shall be considered a modification for such purposes, but in applying section 7503(a)(2) of this title in the case of any such modification, the best available control technology (BACT), as defined in section 7479 of this title, shall be substituted for the lowest achievable emission rate (LAER). The Administrator shall establish and publish policies and procedures for implementing the provisions of this paragraph.

**(8) Special rule for modifications of sources emitting 100 tons or more**

In the case of any major stationary source of volatile organic compounds located in the area which emits or has the potential to emit 100 tons or more of volatile organic compounds per year, whenever any change (as described in section 7411(a)(4) of this title) at that source results in any increase (other than a de mini-mis increase) in emissions of volatile organic compounds from any discrete operation, unit, or other pollutant emitting activity at the source, such increase shall be considered a modification for purposes of section 7502(c)(5) of this title and section 7503(a) of this title, ex

cept that if the owner or operator of the source elects to offset the increase by a greater reduction in emissions of volatile organic compounds from other operations, units, or activities within the source at an internal offset ratio of at least 1.3 to 1, the requirements of section 7503(a)(2) of this title (concerning the lowest achievable emission rate (LAER)) shall not apply.

**(9) Contingency provisions**

In addition to the contingency provisions required under section 7502(c)(9) of this title, the plan revision shall provide for the implementation of specific measures to be undertaken if the area fails to meet any applicable milestone. Such measures shall be included in the plan revision as contingency measures to take effect without further action by the State or the Administrator upon a failure by the State to meet the applicable milestone.

**(10) General offset requirement**

For purposes of satisfying the emission offset requirements of this part, the ratio of total emission reductions of volatile organic compounds to total increase emissions of such air pollutant shall be at least 1.2 to 1.

Any reference to "attainment date" in subsection (b), which is incorporated by reference into this subsection, shall refer to the attainment date for serious areas.

**(d) Severe Areas**

Each State in which all or part of a Severe Area is located shall, with respect to the Severe Area, make the submissions described under subsection (c) (relating to Serious Areas), and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection. For any Severe Area, the terms "major source" and "major stationary source" include (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 25 tons per year of volatile organic compounds.

**(1) Vehicle miles traveled**

(A) Within 2 years after November 15, 1990, the State shall submit a revision that identifies and adopts specific enforceable transportation control strategies and transportation control measures to offset any growth in emissions from growth in vehicle miles traveled or numbers of vehicle trips in such area and to attain reduction in motor vehicle emissions as necessary, in combination with other emission reduction requirements of this subpart, to comply with the requirements of subsection[5] (b)(2)(B) and (c)(2)(B) (pertaining to periodic emissions reduction requirements). The State shall consider measures specified in section 7408(f) of this title, and choose from among and implement such measures as necessary to demonstrate attainment with the national ambient air quality standards; in considering such measures, the State should ensure ade-

---

5 So in original. Probably should be "subsections".

quate access to downtown, other commercial, and residential areas and should avoid measures that increase or relocate emissions and congestion rather than reduce them.

(B) The State may also, in its discretion, submit a revision at any time requiring employers in such area to implement programs to reduce work-related vehicle trips and miles travelled by employees. Such revision shall be developed in accordance with guidance issued by the Administrator pursuant to section 7408(f) of this title and may require that employers in such area increase average passenger occupancy per vehicle in commuting trips between home and the workplace during peak travel periods. The guidance of the Administrator may specify average vehicle occupancy rates which vary for locations within a nonattainment area (suburban, center city, business district) or among nonattainment areas reflecting existing occupancy rates and the availability of high occupancy modes. Any State required to submit a revision under this subparagraph (as in effect before December 23, 1995) containing provisions requiring employers to reduce work-related vehicle trips and miles travelled by employees may, in accordance with State law, remove such provisions from the implementation plan, or withdraw its submission, if the State notifies the Administrator, in writing, that the State has undertaken, or will undertake, one or more alternative methods that will achieve emission reductions equivalent to those to be achieved by the removed or withdrawn provisions.

**(2) Offset requirement**

For purposes of satisfying the offset requirements pursuant to this part, the ratio of total emission reductions of VOCs to total increased emissions of such air pollutant shall be at least 1.3 to 1, except that if the State plan requires all existing major sources in the non-attainment area to use best available control technology (as defined in section 7479(3) of this title) for the control of volatile organic compounds, the ratio shall be at least 1.2 to 1.

**(3) Enforcement under section 7511d**

By December 31, 2000, the State shall submit a plan revision which includes the provisions required under section 7511d of this title.

Any reference to the term "attainment date" in subsection (b) or (c), which is incorporated by reference into this subsection (d), shall refer to the attainment date for Severe Areas.

**(e) Extreme Areas**

Each State in which all or part of an Extreme Area is located shall, with respect to the Extreme Area, make the submissions described under subsection (d) (relating to Severe Areas), and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection. The provisions of clause (ii) of subsection (c)(2)(B) (relating to reductions of less than 3 percent), the provisions of paragraphs[6] (6), (7) and (8) of subsection (c) (relating to de minimus [7] rule and

modification of sources), and the provisions of clause (ii) of subsection (b)(1)(A) (relating to reductions of less than 15 percent) shall not apply in the case of an Extreme Area. For any Extreme Area, the terms "major source" and "major stationary source" includes[8] (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 10 tons per year of volatile organic compounds.

**(1) Offset requirement**

For purposes of satisfying the offset requirements pursuant to this part, the ratio of total emission reductions of VOCs to total increased emissions of such air pollutant shall be at least 1.5 to 1, except that if the State plan requires all existing major sources in the non-attainment area to use best available control technology (as defined in section 7479(3) of this title) for the control of volatile organic compounds, the ratio shall be at least 1.2 to 1.

**(2) Modifications**

Any change (as described in section 7411(a)(4) of this title) at a major stationary source which results in any increase in emissions from any discrete operation, unit, or other pollutant emitting activity at the source shall be considered a modification for purposes of section 7502(c)(5) of this title and section 7503(a) of this title, except that for purposes of complying with the offset requirement pursuant to section 7503(a)(1) of this title, any such increase shall not be considered a modification if the owner or operator of the source elects to offset the increase by a greater reduction in emissions of the air pollutant concerned from other discrete operations, units, or activities within the source at an internal offset ratio of at least 1.3 to 1. The offset requirements of this part shall not be applicable in Extreme Areas to a modification of an existing source if such modification consists of installation of equipment required to comply with the applicable implementation plan, permit, or this chapter.

**(3) Use of clean fuels or advanced control technology**

For Extreme Areas, a plan revision shall be submitted within 3 years after November 15, 1990, to require, effective 8 years after November 15, 1990, that each new, modified, and existing electric utility and industrial and commercial boiler which emits more than 25 tons per year of oxides of nitrogen—

(A) burn as its primary fuel natural gas, methanol, or ethanol (or a comparably low polluting fuel), or

(B) use advanced control technology (such as catalytic control technology or other comparably effective control methods) for reduction of emissions of oxides of nitrogen.

For purposes of this subsection, the term "primary fuel" means the fuel which is used 90 percent or more of the operating time. This

---

[6] So in original. Probably should be "paragraphs".

[7] So in original. Probably should be "de minimis".

[8] So in original. Probably should be "include".

paragraph shall not apply during any natural gas supply emergency (as defined in title III of the Natural Gas Policy Act of 1978 [15 U.S.C. 3361 et seq.]).

**(4) Traffic control measures during heavy traffic hours**

For Extreme Areas, each implementation plan revision under this subsection may contain provisions establishing traffic control measures applicable during heavy traffic hours to reduce the use of high polluting vehicles or heavy-duty vehicles, notwithstanding any other provision of law.

**(5) New technologies**

The Administrator may, in accordance with section 7410 of this title, approve provisions of an implementation plan for an Extreme Area which anticipate development of new control techniques or improvement of existing control technologies, and an attainment demonstration based on such provisions, if the State demonstrates to the satisfaction of the Administrator that—

(A) such provisions are not necessary to achieve the incremental emission reductions required during the first 10 years after November 15, 1990; and

(B) the State has submitted enforceable commitments to develop and adopt contingency measures to be implemented as set forth herein if the anticipated technologies do not achieve planned reductions.

Such contingency measures shall be submitted to the Administrator no later than 3 years before proposed implementation of the plan provisions and approved or disapproved by the Administrator in accordance with section 7410 of this title. The contingency measures shall be adequate to produce emission reductions sufficient, in conjunction with other approved plan provisions, to achieve the periodic emission reductions required by subsection (b)(1) or (c)(2) and attainment by the applicable dates. If the Administrator determines that an Extreme Area has failed to achieve an emission reduction requirement set forth in subsection (b)(1) or (c)(2), and that such failure is due in whole or part to an inability to fully implement provisions approved pursuant to this subsection, the Administrator shall require the State to implement the contingency measures to the extent necessary to assure compliance with subsections (b)(1) and (c)(2).

Any reference to the term "attainment date" in subsection (b), (c), or (d) which is incorporated by reference into this subsection, shall refer to the attainment date for Extreme Areas.

**(f) NOₓ requirements**

(1) The plan provisions required under this subpart for major stationary sources of volatile organic compounds shall also apply to major stationary sources (as defined in section 7602 of this title and subsections (c), (d), and (e) of this section) of oxides of nitrogen. This subsection shall not apply in the case of oxides of nitrogen for those sources for which the Administrator determines (when the Administrator approves a plan or plan revision) that net air quality bene

fits are greater in the absence of reductions of oxides of nitrogen from the sources concerned. This subsection shall also not apply in the case of oxides of nitrogen for—

(A) nonattainment areas not within an ozone transport region under section 7511c of this title, if the Administrator determines (when the Administrator approves a plan or plan revision) that additional reductions of oxides of nitrogen would not contribute to attainment of the national ambient air quality standard for ozone in the area, or

(B) nonattainment areas within such ozone transport region if the Administrator determines (when the Administrator approves a plan or plan revision) that additional reductions of oxides of nitrogen would not produce net ozone air quality benefits in such region.

The Administrator shall, in the Administrator's determinations, consider the study required under section 7511f of this title.

(2)(A) If the Administrator determines that excess reductions in emissions of NOₓ would be achieved under paragraph (1), the Administrator may limit the application of paragraph (1) to the extent necessary to avoid achieving such excess reductions.

(B) For purposes of this paragraph, excess reductions in emissions of NOₓ are emission reductions for which the Administrator determines that net air quality benefits are greater in the absence of such reductions. Alternatively, for purposes of this paragraph, excess reductions in emissions of NOₓ are, for—

(i) nonattainment areas not within an ozone transport region under section 7511c of this title, emission reductions that the Administrator determines would not contribute to attainment of the national ambient air quality standard for ozone in the area, or

(ii) nonattainment areas within such ozone transport region, emission reductions that the Administrator determines would not produce net ozone air quality benefits in such region.

(3) At any time after the final report under section 7511f of this title is submitted to Congress, a person may petition the Administrator for a determination under paragraph (1) or (2) with respect to any nonattainment area or any ozone transport region under section 7511c of this title. The Administrator shall grant or deny such petition within 6 months after its filing with the Administrator.

**(g) Milestones**

**(1) Reductions in emissions**

6 years after November 15, 1990, and at intervals of every 3 years thereafter, the State shall determine whether each nonattainment area (other than an area classified as Marginal or Moderate) has achieved a reduction in emissions during the preceding intervals equivalent to the total emission reductions required to be achieved by the end of such interval pursuant to subsection (b)(1) and the corresponding requirements of subsections (c)(2)(B) and (C), (d), and (e). Such reduction shall be referred to in this section as an applicable milestone.

**(2) Compliance demonstration**

For each nonattainment area referred to in paragraph (1), not later than 90 days after the date on which an applicable milestone occurs (not including an attainment date on which a milestone occurs in cases where the standard has been attained), each State in which all or part of such area is located shall submit to the Administrator a demonstration that the milestone has been met. A demonstration under this paragraph shall be submitted in such form and manner, and shall contain such information and analysis, as the Administrator shall require, by rule. The Administrator shall determine whether or not a State's demonstration is adequate within 90 days after the Administrator's receipt of a demonstration which contains the information and analysis required by the Administrator.

**(3) Serious and Severe Areas; State election**

If a State fails to submit a demonstration under paragraph (2) for any Serious or Severe Area within the required period or if the Administrator determines that the area has not met any applicable milestone, the State shall elect, within 90 days after such failure or determination—

    (A) to have the area reclassified to the next higher classification,

    (B) to implement specific additional measures adequate, as determined by the Administrator, to meet the next milestone as provided in the applicable contingency plan, or

    (C) to adopt an economic incentive program as described in paragraph (4).

If the State makes an election under subparagraph (B), the Administrator shall, within 90 days after the election, review such plan and shall, if the Administrator finds the contingency plan inadequate, require further measures necessary to meet such milestone. Once the State makes an election, it shall be deemed accepted by the Administrator as meeting the election requirement. If the State fails to make an election required under this paragraph within the required 90-day period or within 6 months thereafter, the area shall be reclassified to the next higher classification by operation of law at the expiration of such 6-month period. Within 12 months after the date required for the State to make an election, the State shall submit a revision of the applicable implementation plan for the area that meets the requirements of this paragraph. The Administrator shall review such plan revision and approve or disapprove the revision within 9 months after the date of its submission.

**(4) Economic incentive program**

(A) An economic incentive program under this paragraph shall be consistent with rules published by the Administrator and sufficient, in combination with other elements of the State plan, to achieve the next milestone. The State program may include a nondiscriminatory system, consistent with applicable law regarding interstate commerce, of State established emissions fees or a system of marketable permits, or a system of State fees on sale or manufacture of products the use of which contributes to ozone formation, or any combination of the foregoing or other similar measures. The program may also include incentives and requirements to reduce vehicle emissions and vehicle miles traveled in the area, including any of the transportation control measures identified in section 7408(f) of this title.

(B) Within 2 years after November 15, 1990, the Administrator shall publish rules for the programs to be adopted pursuant to subparagraph (A). Such rules shall include model plan provisions which may be adopted for reducing emissions from permitted stationary sources, area sources, and mobile sources. The guidelines shall require that any revenues generated by the plan provisions adopted pursuant to subparagraph (A) shall be used by the State for any of the following:

    (i) Providing incentives for achieving emission reductions.

    (ii) Providing assistance for the development of innovative technologies for the control of ozone air pollution and for the development of lower-polluting solvents and surface coatings. Such assistance shall not provide for the payment of more than 75 percent of either the costs of any project to develop such a technology or the costs of development of a lower-polluting solvent or surface coating.

    (iii) Funding the administrative costs of State programs under this chapter. Not more than 50 percent of such revenues may be used for purposes of this clause.

**(5) Extreme Areas**

If a State fails to submit a demonstration under paragraph (2) for any Extreme Area within the required period, or if the Administrator determines that the area has not met any applicable milestone, the State shall, within 9 months after such failure or determination, submit a plan revision to implement an economic incentive program which meets the requirements of paragraph (4). The Administrator shall review such plan revision and approve or disapprove the revision within 9 months after the date of its submission.

**(h) Rural transport areas**

(1) Notwithstanding any other provision of section 7511 of this title or this section, a State containing an ozone nonattainment area that does not include, and is not adjacent to, any part of a Metropolitan Statistical Area or, where one exists, a Consolidated Metropolitan Statistical Area (as defined by the United States Bureau of the Census), which area is treated by the Administrator, in the Administrator's discretion, as a rural transport area within the meaning of paragraph (2), shall be treated by operation of law as satisfying the requirements of this section if it makes the submissions required under subsection (a) of this section (relating to marginal areas).

(2) The Administrator may treat an ozone nonattainment area as a rural transport area if the Administrator finds that sources of VOC (and, where the Administrator determines relevant, $NO_x$) emissions within the area do not make a

significant contribution to the ozone concentrations measured in the area or in other areas.

**(i)   Reclassified areas**

Each State containing an ozone nonattainment area reclassified under section 7511(b)(2) of this title shall meet such requirements of subsections (b) through (d) of this section as may be applicable to the area as reclassified, according to the schedules prescribed in connection with such requirements, except that the Administrator may adjust any applicable deadlines (other than attainment dates) to the extent such adjustment is necessary or appropriate to assure consistency among the required submissions.

**(j)   Multi-State ozone nonattainment areas**

**(1) Coordination among States**

Each State in which there is located a portion of a single ozone nonattainment area which covers more than one State (hereinafter in this section referred to as a "multi-State ozone nonattainment area") shall—

(A) take all reasonable steps to coordinate, substantively and procedurally, the revisions and implementation of State implementation plans applicable to the nonattainment area concerned; and

(B) use photochemical grid modeling or any other analytical method determined by the Administrator, in his discretion, to be at least as effective.

The Administrator may not approve any revision of a State implementation plan submitted under this part for a State in which part of a multi-State ozone nonattainment area is located if the plan revision for that State fails to comply with the requirements of this subsection.

**(2) Failure to demonstrate attainment**

If any State in which there is located a portion of a multi-State ozone nonattainment area fails to provide a demonstration of attainment of the national ambient air quality standard for ozone in that portion within the required period, the State may petition the Administrator to make a finding that the State would have been able to make such demonstration but for the failure of one or more other States in which other portions of the area are located to commit to the implementation of all measures required under this section (relating to plan submissions and requirements for ozone nonattainment areas). If the Administrator makes such finding, the provisions of section 7509 of this title (relating to sanctions) shall not apply, by reason of the failure to make such demonstration, in the portion of the multi-State ozone nonattainment area within the State submitting such petition.

(July 14, 1955, ch. 360, title I, § 182, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2426; amended Pub. L. 104–70, § 1, Dec. 23, 1995, 109 Stat. 773.)

References in Text

The Natural Gas Policy Act of 1978, referred to in subsec. (e)(3), is Pub. L. 95–621, Nov. 9, 1978, 92 Stat. 3350, as amended. Title III of the Act is classified generally

to subchapter III (§ 3361 et seq.) of chapter 60 of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 3301 of Title 15 and Tables.

Amendments

1995—Subsec. (d)(1)(B). Pub. L. 104–70 amended subpar. (B) generally. Prior to amendment, subpar. (B) read as follows: "Within 2 years after November 15, 1990, the State shall submit a revision requiring employers in such area to implement programs to reduce work-related vehicle trips and miles traveled by employees. Such revision shall be developed in accordance with guidance issued by the Administrator pursuant to section 7408(f) of this title and shall, at a minimum, require that each employer of 100 or more persons in such area increase average passenger occupancy per vehicle in commuting trips between home and the workplace during peak travel periods by not less than 25 percent above the average vehicle occupancy for all such trips in the area at the time the revision is submitted. The guidance of the Administrator may specify average vehicle occupancy rates which vary for locations within a nonattainment area (suburban, center city, business district) or among nonattainment areas reflecting existing occupancy rates and the availability of high occupancy modes. The revision shall provide that each employer subject to a vehicle occupancy requirement shall submit a compliance plan within 2 years after the date the revision is submitted which shall convincingly demonstrate compliance with the requirements of this paragraph not later than 4 years after such submittal."

Motor Vehicle Inspection and Maintenance Program Requirements

Pub. L. 104–59, title III, § 348, Nov. 28, 1995, 109 Stat. 617, provided that:

"(a) In General.—The Administrator of the Environmental Protection Agency (hereinafter in this section referred to as the 'Administrator') shall not require adoption or implementation by a State of a test-only I/ M240 enhanced vehicle inspection and maintenance program as a means of compliance with section 182 or 187 of the Clean Air Act (42 U.S.C. 7511a; 7512a), but the Administrator may approve such a program if a State chooses to adopt the program as a means of compliance with such section.

"(b) Limitation on Plan Disapproval.—The Administrator shall not disapprove or apply an automatic discount to a State implementation plan revision under section 182 or 187 of the Clean Air Act (42 U.S.C. 7511a; 7512a) on the basis of a policy, regulation, or guidance providing for a discount of emissions credits because the inspection and maintenance program in such plan revision is decentralized or a test-and-repair program.

"(c)   Emissions Reduction Credits.—

"(1)   State plan revision; approval.—Within 120 days of the date of the enactment of this subsection [Nov. 28, 1995], a State may submit an implementation plan revision proposing an interim inspection and maintenance program under section 182 or 187 of the Clean Air Act (42 U.S.C. 7511a; 7512a). The Administrator shall approve the program based on the full amount of credits proposed by the State for each element of the program if the proposed credits reflect good faith estimates by the State and the revision is otherwise in compliance with such Act. If, within such 120-day period, the State submits to the Administrator proposed revisions to the implementation plan, has all of the statutory authority necessary to implement the revisions, and has proposed a regulation to make the revisions, the Administrator may approve the revisions without regard to whether or not such regulation has been issued as a final regulation by the State.

"(2)   Expiration of interim approval.—The interim approval shall expire on the earlier of (A) the last day of the 18-month period beginning on the date of the interim approval, or (B) the date of final approval. The interim approval may not be extended.



States, may enter a covered ozone non-attainment area from a foreign country bordering the United States and contiguous to the nonattainment area more than twice in a single calendar-month period, if State law has requirements for the inspection and maintenance of such vehicles under the applicable implementation plan in the nonattainment area.

**(B) Applicability**

Subparagraph (A) shall not apply if the operator presents documentation at the United States border entry point establishing that the vehicle has complied with such inspection and maintenance requirements as are in effect and are applicable to motor vehicles of the same type and model year.

**(2) Sanctions for violations**

The President may impose and collect from the operator of any motor vehicle who violates, or attempts to violate, paragraph (1) a civil penalty of not more than $200 for the second violation or attempted violation and $400 for the third and each subsequent violation or attempted violation.

**(3) State election**

The prohibition set forth in paragraph (1) shall not apply in any State that elects to be exempt from the prohibition. Such an election shall take effect upon the President's receipt of written notice from the Governor of the State notifying the President of such election.

**(4) Alternative approach**

The prohibition set forth in paragraph (1) shall not apply in a State, and the President may implement an alternative approach, if—

(A) the Governor of the State submits to the President a written description of an alternative approach to facilitate the compliance, by some or all foreign-registered motor vehicles, with the motor vehicle inspection and maintenance requirements that are—

(i) related to emissions of air pollutants;

(ii) in effect under the applicable implementation plan in the covered ozone nonattainment area; and

(xix) to motor vehicles of the same types and model years as the foreign-registered motor vehicles; and

(B) the President approves the alternative approach as facilitating compliance with the motor vehicle inspection and maintenance requirements referred to in subparagraph (A).

**(5) Definition of covered ozone nonattainment area**

In this section, the term "covered ozone nonattainment area" means a Serious Area, as classified under section 7511 of this title as of October 27, 1998.

(July 14, 1955, ch. 360, title I, § 183, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2443; amended Pub. L. 105–286, § 2, Oct. 27, 1998, 112 Stat. 2773.)

REFERENCES IN TEXT

The Solid Waste Disposal Act, referred to in subsec. (b)(2), is title II of Pub. L. 89–272, Oct. 20, 1965, 79 Stat. 997, as amended generally by Pub. L. 94–580, § 2, Oct. 21, 1976, 90 Stat. 2795. Subtitle C of the Act is classified generally to subchapter III (§ 6921 et seq.) of chapter 82 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 6901 of this title and Tables.

Section 1225 of title 33, referred to in subsec. (f)(2), was repealed by Pub. L. 115–282, title IV, § 402(e), Dec. 4, 2018, 132 Stat. 4264. See Transitional and Savings Provisions note preceding section 101 of Title 46, Shipping, and section 70011 of Title 46.

AMENDMENTS

1998—Subsec. (h). Pub. L. 105–286 added subsec. (h).

EFFECTIVE DATE OF 1998 AMENDMENT; PUBLICATION OF PROHIBITION

Pub. L. 105–286, § 3, Oct. 27, 1998, 112 Stat. 2774, provided that:

"(a) IN GENERAL.—The amendment made by section 2 [amending this section] takes effect 180 days after the date of the enactment of this Act [Oct. 27, 1998]. Nothing in that amendment shall require action that is inconsistent with the obligations of the United States under any international agreement.

"(b) INFORMATION.—As soon as practicable after the date of the enactment of this Act, the appropriate agency of the United States shall distribute information to publicize the prohibition set forth in the amendment made by section 2."

TRANSFER OF FUNCTIONS

For transfer of authorities, functions, personnel, and assets of the Coast Guard, including the authorities and functions of the Secretary of Transportation relating thereto, to the Department of Homeland Security, and for treatment of related references, see sections 468(b), 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under section 542 of Title 6.

**§ 7511c. Control of interstate ozone air pollution**

**(a) Ozone transport regions**

A single transport region for ozone (within the meaning of section 7506a(a) of this title), comprised of the States of Connecticut, Delaware, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, and the Consolidated Metropolitan Statistical Area that includes the District of Columbia, is hereby established by operation of law. The provisions of section 7506a(a)(1) and (2) of this title shall apply with respect to the transport region established under this section and any other transport region established for ozone, except to the extent inconsistent with the provisions of this section. The Administrator shall convene the commission required (under section 7506a(b) of this title) as a result of the establishment of such region within 6 months of November 15, 1990.

**(b) Plan provisions for States in ozone transport regions**

(1) In accordance with section 7410 of this title, not later than 2 years after November 15, 1990 (or 9 months after the subsequent inclusion of a State in a transport region established for ozone), each State included within a transport region established for ozone shall submit a State implementation plan or revision thereof to the Administrator which requires the following— (A) that each area in such State that is in an ozone transport region, and that is a metro-

politan statistical area or part thereof with a population of 100,000 or more comply with the provisions of section 7511a(c)(2)(A) of this title (pertaining to enhanced vehicle inspection and maintenance programs); and

(B) implementation of reasonably available control technology with respect to all sources of volatile organic compounds in the State covered by a control techniques guideline issued before or after November 15, 1990.

(2) Within 3 years after November 15, 1990, the Administrator shall complete a study identifying control measures capable of achieving emission reductions comparable to those achievable through vehicle refueling controls contained in section 7511a(b)(3) of this title, and such measures or such vehicle refueling controls shall be implemented in accordance with the provisions of this section. Notwithstanding other deadlines in this section, the applicable implementation plan shall be revised to reflect such measures within 1 year of completion of the study. For purposes of this section any stationary source that emits or has the potential to emit at least 50 tons per year of volatile organic compounds shall be considered a major stationary source and subject to the requirements which would be applicable to major stationary sources if the area were classified as a Moderate nonattainment area.

#### (c) Additional control measures

##### (1) Recommendations

Upon petition of any State within a transport region established for ozone, and based on a majority vote of the Governors on the Commission[1] (or their designees), the Commission[1] may, after notice and opportunity for public comment, develop recommendations for additional control measures to be applied within all or a part of such transport region if the commission determines such measures are necessary to bring any area in such region into attainment by the dates provided by this subpart. The commission shall transmit such recommendations to the Administrator.

##### (2) Notice and review

Whenever the Administrator receives recommendations prepared by a commission pursuant to paragraph (1) (the date of receipt of which shall hereinafter in this section be referred to as the "receipt date"), the Administrator shall—

(A) immediately publish in the Federal Register a notice stating that the recommendations are available and provide an opportunity for public hearing within 90 days beginning on the receipt date; and

(B) commence a review of the recommendations to determine whether the control measures in the recommendations are necessary to bring any area in such region into attainment by the dates provided by this subpart and are otherwise consistent with this chapter.

##### (3) Consultation

In undertaking the review required under paragraph (2)(B), the Administrator shall con-

sult with members of the commission of the affected States and shall take into account the data, views, and comments received pursuant to paragraph (2)(A).

##### (4) Approval and disapproval

Within 9 months after the receipt date, the Administrator shall (A) determine whether to approve, disapprove, or partially disapprove and partially approve the recommendations; (B) notify the commission in writing of such approval, disapproval, or partial disapproval; and (C) publish such determination in the Federal Register. If the Administrator disapproves or partially disapproves the recommendations, the Administrator shall specify—

(i) why any disapproved additional control measures are not necessary to bring any area in such region into attainment by the dates provided by this subpart or are otherwise not consistent with the[2] chapter; and

(iii) recommendations concerning equal or more effective actions that could be taken by the commission to conform the disapproved portion of the recommendations to the requirements of this section.

##### (5) Finding

Upon approval or partial approval of recommendations submitted by a commission, the Administrator shall issue to each State which is included in the transport region and to which a requirement of the approved plan applies, a finding under section 7410(k)(5) of this title that the implementation plan for such State is inadequate to meet the requirements of section 7410(a)(2)(D) of this title. Such finding shall require each such State to revise its implementation plan to include the approved additional control measures within one year after the finding is issued.

#### (d) Best available air quality monitoring and modeling

For purposes of this section, not later than 6 months after November 15, 1990, the Administrator shall promulgate criteria for purposes of determining the contribution of sources in one area to concentrations of ozone in another area which is a nonattainment area for ozone. Such criteria shall require that the best available air quality monitoring and modeling techniques be used for purposes of making such determinations.

(July 14, 1955, ch. 360, title I, § 184, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2448.)

### § 7511d. Enforcement for Severe and Extreme ozone nonattainment areas for failure to attain

#### (a) General rule

Each implementation plan revision required under section 7511a(d) and (e) of this title (relating to the attainment plan for Severe and Extreme ozone nonattainment areas) shall provide that, if the area to which such plan revision applies has failed to attain the national primary

---

[1] So in original. Probably should not be capitalized.

[2] So in original. Probably should be "this".

with the Administrator, any class of contracts, grants or loans from the provisions of this Order. In any such case, the head of the Federal agency granting such exemption shall (A) promptly notify the Administrator of such exemption and the justification therefor; (B) review the necessity for each such exemption annually; and (C) report to the Administrator annually all such exemptions in effect. Exemptions granted pursuant to this section shall be for a period not to exceed one year. Additional exemptions may be granted for periods not to exceed one year upon the making of a new determination by the head of the Federal agency concerned.

(2) The Administrator may, by rule or regulation, exempt any or all Federal agencies from any or all of the provisions of this Order with respect to any class or classes of contracts, grants, or loans, which (A) involve less than specified dollar amounts, or (B) have a minimal potential impact upon the environment, or (C) involve persons who are not prime contractors or direct recipients of Federal assistance by way of contracts, grants, or loans.

(b) Federal agencies shall reconsider any exemption granted under subsection (a) whenever requested to do so by the Administrator.

(c) The Administrator shall annually notify the President and the Congress of all exemptions granted, or in effect, under this Order during the preceding year.

SEC. 9. *Related Actions.* The imposition of any sanction or penalty under or pursuant to this Order shall not relieve any person of any legal duty to comply with any provisions of the Air Act or the Water Act.

SEC. 10. *Applicability.* This Order shall not apply to contracts, grants, or loans involving the use of facilities located outside the United States.

SEC. 11. *Uniformity.* Rules, regulations, standards, and guidelines issued pursuant to this order and section 508 of the Water Act [33 U.S.C. 1368] shall, to the maximum extent feasible, be uniform with regulations issued pursuant to this order, Executive Order No. 11602 of June 29, 1971 [formerly set out above], and section 306 of the Air Act [this section].

SEC. 12. *Order Superseded.* Executive Order No. 11602 of June 29, 1971, is hereby superseded.

RICHARD NIXON.

## § 7607. Administrative proceedings and judicial review

### (a) Administrative subpenas; confidentiality; witnesses

In connection with any determination under section 7410(f) of this title, or for purposes of obtaining information under section 7521(b)(4) [1] of this title, any investigation, monitoring, reporting requirement, entry, compliance inspection, or administrative enforcement proceeding under the [2] chapter (including but not limited to section 7413, section 7414, section 7420, section 7429, section 7477, section 7524, section 7525, section 7542, section 7603, or section 7606 of this title),,[3] the Administrator may issue subpenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and he may administer oaths. Except for emission data, upon a showing satisfactory to the Administrator by such owner or operator that such papers, books, documents, or information or particular part thereof, if made public, would divulge trade secrets or secret processes of such owner or operator, the Administrator shall consider such record, report, or information or particular portion thereof

confidential in accordance with the purposes of section 1905 of title 18, except that such paper, book, document, or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this chapter, to persons carrying out the National Academy of Sciences' study and investigation provided for in section 7521(c) of this title, or when relevant in any proceeding under this chapter. Witnesses summoned shall be paid the same fees and mileage that are paid witnesses in the courts of the United States. In case of contumacy or refusal to obey a subpena served upon any person under this subparagraph,[4] the district court of the United States for any district in which such person is found or resides or transacts business, upon application by the United States and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the Administrator or to appear and produce papers, books, and documents before the Administrator, or both, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

### (b) Judicial review

(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411 of this title,,[3] any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1) of this title), any determination under section 7521(b)(5)[1] of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or revising regulations for enhanced monitoring and compliance certification programs under section 7414(a)(3) of this title, or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such ac-

---

[1] See References in Text note below.
[2] So in original. Probably should be "this".
[3] So in original.

[4] So in original. Probably should be "subsection,".

tion is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination. Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise. The filing of a petition for reconsideration by the Administrator of any otherwise final rule or action shall not affect the finality of such rule or action for purposes of judicial review nor extend the time within which a petition for judicial review of such rule or action under this section may be filed, and shall not postpone the effectiveness of such rule or action.

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement. Where a final decision by the Administrator defers performance of any nondis-cretionary statutory action to a later time, any person may challenge the deferral pursuant to paragraph (1).

**(c)  Additional evidence**

In any judicial proceeding in which review is sought of a determination under this chapter required to be made on the record after notice and opportunity for hearing, if any party applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Administrator, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Administrator, in such manner and upon such terms and conditions as to [5] the court may deem proper. The Administrator may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original determination, with the return of such additional evidence.

**(d)  Rulemaking**

(1) This subsection applies to—

(A) the promulgation or revision of any national ambient air quality standard under section 7409 of this title,

(B) the promulgation or revision of an implementation plan by the Administrator under section 7410(c) of this title,

(C) the promulgation or revision of any standard of performance under section 7411 of this title, or emission standard or limitation under section 7412(d) of this title, any standard under section 7412(f) of this title, or any regulation under section 7412(g)(1)(D) and (F) [6] of

this title, or any regulation under section 7412(m) or (n) of this title,

(D) the promulgation of any requirement for solid waste combustion under section 7429 of this title,

(E) the promulgation or revision of any regulation pertaining to any fuel or fuel additive under section 7545 of this title,

(F) the promulgation or revision of any aircraft emission standard under section 7571 of this title,

(G) the promulgation or revision of any regulation under subchapter IV–A (relating to control of acid deposition),

(H) promulgation or revision of regulations pertaining to primary nonferrous smelter orders under section 7419 of this title (but not including the granting or denying of any such order),

(I) promulgation or revision of regulations under subchapter VI (relating to stratosphere and ozone protection),

(J) promulgation or revision of regulations under part C of subchapter I (relating to prevention of significant deterioration of air quality and protection of visibility),

(K) promulgation or revision of regulations under section 7521 of this title and test procedures for new motor vehicles or engines under section 7525 of this title, and the revision of a standard under section 7521(a)(3) of this title,

(L) promulgation or revision of regulations for noncompliance penalties under section 7420 of this title,

(M) promulgation or revision of any regulations promulgated under section 7541 of this title (relating to warranties and compliance by vehicles in actual use),

(N) action of the Administrator under section 7426 of this title (relating to interstate pollution abatement),

(O) the promulgation or revision of any regulation pertaining to consumer and commercial products under section 7511b(e) of this title,

(P) the promulgation or revision of any regulation pertaining to field citations under section 7413(d)(3) of this title,

(Q) the promulgation or revision of any regulation pertaining to urban buses or the clean-fuel vehicle, clean-fuel fleet, and clean fuel programs under part C of subchapter II,

(R) the promulgation or revision of any regulation pertaining to nonroad engines or nonroad vehicles under section 7547 of this title,

(S) the promulgation or revision of any regulation relating to motor vehicle compliance program fees under section 7552 of this title,

(T) the promulgation or revision of any regulation under subchapter IV–A (relating to acid deposition),

(U) the promulgation or revision of any regulation under section 7511b(f) of this title pertaining to marine vessels, and

(V) such other actions as the Administrator may determine.

The provisions of section 553 through 557 and section 706 of title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies. This sub-

---

[5] So in original. The word "to" probably should not appear.
[6] So in original. There are no subpars. (D) and (F) of section 7412(g)(1) of this title.

section shall not apply in the case of any rule or circumstance referred to in subparagraphs (A) or (B) of subsection 553(b) of title 5.

(2) Not later than the date of proposal of any action to which this subsection applies, the Administrator shall establish a rulemaking docket for such action (hereinafter in this subsection referred to as a "rule"). Whenever a rule applies only within a particular State, a second (identical) docket shall be simultaneously established in the appropriate regional office of the Environmental Protection Agency.

(3) In the case of any rule to which this subsection applies, notice of proposed rulemaking shall be published in the Federal Register, as provided under section 553(b) of title 5, shall be accompanied by a statement of its basis and purpose and shall specify the period available for public comment (hereinafter referred to as the "comment period"). The notice of proposed rulemaking shall also state the docket number, the location or locations of the docket, and the times it will be open to public inspection. The statement of basis and purpose shall include a summary of—

(A) the factual data on which the proposed rule is based;

(B) the methodology used in obtaining the data and in analyzing the data; and

(C) the major legal interpretations and policy considerations underlying the proposed rule.

The statement shall also set forth or summarize and provide a reference to any pertinent findings, recommendations, and comments by the Scientific Review Committee established under section 7409(d) of this title and the National Academy of Sciences, and, if the proposal differs in any important respect from any of these recommendations, an explanation of the reasons for such differences. All data, information, and documents referred to in this paragraph on which the proposed rule relies shall be included in the docket on the date of publication of the proposed rule.

(4)(A) The rulemaking docket required under paragraph (2) shall be open for inspection by the public at reasonable times specified in the notice of proposed rulemaking. Any person may copy documents contained in the docket. The Administrator shall provide copying facilities which may be used at the expense of the person seeking copies, but the Administrator may waive or reduce such expenses in such instances as the public interest requires. Any person may request copies by mail if the person pays the expenses, including personnel costs to do the copying.

(B)(i) Promptly upon receipt by the agency, all written comments and documentary information on the proposed rule received from any person for inclusion in the docket during the comment period shall be placed in the docket. The transcript of public hearings, if any, on the proposed rule shall also be included in the docket promptly upon receipt from the person who transcribed such hearings. All documents which become available after the proposed rule has been published and which the Administrator determines are of central relevance to the rulemaking shall be placed in the docket as soon as possible after their availability.

(ii) The drafts of proposed rules submitted by the Administrator to the Office of Management and Budget for any interagency review process prior to proposal of any such rule, all documents accompanying such drafts, and all written comments thereon by other agencies and all written responses to such written comments by the Administrator shall be placed in the docket no later than the date of proposal of the rule. The drafts of the final rule submitted for such review process prior to promulgation and all such written comments thereon, all documents accompanying such drafts, and written responses thereto shall be placed in the docket no later than the date of promulgation.

(5) In promulgating a rule to which this subsection applies (i) the Administrator shall allow any person to submit written comments, data, or documentary information; (ii) the Administrator shall give interested persons an opportunity for the oral presentation of data, views, or arguments, in addition to an opportunity to make written submissions; (iii) a transcript shall be kept of any oral presentation; and (iv) the Administrator shall keep the record of such proceeding open for thirty days after completion of the proceeding to provide an opportunity for submission of rebuttal and supplementary information.

(6)(A) The promulgated rule shall be accompanied by (i) a statement of basis and purpose like that referred to in paragraph (3) with respect to a proposed rule and (ii) an explanation of the reasons for any major changes in the promulgated rule from the proposed rule.

(B) The promulgated rule shall also be accompanied by a response to each of the significant comments, criticisms, and new data submitted in written or oral presentations during the comment period.

(C) The promulgated rule may not be based (in part or whole) on any information or data which has not been placed in the docket as of the date of such promulgation.

(7)(A) The record for judicial review shall consist exclusively of the material referred to in paragraph (3), clause (i) of paragraph (4)(B), and subparagraphs (A) and (B) of paragraph (6).

(B) Only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment (including any public hearing) may be raised during judicial review. If the person raising an objection can demonstrate to the Administrator that it was impracticable to raise such objection within such time or if the grounds for such objection arose after the period for public comment (but within the time specified for judicial review) and if such objection is of central relevance to the outcome of the rule, the Administrator shall convene a proceeding for reconsideration of the rule and provide the same procedural rights as would have been afforded had the information been available at the time the rule was proposed. If the Administrator refuses to convene such a proceeding, such person may seek review of such refusal in the United States court of appeals for the appropriate circuit (as provided in subsection (b)). Such reconsideration shall not postpone the effectiveness of the rule. The effectiveness of the rule may be stayed during such

reconsideration, however, by the Administrator or the court for a period not to exceed three months.

(8) The sole forum for challenging procedural determinations made by the Administrator under this subsection shall be in the United States court of appeals for the appropriate circuit (as provided in subsection (b)) at the time of the substantive review of the rule. No interlocutory appeals shall be permitted with respect to such procedural determinations. In reviewing alleged procedural errors, the court may invalidate the rule only if the errors were so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made.

(9) In the case of review of any action of the Administrator to which this subsection applies, the court may reverse any such action found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or

(D) without observance of procedure required by law, if (i) such failure to observe such procedure is arbitrary or capricious, (ii) the requirement of paragraph (7)(B) has been met, and (iii) the condition of the last sentence of paragraph (8) is met.

(10) Each statutory deadline for promulgation of rules to which this subsection applies which requires promulgation less than six months after date of proposal may be extended to not more than six months after date of proposal by the Administrator upon a determination that such extension is necessary to afford the public, and the agency, adequate opportunity to carry out the purposes of this subsection.

(11) The requirements of this subsection shall take effect with respect to any rule the proposal of which occurs after ninety days after August 7, 1977.

**(e) Other methods of judicial review not authorized**

Nothing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in this section.

**(f) Costs**

In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.

**(g) Stay, injunction, or similar relief in proceedings relating to noncompliance penalties**

In any action respecting the promulgation of regulations under section 7420 of this title or the administration or enforcement of section 7420 of this title no court shall grant any stay, injunctive, or similar relief before final judgment by such court in such action.

**(h) Public participation**

It is the intent of Congress that, consistent with the policy of subchapter II of chapter 5 of title 5, the Administrator in promulgating any regulation under this chapter, including a regulation subject to a deadline, shall ensure a reasonable period for public participation of at least 30 days, except as otherwise expressly provided in section[7] 7407(d), 7502(a), 7511(a) and (b), and 7512(a) and (b) of this title.

(July 14, 1955, ch. 360, title III, § 307, as added Pub. L. 91–604, § 12(a), Dec. 31, 1970, 84 Stat. 1707; amended Pub. L. 92–157, title III, § 302(a), Nov. 18, 1971, 85 Stat. 464; Pub. L. 93–319, § 6(c), June 22, 1974, 88 Stat. 259; Pub. L. 95–95, title III, §§ 303(d), 305(a), (c), (f)–(h), Aug. 7, 1977, 91 Stat. 772, 776, 777; Pub. L. 95–190, § 14(a)(79), (80), Nov. 16, 1977, 91 Stat. 1404; Pub. L. 101–549, title I, §§ 108(p), 110(5), title III, § 302(g), (h), title VII, §§ 702(c), 703, 706, 707(h), 710(b), Nov. 15, 1990, 104 Stat. 2469, 2470, 2574, 2681–2684.)

REFERENCES IN TEXT

Section 7521(b)(4) of this title, referred to in subsec. (a), was repealed by Pub. L. 101–549, title II, § 230(2), Nov. 15, 1990, 104 Stat. 2529.

Section 7521(b)(5) of this title, referred to in subsec. (b)(1), was repealed by Pub. L. 101–549, title II, § 230(3), Nov. 15, 1990, 104 Stat. 2529.

Section 1857c–10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977), referred to in subsec. (b)(1), was in the original "section 119(c)(2)(A), (B), or (C) (as in effect before the date of enactment of the Clean Air Act Amendments of 1977)", meaning section 119 of act July 14, 1955, ch. 360, title I, as added June 22, 1974, Pub. L. 93–319, § 3, 88 Stat. 248, (which was classified to section 1857c–10 of this title) as in effect prior to the enactment of Pub. L. 95–95, Aug. 7, 1977, 91 Stat. 691, effective Aug. 7, 1977. Section 112(b)(1) of Pub. L. 95–95 repealed section 119 of act July 14, 1955, ch. 360, title I, as added by Pub. L. 93–319, and provided that all references to such section 119 in any subsequent enactment which supersedes Pub. L. 93–319 shall be construed to refer to section 113(d) of the Clean Air Act and to paragraph (5) thereof in particular which is classified to subsec. (d)(5) of section 7413 of this title. Section 7413(d) of this title was subsequently amended generally by Pub. L. 101–549, title VII, § 701, Nov. 15, 1990, 104 Stat. 2672, and, as so amended, no longer relates to final compliance orders. Section 117(b) of Pub. L. 95–95 added a new section 119 of act July 14, 1955, which is classified to section 7419 of this title.

Part C of subchapter I, referred to in subsec. (d)(1)(J), was in the original "subtitle C of title I", and was translated as reading "part C of title I" to reflect the probable intent of Congress, because title I does not contain subtitles.

CODIFICATION

In subsec. (h), "subchapter II of chapter 5 of title 5" was substituted for "the Administrative Procedures Act" on authority of Pub. L. 89–554, § 7(b), Sept. 6, 1966, 80 Stat. 631, the first section of which enacted Title 5, Government Organization and Employees.

Section was formerly classified to section 1857h–5 of this title.

PRIOR PROVISIONS

A prior section 307 of act July 14, 1955, was renumbered section 314 by Pub. L. 91–604 and is classified to section 7614 of this title.

Another prior section 307 of act July 14, 1955, ch. 360, title III, formerly § 14, as added Dec. 17, 1963, Pub. L. 88–206, § 1, 77 Stat. 401, was renumbered section 307 by Pub. L. 89–272, renumbered section 310 by Pub. L. 90–148, and renumbered section 317 by Pub. L. 91–604, and is set out as a Short Title note under section 7401 of this title.

---

[7] So in original. Probably should be "sections".

purchase of withheld allowances. Allowances purchased at the auction may be used for any purpose and at any time after the auction, subject to the provisions of this subchapter.

TABLE 2—NUMBER OF ALLOWANCES AVAILABLE FOR AUCTION

| Year of Sale | Spot Auction (same year) | Advance Auction |
|---|---|---|
| 1993 | 50,000* | 100,000 |
| 1994 | 50,000* | 100,000 |
| 1995 | 50,000* | 100,000 |
| 1996 | 150,000 | 100,000 |
| 1997 | 150,000 | 100,000 |
| 1998 | 150,000 | 100,000 |
| 1999 | 150,000 | 100,000 |
| 2000 and after | 100,000 | 100,000 |

Allowances sold in the spot sale in any year are allowances which may only be used in that year (unless banked for use in a later year), except as otherwise noted. Allowances sold in the advance auction in any year are allowances which may only be used in the 7th year after the year in which they are first offered for sale (unless banked for use in a later year).

*Available for use only in 1995 (unless banked for use in a later year).

**(3) Proceeds**

(A) Notwithstanding section 3302 of title 31 or any other provision of law, within 90 days of receipt, the Administrator shall transfer the proceeds from the auction under this section, on a pro rata basis, to the owners or operators of the affected units at an affected source from whom allowances were withheld under subsection (b). No funds transferred from a purchaser to a seller of allowances under this paragraph shall be held by any officer or employee of the United States or treated for any purpose as revenue to the United States or the Administrator.

(B) At the end of each year, any allowances offered for sale but not sold at the auction shall be returned without charge, on a pro rata basis, to the owner or operator of the affected units from whose allocation the allowances were withheld.

**(4) Additional auction participants**

Any person holding allowances or to whom allowances are allocated by the Administrator may submit those allowances to the Administrator to be offered for sale at auction under this subsection. The proceeds of any such sale shall be transferred at the time of sale by the purchaser to the person submitting such allowances for sale. The holder of allowances offered for sale under this paragraph may specify a minimum sale price. Any person may purchase allowances offered for auction under this paragraph. Such allowances shall be allocated and sold to purchasers on the basis of bid price after the auction under paragraph (2) is complete. No funds transferred from a purchaser to a seller of allowances under this paragraph shall be held by any officer or employee of the United States or treated for any purpose as revenue to the United States or the Administrator.

**(5) Recording by EPA**

The Administrator shall record and publicly report the nature, prices and results of each auction under this subsection, including the prices of successful bids, and shall record the transfers of allowances as a result of each auction in accordance with the requirements of this section. The transfer of allowances at such auction shall be recorded in accordance with the regulations promulgated by the Administrator under this subchapter.

**(e)    Changes in sales, auctions, and withholding**

Pursuant to rulemaking after public notice and comment the Administrator may at any time after the year 1998 (in the case of advance sales or advance auctions) and 2005 (in the case of spot sales or spot auctions) decrease the number of allowances withheld and sold under this section.

**(f)      Termination of auctions**

The Administrator may terminate the withholding of allowances and the auction sales under this section if the Administrator determines that, during any period of 3 consecutive calendar years after 2002, less than 20 percent of the allowances available in the auction subaccount have been purchased. Pursuant to regulations under this section, the Administrator may by delegation or contract provide for the conduct of sales or auctions under the Adminis-trator's supervision by other departments or agencies of the United States Government or by nongovernmental agencies, groups, or organizations.

(July 14, 1955, ch. 360, title IV, § 416, as added Pub. L. 101–549, title IV, § 401, Nov. 15, 1990, 104 Stat. 2626.)

REFERENCES IN TEXT

Section 79b of title 15, referred to in subsec. (a)(2)(C), was repealed by Pub. L. 109–58, title XII, § 1263, Aug. 8, 2005, 119 Stat. 974. See section 16451(1) of this title.

SUBCHAPTER V—PERMITS §

## 7661. Definitions

As used in this subchapter—

**(1) Affected source**

The term "affected source" shall have the meaning given such term in subchapter IV–A.

**(2) Major source**

The term "major source" means any stationary source (or any group of stationary sources located within a contiguous area and under common control) that is either of the following:

(A) A major source as defined in section 7412 of this title.

(B) A major stationary source as defined in section 7602 of this title or part D of subchapter I.

**(3) Schedule of compliance**

The term "schedule of compliance" means a schedule of remedial measures, including an enforceable sequence of actions or operations, leading to compliance with an applicable implementation plan, emission standard, emission limitation, or emission prohibition.

**(4) Permitting authority**

The term "permitting authority" means the Administrator or the air pollution control

agency authorized by the Administrator to carry out a permit program under this subchapter.

(July 14, 1955, ch. 360, title V, § 501, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2635.)

## § 7661a. Permit programs

### (a)  Violations

After the effective date of any permit program approved or promulgated under this subchapter, it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate an affected source (as provided in subchapter IV–A), a major source, any other source (including an area source) subject to standards or regulations under section 7411 or 7412 of this title, any other source required to have a permit under parts[1] C or D of subchapter I, or any other stationary source in a category designated (in whole or in part) by regulations promulgated by the Administrator (after notice and public comment) which shall include a finding setting forth the basis for such designation, except in compliance with a permit issued by a permitting authority under this subchapter. (Nothing in this subsection shall be construed to alter the applicable requirements of this chapter that a permit be obtained before construction or modification.) The Administrator may, in the Administrator's discretion and consistent with the applicable provisions of this chapter, promulgate regulations to exempt one or more source categories (in whole or in part) from the requirements of this subsection if the Administrator finds that compliance with such requirements is impracticable, infeasible, or unnecessarily burdensome on such categories, except that the Administrator may not exempt any major source from such requirements.

### (b)  Regulations

The Administrator shall promulgate within 12 months after November 15, 1990, regulations establishing the minimum elements of a permit program to be administered by any air pollution control agency. These elements shall include each of the following:

(1) Requirements for permit applications, including a standard application form and criteria for determining in a timely fashion the completeness of applications.

(2) Monitoring and reporting requirements.

(3)(A) A requirement under State or local law or interstate compact that the owner or operator of all sources subject to the requirement to obtain a permit under this subchapter pay an annual fee, or the equivalent over some other period, sufficient to cover all reasonable (direct and indirect) costs required to develop and administer the permit program requirements of this subchapter, including section 7661f of this title, including the reasonable costs of—

(i) reviewing and acting upon any application for such a permit,

(ii) if the owner or operator receives a permit for such source, whether before or after November 15, 1990, implementing and enforcing the terms and conditions of any such permit (not including any court costs or other costs associated with any enforcement action),

(iv) emissions and ambient monitoring,

(v) preparing generally applicable regulations, or guidance,

(vi) modeling, analyses, and demonstrations, and

(vii) preparing inventories and tracking emissions.

(B) The total amount of fees collected by the permitting authority shall conform to the following requirements:

(i) The Administrator shall not approve a program as meeting the requirements of this paragraph unless the State demonstrates that, except as otherwise provided in subparagraphs[2] (ii) through (v) of this subparagraph, the program will result in the collection, in the aggregate, from all sources subject to subparagraph (A), of an amount not less than $25 per ton of each regulated pollutant, or such other amount as the Administrator may determine adequately reflects the reasonable costs of the permit program.

(ii) As used in this subparagraph, the term "regulated pollutant" shall mean (I) a volatile organic compound; (II) each pollutant regulated under section 7411 or 7412 of this title; and (III) each pollutant for which a national primary ambient air quality standard has been promulgated (except that carbon monoxide shall be excluded from this reference).

(viii) In determining the amount under clause (i), the permitting authority is not required to include any amount of regulated pollutant emitted by any source in excess of 4,000 tons per year of that regulated pollutant.

(ix) The requirements of clause (i) shall not apply if the permitting authority demonstrates that collecting an amount less than the amount specified under clause (i) will meet the requirements of subparagraph (A).

(iii)    The fee calculated under clause (i) shall be increased (consistent with the need to cover the reasonable costs authorized by subparagraph (A)) in each year beginning after 1990, by the percentage, if any, by which the Consumer Price Index for the most recent calendar year ending before the beginning of such year exceeds the Consumer Price Index for the calendar year 1989. For purposes of this clause—

(I)    the Consumer Price Index for any calendar year is the average of the Consumer Price Index for all-urban consumers published by the Department of Labor, as of the close of the 12-month period ending on August 31 of each calendar year, and

(II) the revision of the Consumer Price Index which is most consistent with the Consumer Price Index for calendar year 1989 shall be used.

---

[1] So in original. Probably should be "part".

[2] So in original. Probably should be "clauses".

(C)(i) If the Administrator determines, under subsection (d), that the fee provisions of the operating permit program do not meet the requirements of this paragraph, or if the Administrator makes a determination, under subsection (i), that the permitting authority is not adequately administering or enforcing an approved fee program, the Administrator may, in addition to taking any other action authorized under this subchapter, collect reasonable fees from the sources identified under subparagraph (A). Such fees shall be designed solely to cover the Administrator's costs of administering the provisions of the permit program promulgated by the Administrator.

(ii) Any source that fails to pay fees lawfully imposed by the Administrator under this subparagraph shall pay a penalty of 50 percent of the fee amount, plus interest on the fee amount computed in accordance with section 6621(a)(2) of title 26 (relating to computation of interest on underpayment of Federal taxes).

(xx) Any fees, penalties, and interest collected under this subparagraph shall be deposited in a special fund in the United States Treasury for licensing and other services, which thereafter shall be available for appropriation, to remain available until expended, subject to appropriation, to carry out the Agency's activities for which the fees were collected. Any fee required to be collected by a State, local, or interstate agency under this subsection shall be utilized solely to cover all reasonable (direct and indirect) costs required to support the permit program as set forth in subparagraph (A).

(4) Requirements for adequate personnel and funding to administer the program.

(5) A requirement that the permitting authority have adequate authority to:

(A) issue permits and assure compliance by all sources required to have a permit under this subchapter with each applicable standard, regulation or requirement under this chapter;

(B) issue permits for a fixed term, not to exceed 5 years;

(C) assure that upon issuance or renewal permits incorporate emission limitations and other requirements in an applicable implementation plan;

(D) terminate, modify, or revoke and reissue permits for cause;

(E) enforce permits, permit fee requirements, and the requirement to obtain a permit, including authority to recover civil penalties in a maximum amount of not less than $10,000 per day for each violation, and provide appropriate criminal penalties; and

(F) assure that no permit will be issued if the Administrator objects to its issuance in a timely manner under this subchapter.

(6) Adequate, streamlined, and reasonable procedures for expeditiously determining when applications are complete, for processing such applications, for public notice, including offering an opportunity for public comment and a hearing, and for expeditious review of permit actions, including applications, renewals, or revisions, and including an opportunity for judicial review in State court of the final permit action by the applicant, any person who participated in the public comment process, and any other person who could obtain judicial review of that action under applicable law.

(7) To ensure against unreasonable delay by the permitting authority, adequate authority and procedures to provide that a failure of such permitting authority to act on a permit application or permit renewal application (in accordance with the time periods specified in section 7661b of this title or, as appropriate, subchapter IV–A) shall be treated as a final permit action solely for purposes of obtaining judicial review in State court of an action brought by any person referred to in paragraph (6) to require that action be taken by the permitting authority on such application without additional delay.

(8) Authority, and reasonable procedures consistent with the need for expeditious action by the permitting authority on permit applications and related matters, to make available to the public any permit application, compliance plan, permit, and monitoring or compliance report under section 7661b(e) of this title, subject to the provisions of section 7414(c) of this title.

(9) A requirement that the permitting authority, in the case of permits with a term of 3 or more years for major sources, shall require revisions to the permit to incorporate applicable standards and regulations promulgated under this chapter after the issuance of such permit. Such revisions shall occur as expeditiously as practicable and consistent with the procedures established under paragraph (6) but not later than 18 months after the promulgation of such standards and regulations. No such revision shall be required if the effective date of the standards or regulations is a date after the expiration of the permit term. Such permit revision shall be treated as a permit renewal if it complies with the requirements of this subchapter regarding renewals.

(3) Provisions to allow changes within a permitted facility (or one operating pursuant to section 7661b(d) of this title) without requiring a permit revision, if the changes are not modifications under any provision of subchapter I and the changes do not exceed the emissions allowable under the permit (whether expressed therein as a rate of emissions or in terms of total emissions: [3] *Provided*, That the facility provides the Administrator and the permitting authority with written notification in advance of the proposed changes which shall be a minimum of 7 days, unless the permitting authority provides in its regulations a different timeframe for emergencies.

**(c)  Single permit**

A single permit may be issued for a facility with multiple sources.

**(d)  Submission and approval**

(1) Not later than 3 years after November 15, 1990, the Governor of each State shall develop and submit to the Administrator a permit program under State or local law or under an inter-

---

[3] So in original. A closing parenthesis probably should precede the colon.

state compact meeting the requirements of this subchapter. In addition, the Governor shall submit a legal opinion from the attorney general (or the attorney for those State air pollution control agencies that have independent legal counsel), or from the chief legal officer of an interstate agency, that the laws of the State, locality, or the interstate compact provide adequate authority to carry out the program. Not later than 1 year after receiving a program, and after notice and opportunity for public comment, the Administrator shall approve or disapprove such program, in whole or in part. The Administrator may approve a program to the extent that the program meets the requirements of this chapter, including the regulations issued under subsection (b). If the program is disapproved, in whole or in part, the Administrator shall notify the Governor of any revisions or modifications necessary to obtain approval. The Governor shall revise and resubmit the program for review under this section within 180 days after receiving notification.

(2)(A) If the Governor does not submit a program as required under paragraph (1) or if the Administrator disapproves a program submitted by the Governor under paragraph (1), in whole or in part, the Administrator may, prior to the expiration of the 18-month period referred to in subparagraph (B), in the Administrator's discretion, apply any of the sanctions specified in section 7509(b) of this title.

(B) If the Governor does not submit a program as required under paragraph (1), or if the Administrator disapproves any such program submitted by the Governor under paragraph (1), in whole or in part, 18 months after the date required for such submittal or the date of such disapproval, as the case may be, the Administrator shall apply sanctions under section 7509(b) of this title in the same manner and subject to the same deadlines and other conditions as are applicable in the case of a determination, disapproval, or finding under section 7509(a) of this title.

(C) The sanctions under section 7509(b)(2) of this title shall not apply pursuant to this paragraph in any area unless the failure to submit or the disapproval referred to in subparagraph (A) or (B) relates to an air pollutant for which such area has been designated a nonattainment area (as defined in part D of subchapter I).

(3) If a program meeting the requirements of this subchapter has not been approved in whole for any State, the Administrator shall, 2 years after the date required for submission of such a program under paragraph (1), promulgate, administer, and enforce a program under this subchapter for that State.

**(e) Suspension**

The Administrator shall suspend the issuance of permits promptly upon publication of notice of approval of a permit program under this section, but may, in such notice, retain jurisdiction over permits that have been federally issued, but for which the administrative or judicial review process is not complete. The Administrator shall continue to administer and enforce federally issued permits under this subchapter until they are replaced by a permit issued by a per

mitting program. Nothing in this subsection should be construed to limit the Administrator's ability to enforce permits issued by a State.

**(f) Prohibition**

No partial permit program shall be approved unless, at a minimum, it applies, and ensures compliance with, this subchapter and each of the following:

(1) All requirements established under subchapter IV–A applicable to "affected sources".

(2) All requirements established under section 7412 of this title applicable to "major sources", "area sources," and "new sources".

(3) All requirements of subchapter I (other than section 7412 of this title) applicable to sources required to have a permit under this subchapter.

Approval of a partial program shall not relieve the State of its obligation to submit a complete program, nor from the application of any sanctions under this chapter for failure to submit an approvable permit program.

**(g) Interim approval**

If a program (including a partial permit program) submitted under this subchapter substantially meets the requirements of this subchapter, but is not fully approvable, the Administrator may by rule grant the program interim approval. In the notice of final rulemaking, the Administrator shall specify the changes that must be made before the program can receive full approval. An interim approval under this subsection shall expire on a date set by the Administrator not later than 2 years after such approval, and may not be renewed. For the period of any such interim approval, the provisions of subsection (d)(2), and the obligation of the Administrator to promulgate a program under this subchapter for the State pursuant to subsection (d)(3), shall be suspended. Such provisions and such obligation of the Administrator shall apply after the expiration of such interim approval.

**(h) Effective date**

The effective date of a permit program, or partial or interim program, approved under this subchapter, shall be the effective date of approval by the Administrator. The effective date of a permit program, or partial permit program, promulgated by the Administrator shall be the date of promulgation.

**(i) Administration and enforcement**

(1) Whenever the Administrator makes a determination that a permitting authority is not adequately administering and enforcing a program, or portion thereof, in accordance with the requirements of this subchapter, the Administrator shall provide notice to the State and may, prior to the expiration of the 18-month period referred to in paragraph (2), in the Adminis-trator's discretion, apply any of the sanctions specified in section 7509(b) of this title.

(2) Whenever the Administrator makes a determination that a permitting authority is not adequately administering and enforcing a program, or portion thereof, in accordance with the requirements of this subchapter, 18 months after the date of the notice under paragraph (1), the Administrator shall apply the sanctions under

section 7509(b) of this title in the same manner and subject to the same deadlines and other conditions as are applicable in the case of a determination, disapproval, or finding under section 7509(a) of this title.

(4) The sanctions under section 7509(b)(2) of this title shall not apply pursuant to this subsection in any area unless the failure to adequately enforce and administer the program relates to an air pollutant for which such area has been designated a nonattainment area.

(5) Whenever the Administrator has made a finding under paragraph (1) with respect to any State, unless the State has corrected such deficiency within 18 months after the date of such finding, the Administrator shall, 2 years after the date of such finding, promulgate, administer, and enforce a program under this subchapter for that State. Nothing in this paragraph shall be construed to affect the validity of a program which has been approved under this subchapter or the authority of any permitting authority acting under such program until such time as such program is promulgated by the Administrator under this paragraph.

(July 14, 1955, ch. 360, title V, § 502, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2635.)

## § 7661b. Permit applications

### (a) Applicable date

Any source specified in section 7661a(a) of this title shall become subject to a permit program, and required to have a permit, on the later of the following dates—

(1) the effective date of a permit program or partial or interim permit program applicable to the source; or

(2) the date such source becomes subject to section 7661a(a) of this title.

### (b) Compliance plan

(1) The regulations required by section 7661a(b) of this title shall include a requirement that the applicant submit with the permit application a compliance plan describing how the source will comply with all applicable requirements under this chapter. The compliance plan shall include a schedule of compliance, and a schedule under which the permittee will submit progress reports to the permitting authority no less frequently than every 6 months.

(2) The regulations shall further require the permittee to periodically (but no less frequently than annually) certify that the facility is in compliance with any applicable requirements of the permit, and to promptly report any deviations from permit requirements to the permitting authority.

### (c) Deadline

Any person required to have a permit shall, not later than 12 months after the date on which the source becomes subject to a permit program approved or promulgated under this subchapter, or such earlier date as the permitting authority may establish, submit to the permitting authority a compliance plan and an application for a permit signed by a responsible official, who shall certify the accuracy of the information submitted. The permitting authority shall approve

or disapprove a completed application (consistent with the procedures established under this subchapter for consideration of such applications), and shall issue or deny the permit, within 18 months after the date of receipt thereof, except that the permitting authority shall establish a phased schedule for acting on permit applications submitted within the first full year after the effective date of a permit program (or a partial or interim program). Any such schedule shall assure that at least one-third of such permits will be acted on by such authority annually over a period of not to exceed 3 years after such effective date. Such authority shall establish reasonable procedures to prioritize such approval or disapproval actions in the case of applications for construction or modification under the applicable requirements of this chapter.

### (d) Timely and complete applications

Except for sources required to have a permit before construction or modification under the applicable requirements of this chapter, if an applicant has submitted a timely and complete application for a permit required by this subchapter (including renewals), but final action has not been taken on such application, the source's failure to have a permit shall not be a violation of this chapter, unless the delay in final action was due to the failure of the applicant timely to submit information required or requested to process the application. No source required to have a permit under this subchapter shall be in violation of section 7661a(a) of this title before the date on which the source is required to submit an application under subsection (c).

### (e) Copies; availability

A copy of each permit application, compliance plan (including the schedule of compliance), emissions or compliance monitoring report, certification, and each permit issued under this subchapter, shall be available to the public. If an applicant or permittee is required to submit information entitled to protection from disclosure under section 7414(c) of this title, the applicant or permittee may submit such information separately. The requirements of section 7414(c) of this title shall apply to such information. The contents of a permit shall not be entitled to protection under section 7414(c) of this title.

(July 14, 1955, ch. 360, title V, § 503, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2641.)

## § 7661c. Permit requirements and conditions

### (a) Conditions

Each permit issued under this subchapter shall include enforceable emission limitations and standards, a schedule of compliance, a requirement that the permittee submit to the permitting authority, no less often than every 6 months, the results of any required monitoring, and such other conditions as are necessary to assure compliance with applicable requirements of this chapter, including the requirements of the applicable implementation plan.

### (b) Monitoring and analysis

The Administrator may by rule prescribe procedures and methods for determining compli-

ance and for monitoring and analysis of pollutants regulated under this chapter, but continuous emissions monitoring need not be required if alternative methods are available that provide sufficiently reliable and timely information for determining compliance. Nothing in this subsection shall be construed to affect any continuous emissions monitoring requirement of subchapter IV–A, or where required elsewhere in this chapter.

### (e) Inspection, entry, monitoring, certification, and reporting

Each permit issued under this subchapter shall set forth inspection, entry, monitoring, compliance certification, and reporting requirements to assure compliance with the permit terms and conditions. Such monitoring and reporting requirements shall conform to any applicable regulation under subsection (b). Any report required to be submitted by a permit issued to a corporation under this subchapter shall be signed by a responsible corporate official, who shall certify its accuracy.

### (g) General permits

The permitting authority may, after notice and opportunity for public hearing, issue a general permit covering numerous similar sources. Any general permit shall comply with all requirements applicable to permits under this subchapter. No source covered by a general permit shall thereby be relieved from the obligation to file an application under section 7661b of this title.

### (h) Temporary sources

The permitting authority may issue a single permit authorizing emissions from similar operations at multiple temporary locations. No such permit shall be issued unless it includes conditions that will assure compliance with all the requirements of this chapter at all authorized locations, including, but not limited to, ambient standards and compliance with any applicable increment or visibility requirements under part C of subchapter I. Any such permit shall in addition require the owner or operator to notify the permitting authority in advance of each change in location. The permitting authority may require a separate permit fee for operations at each location.

### (i) Permit shield

Compliance with a permit issued in accordance with this subchapter shall be deemed compliance with section 7661a of this title. Except as otherwise provided by the Administrator by rule, the permit may also provide that compliance with other applicable provisions of this chapter that relate to the permittee if—

(1) the permit includes the applicable requirements of such provisions, or

(2) the permitting authority in acting on the permit application makes a determination relating to the permittee that such other provisions (which shall be referred to in such determination) are not applicable and the permit includes the determination or a concise summary thereof.

Nothing in the preceding sentence shall alter or affect the provisions of section 7603 of this title,

including the authority of the Administrator under that section.

(July 14, 1955, ch. 360, title V, § 504, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2642.)

### § 7661d. Notification to Administrator and contiguous States

#### (a) Transmission and notice

(1) Each permitting authority—

(A) shall transmit to the Administrator a copy of each permit application (and any application for a permit modification or renewal) or such portion thereof, including any compliance plan, as the Administrator may require to effectively review the application and otherwise to carry out the Administrator's responsibilities under this chapter, and

(B) shall provide to the Administrator a copy of each permit proposed to be issued and issued as a final permit.

(2) The permitting authority shall notify all States—

(A) whose air quality may be affected and that are contiguous to the State in which the emission originates, or

(B) that are within 50 miles of the source,

of each permit application or proposed permit forwarded to the Administrator under this section, and shall provide an opportunity for such States to submit written recommendations respecting the issuance of the permit and its terms and conditions. If any part of those recommendations are not accepted by the permitting authority, such authority shall notify the State submitting the recommendations and the Administrator in writing of its failure to accept those recommendations and the reasons therefor.

#### (b) Objection by EPA

(1) If any permit contains provisions that are determined by the Administrator as not in compliance with the applicable requirements of this chapter, including the requirements of an applicable implementation plan, the Administrator shall, in accordance with this subsection, object to its issuance. The permitting authority shall respond in writing if the Administrator (A) within 45 days after receiving a copy of the proposed permit under subsection (a)(1), or (B) within 45 days after receiving notification under subsection (a)(2), objects in writing to its issuance as not in compliance with such requirements. With the objection, the Administrator shall provide a statement of the reasons for the objection. A copy of the objection and statement shall be provided to the applicant.

(2) If the Administrator does not object in writing to the issuance of a permit pursuant to paragraph (1), any person may petition the Administrator within 60 days after the expiration of the 45-day review period specified in paragraph (1) to take such action. A copy of such petition shall be provided to the permitting authority and the applicant by the petitioner. The petition shall be based only on objections to the permit that were raised with reasonable specificity during the public comment period pro-

vided by the permitting agency (unless the petitioner demonstrates in the petition to the Administrator that it was impracticable to raise such objections within such period or unless the grounds for such objection arose after such period). The petition shall identify all such objections. If the permit has been issued by the permitting agency, such petition shall not postpone the effectiveness of the permit. The Administrator shall grant or deny such petition within 60 days after the petition is filed. The Administrator shall issue an objection within such period if the petitioner demonstrates to the Administrator that the permit is not in compliance with the requirements of this chapter, including the requirements of the applicable implementation plan. Any denial of such petition shall be subject to judicial review under section 7607 of this title. The Administrator shall include in regulations under this subchapter provisions to implement this paragraph. The Administrator may not delegate the requirements of this paragraph.

(3) Upon receipt of an objection by the Administrator under this subsection, the permitting authority may not issue the permit unless it is revised and issued in accordance with subsection (c). If the permitting authority has issued a permit prior to receipt of an objection by the Administrator under paragraph (2) of this subsection, the Administrator shall modify, terminate, or revoke such permit and the permitting authority may thereafter only issue a revised permit in accordance with subsection (c).

**(c) Issuance or denial**

If the permitting authority fails, within 90 days after the date of an objection under subsection (b), to submit a permit revised to meet the objection, the Administrator shall issue or deny the permit in accordance with the requirements of this subchapter. No objection shall be subject to judicial review until the Administrator takes final action to issue or deny a permit under this subsection.

**(d) Waiver of notification requirements**

(1) The Administrator may waive the requirements of subsections (a) and (b) at the time of approval of a permit program under this subchapter for any category (including any class, type, or size within such category) of sources covered by the program other than major sources.

(2) The Administrator may, by regulation, establish categories of sources (including any class, type, or size within such category) to which the requirements of subsections (a) and (b) shall not apply. The preceding sentence shall not apply to major sources.

(3) The Administrator may exclude from any waiver under this subsection notification under subsection (a)(2). Any waiver granted under this subsection may be revoked or modified by the Administrator by rule.

**(e) Refusal of permitting authority to terminate, modify, or revoke and reissue**

If the Administrator finds that cause exists to terminate, modify, or revoke and reissue a permit under this subchapter, the Administrator shall notify the permitting authority and the

source of the Administrator's finding. The permitting authority shall, within 90 days after receipt of such notification, forward to the Administrator under this section a proposed determination of termination, modification, or revocation and reissuance, as appropriate. The Administrator may extend such 90 day period for an additional 90 days if the Administrator finds that a new or revised permit application is necessary, or that the permitting authority must require the permittee to submit additional information. The Administrator may review such proposed determination under the provisions of subsections (a) and (b). If the permitting authority fails to submit the required proposed determination, or if the Administrator objects and the permitting authority fails to resolve the objection within 90 days, the Administrator may, after notice and in accordance with fair and reasonable procedures, terminate, modify, or revoke and reissue the permit.

(July 14, 1955, ch. 360, title V, § 505, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2643.)

**§ 7661e. Other authorities**

**(a) In general**

Nothing in this subchapter shall prevent a State, or interstate permitting authority, from establishing additional permitting requirements not inconsistent with this chapter.

**(b) Permits implementing acid rain provisions**

The provisions of this subchapter, including provisions regarding schedules for submission and approval or disapproval of permit applications, shall apply to permits implementing the requirements of subchapter IV–A except as modified by that subchapter.

(July 14, 1955, ch. 360, title V, § 506, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2645.)

**§ 7661f. Small business stationary source technical and environmental compliance assistance program**

**(a) Plan revisions**

Consistent with sections 7410 and 7412 of this title, each State shall, after reasonable notice and public hearings, adopt and submit to the Administrator as part of the State implementation plan for such State or as a revision to such State implementation plan under section 7410 of this title, plans for establishing a small business stationary source technical and environmental compliance assistance program. Such submission shall be made within 24 months after November 15, 1990. The Administrator shall approve such program if it includes each of the following:

(1) Adequate mechanisms for developing, collecting, and coordinating information concerning compliance methods and technologies for small business stationary sources, and programs to encourage lawful cooperation among such sources and other persons to further compliance with this chapter.

(2) Adequate mechanisms for assisting small business stationary sources with pollution pre-

vention and accidental release detection and prevention, including providing information concerning alternative technologies, process changes, products, and methods of operation that help reduce air pollution.

(3) A designated State office within the relevant State agency to serve as ombudsman for small business stationary sources in connection with the implementation of this chapter.

(4) A compliance assistance program for small business stationary sources which assists small business stationary sources in determining applicable requirements and in receiving permits under this chapter in a timely and efficient manner.

(5) Adequate mechanisms to assure that small business stationary sources receive notice of their rights under this chapter in such manner and form as to assure reasonably adequate time for such sources to evaluate compliance methods and any relevant or applicable proposed or final regulation or standard issued under this chapter.

(6) Adequate mechanisms for informing small business stationary sources of their obligations under this chapter, including mechanisms for referring such sources to qualified auditors or, at the option of the State, for providing audits of the operations of such sources to determine compliance with this chapter.

(7) Procedures for consideration of requests from a small business stationary source for modification of—

(A) any work practice or technological method of compliance, or

(B) the schedule of milestones for implementing such work practice or method of compliance preceding any applicable compliance date,

based on the technological and financial capability of any such small business stationary source. No such modification may be granted unless it is in compliance with the applicable requirements of this chapter, including the requirements of the applicable implementation plan. Where such applicable requirements are set forth in Federal regulations, only modifications authorized in such regulations may be allowed.

**(b) Program**

The Administrator shall establish within 9 months after November 15, 1990, a small business stationary source technical and environmental compliance assistance program. Such program shall—

(1) assist the States in the development of the program required under subsection (a) (relating to assistance for small business stationary sources);

(2) issue guidance for the use of the States in the implementation of these programs that includes alternative control technologies and pollution prevention methods applicable to small business stationary sources; and

(3) provide for implementation of the program provisions required under subsection (a)(4) in any State that fails to submit such a program under that subsection.

**(c) Eligibility**

(1) Except as provided in paragraphs (2) and (3), for purposes of this section, the term "small

business stationary source" means a stationary source that—

(A) is owned or operated by a person that employs 100 or fewer individuals,[1]

(B) is a small business concern as defined in the Small Business Act [15 U.S.C. 631 et seq.];

(C) is not a major stationary source;

(D) does not emit 50 tons or more per year of any regulated pollutant; and

(E) emits less than 75 tons per year of all regulated pollutants.

(2) Upon petition by a source, the State may, after notice and opportunity for public comment, include as a small business stationary source for purposes of this section any stationary source which does not meet the criteria of subparagraphs[2] (C), (D), or (E) of paragraph (1) but which does not emit more than 100 tons per year of all regulated pollutants.

(3)(A) The Administrator, in consultation with the Administrator of the Small Business Administration and after providing notice and opportunity for public comment, may exclude from the small business stationary source definition under this section any category or subcategory of sources that the Administrator determines to have sufficient technical and financial capabilities to meet the requirements of this chapter without the application of this subsection.

(B) The State, in consultation with the Administrator and the Administrator of the Small Business Administration and after providing notice and opportunity for public hearing, may exclude from the small business stationary source definition under this section any category or subcategory of sources that the State determines to have sufficient technical and financial capabilities to meet the requirements of this chapter without the application of this subsection.

**(d) Monitoring**

The Administrator shall direct the Agency's Office of Small and Disadvantaged Business Utilization through the Small Business Ombudsman (hereinafter in this section referred to as the "Ombudsman") to monitor the small business stationary source technical and environmental compliance assistance program under this section. In carrying out such monitoring activities, the Ombudsman shall—

(1) render advisory opinions on the overall effectiveness of the Small Business Stationary Source Technical and Environmental Compliance Assistance Program, difficulties encountered, and degree and severity of enforcement;

(2) make periodic reports to the Congress on the compliance of the Small Business Stationary Source Technical and Environmental Compliance Assistance Program with the requirements of the Paperwork Reduction Act,[3] the Regulatory Flexibility Act [5 U.S.C. 601 et seq.], and the Equal Access to Justice Act;

(3) review information to be issued by the Small Business Stationary Source Technical and Environmental Compliance Assistance Program for small business stationary sources

---

[1] So in original. The comma probably should be a semicolon.

[2] So in original. Probably should be "subparagraph".

[3] See References in Text note below.

to ensure that the information is understandable by the layperson; and

(4) have the Small Business Stationary Source Technical and Environmental Compliance Assistance Program serve as the secretariat for the development and dissemination of such reports and advisory opinions.

**(e) Compliance Advisory Panel**

(1) There shall be created a Compliance Advisory Panel (hereinafter referred to as the "Panel") on the State level of not less than 7 individuals. This Panel shall—

(A) render advisory opinions concerning the effectiveness of the small business stationary source technical and environmental compliance assistance program, difficulties encountered, and degree and severity of enforcement;

(B) make periodic reports to the Administrator concerning the compliance of the State Small Business Stationary Source Technical and Environmental Compliance Assistance Program with the requirements of the Paperwork Reduction Act,[3] the Regulatory Flexibility Act [5 U.S.C. 601 et seq.], and the Equal Access to Justice Act;

(C) review information for small business stationary sources to assure such information is understandable by the layperson; and

(D) have the Small Business Stationary Source Technical and Environmental Compliance Assistance Program serve as the secretariat for the development and dissemination of such reports and advisory opinions.

(2) The Panel shall consist of—

(A) 2 members, who are not owners, or representatives of owners, of small business stationary sources, selected by the Governor to represent the general public;

(B) 2 members selected by the State legislature who are owners, or who represent owners, of small business stationary sources (1 member each by the majority and minority leadership of the lower house, or in the case of a unicameral State legislature, 2 members each shall be selected by the majority leadership and the minority leadership, respectively, of such legislature, and subparagraph (C) shall not apply);

(C) 2 members selected by the State legislature who are owners, or who represent owners, of small business stationary sources (1 member each by the majority and minority leadership of the upper house, or the equivalent State entity); and

(D) 1 member selected by the head of the department or agency of the State responsible for air pollution permit programs to represent that agency.

**(f) Fees**

The State (or the Administrator) may reduce any fee required under this chapter to take into account the financial resources of small business stationary sources.

**(g) Continuous emission monitors**

In developing regulations and CTGs under this chapter that contain continuous emission monitoring requirements, the Administrator, consistent with the requirements of this chapter, before applying such requirements to small busi

ness stationary sources, shall consider the necessity and appropriateness of such requirements for such sources. Nothing in this subsection shall affect the applicability of subchapter IV–A provisions relating to continuous emissions monitoring.

**(h) Control technique guidelines**

The Administrator shall consider, consistent with the requirements of this chapter, the size, type, and technical capabilities of small business stationary sources (and sources which are eligible under subsection (c)(2) to be treated as small business stationary sources) in developing CTGs applicable to such sources under this chapter.

(July 14, 1955, ch. 360, title V, § 507, as added Pub. L. 101–549, title V, § 501, Nov. 15, 1990, 104 Stat. 2645.)

REFERENCES IN TEXT

The Small Business Act, referred to in subsec. (c)(1)(B), is Pub. L. 85–536, § 2(1 et seq.), July 18, 1958, 72 Stat. 384, which is classified generally to chapter 14A (§ 631 et seq.) of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 631 of Title 15 and Tables.

The Paperwork Reduction Act, referred to in subsecs. (d)(2) and (e)(1)(B), probably means the Paperwork Reduction Act of 1980, Pub. L. 96–511, Dec. 11, 1980, 94 Stat. 2812, as amended, which was classified principally to chapter 35 (§ 3501 et seq.) of Title 44, Public Printing and Documents, prior to the general amendment of that chapter by Pub. L. 104–13, § 2, May 22, 1995, 109 Stat. 163. For complete classification of this Act to the Code, see Short Title of 1980 Amendment note set out under section 101 of Title 44 and Tables.

The Regulatory Flexibility Act, referred to in subsecs. (d)(2) and (e)(1)(B), is Pub. L. 96–354, Sept. 19, 1980, 94 Stat. 1164, which is classified generally to chapter 6 (§ 601 et seq.) of Title 5, Government Organization and Employees. For complete classification of this Act to the Code, see Short Title note set out under section 601 of Title 5 and Tables.

The Equal Access to Justice Act, referred to in subsecs. (d)(2) and (e)(1)(B), is title II of Pub. L. 96–481, Oct. 21, 1980, 94 Stat. 2325. For complete classification of this Act to the Code, see Short Title note set out under section 504 of Title 5.

SUBCHAPTER VI—STRATOSPHERIC OZONE PROTECTION

**§ 7671. Definitions**

As used in this subchapter—

**(1)    Appliance**

The term "appliance" means any device which contains and uses a class I or class II substance as a refrigerant and which is used for household or commercial purposes, including any air conditioner, refrigerator, chiller, or freezer.

**(2)    Baseline year**

The term "baseline year" means—

(A) the calendar year 1986, in the case of any class I substance listed in Group I or II under section 7671a(a) of this title,

(B) the calendar year 1989, in the case of any class I substance listed in Group III, IV, or V under section 7671a(a) of this title, and

(C) a representative calendar year selected by the Administrator, in the case of—